# IN THE UNITED STATES DISTRICT COURT
# FOR SOUTH DAKOTA, PIERRE OFFICE

225 South Pierre Street, Pierre, SD 57501

| | | |
|---|---|---|
| BRENDA BURTON and HOLLIE TELFORD | ) | |
| Plaintiffs | ) | |
| v. | ) | CIVIL ACTION NO. **3:16-cv-3033 RAL** |
| UNITED STATE OF AMERICA; ALAN B. JOHNSON; NENA JAMES AND THOMAS DEERING IN THEIR INDIVIDUAL OFFICIAL CAPACITIES; GLOBAL E. LLC aka PIONEER PARK; ANN CLAYTON JUDY CIRRILLO, CENTURYLINK O'KELLEY H. PEARSON, LAW OFFICE HICKEY AND EVANS LLP, DONALD THATCHER, EVA TAFOYA, HUD and DOES 1-10. | ) | **OPPOSITION TO CENTURY-LINK'S MOTION AND BRIEF FOR FILING INJUNCTION**<br><br>**AND TO JOINDER BY REMAINDER DEFENDANTS** |
| Defendants | ) | |

COMES NOW both Plaintiffs Brenda Burton and Hollie Telford to OPPOSE CENTURYLINK's motion for filing injunction; irrespective that said motion is directed to plaintiff TELFORD only.

## PROCEDURAL HISTORY

On August 8, 2017, this action was opened by Glenn Ambort, as an assignee of "trust assets" injured by the defendants actions herein, AND NOT AS A PRO SE TRUSTEE REPRESENTING THE CLAIMS OF HOLLIE TELFORD AND MARTI LUNDAHL. Glen

1

Ambort also sought judicial remedies for interference with his rights to aid and assist TELFORD and LUNDAHL in the exercise of their Fair Housing rights as provided under 42 U.S.C. § 42 U.S.C. § 3602(i)(2). A First Amended Complaint was filed adding Hollie Telford and Marti Lundahl to the action to clarify that Glen Ambort was representing his own rights and not the rights of TELFORD and LUNDAHL. First Amended Complt. Docket 5. Judge Roberto Lange, in response to the First Amended Complaint issued an order requiring a Second Amended Complaint be filed to clarify whether Ambort was a legal guardian of Lundahl and Telford or, if he is not, then to remove Ambort as a plaintiff.

A Second Amended Complaint was filed on September 9, 2016, in which Brenda Burton ("Burton") and Hollie Telford were named as Plaintiffs. (Docket 11). In his Order Denying Motions to Proceed In Forma Pauperis, Judge Lange found that Burton was "not a tenant affected by the alleged discriminatory housing," which may render Burton's participation "as a named plaintiff improper and as possible unauthorized practice of law likely to affect Burton's ability to proceed as a plaintiff." (Docket 14 at 2).

In response to Judge Lange's erroneous conclusion that BURTON must be a tenant in order to suffer injury under the Fair Housing Act, Plaintiff Brenda Burton pointed Judge Lange to her SAC, para. 9, and which asserted that an aggrieved person under the Fair Housing Act was any person that aided or assisted a covered person in the protection of their fair housing rights. See 42 U.S.C. § 3602(i)(2). In further support of BURTON's contention, BURTON filed a declaration on under penalty of perjury as Docket 69 wherein BURTON attached a case reattached hereto as exhibit "1", i.e. Arnal v. Aspen View Condominium Association, et al 15-cv-01044-WYD-MJW (USDC-CO, Dec. 27, 2016) and which showed that a Colorado federal court recently found that the owner of a condominium unit stated a claim under the FHA when he aided his tenant in the protection of her fair housing rights and was penalized for that aid as the condominium owner. BURTON also cited to federal cases showing that direct discrimination claims under the FHA need not be stated in order to proceed on an interference or intimidation claim under § 3617. See Sofarelli v. Pinellas County, 931 F.2d 718, 722 (11th Cir. 1991)(interference with moving mobile homes for purchase by protected families stated an actionable section 3617 claim); Malone v. City of Fenton, Mo., 592 F. Supp. 1135, 1156 (E.D. Mo. 1984) (holding that plaintiff-developer has standing under § 3617's "interference with persons who aid" language), aff'd without opinion, **794 F.2d 680 (8th Cir. 1986);** U.S. General, Inc. v. City of Joliet, 432 F. Supp. 346, 352 (N.D.

Ill. 1977) ("§ 3617 grants a right of action to persons who have been interfered with as they aided others in their exercise of rights protected by § 3604"); Gourlay v. Forest Lake Estates Civic Ass'n, 276 F. Supp. 2d 1222 (M.D. Fla. 2003)(§ 3617 claim was based on a homeowners' association's use of litigation and other "interference" techniques to prevent the plaintiff-couple from having foster children in their home. Id. At 1225-27.); States v. Scott, 788 F. Supp. 1555, 1562-63 (D. Kan. 1992) (finding § 3617 violation based on the defendants' efforts to block housing for disabled persons, which included filing a lawsuit) ; Garcia v. Washington County Department of Housing Services, No. CV 05-1780-MO, 2006 U.S. Dist. LEXIS 100044 (D. Or. March 31, 2006)(brother of disabled person has personal claim under section 3617 when disabled brother was denied section 8 voucher because he rented home owned by his brother.); *Walker v. City of Lakewood,* 272 F.3d 1114*,* 1128 (9th Cir.2001); USA v. East River Housing Corp.Case 1:13-cv-08650-ER (D.C.N.Y. 2015) (retaliation shown under 42 U.S.C. § 3617 by threatening to pursue a claim for attorneys' fees against tenant for challenging housing violations, and also by requesting excessive and intrusive information from disabled tenant in connection with the tenant's request for a reasonable accommodation.); Nationwide Mutual Insurance Co. v. Cisneros, No. 94- 3296 (6th Cir. 1995) (Refusing an accommodation request and pursuing an eviction action is strictly retaliatory under § 3617.);

Here, not only did BURTON aid TELFORD in her housing rights, the defendants and all of them maliciously interfered with BURTON's aid by trying to steal BURTON's home by attempted force, extortion and witness tampering; by blocking BURTON from entering into any other Park in Sweetwater County to prevent BURTON from aiding or assisting any other person in the protection of their housing rights, and by robbing Burton of her ability to earn monies across interstate lines from the rental of her manufactured home. Accordingly, there is no question that BURTON was directly injured by the defendant's discriminatory housing practices, as well as by the defendants racketeering acts.

CENTURYLINK next asserts that Judge Lange pointed out that Burton purported to be a resident of 320 E. Waterton St., Rapid City, South Dakota, even though Burton had testified in the District of Nebraska that she was a resident of Nebraska ten days after filing this case representing she resides in South Dakota.

Rehashing previous assertions raised before this court, BURTON's testimony involuntarily obtained in a Nebraska federal court in which BURTON was not a party, took

place at the end of September 2016, upwards of 2 months after this case was filed on August 8, 2017. See Court Docket. Moreover, the testimony indicated nothing of a permanent nature and certainly did not lead to any personal "domicile inquiry". The Nebraska Judge simply asked BURTON "where do you presently live". Burton responded by stating that she presently lived in Gordon, NE and been living there for the past 2 months. No further inquiry was made of BURTON. Accordingly, BURTON's limited response was not sufficient to establish Gordon NE as BURTON's permanent domiciliary address. Moreover, the Nebraska court's inquiry was directed at a trust address for the Shanandoah Trust and not the personal addresses of assistants before the Court.

  BURTON has testified in these proceedings that she had been living in South Dakota over the past several years from at least December of 2014 to August of 2016. BURTON declared that she essentially house sat a distressed foreclosed home at 320 Watertown Drive, Rapid City South Dakota during the term of its lengthy vacancy. BURTON further testified that she had placed a bid on that home to the Bank and her bid remained pending for a significant amount of time. BURTON further declared that the home had a huge driveway and that she parked her trailer and other RV's in the large driveway while she occupied the property. Attached hereto as exhibit "2" is a photo of the Rapid City South Dakota address exhibiting it's large driveway. BURTON declared that her residency at the property was abruptly interrupted in late August of 2016, when she was told that her bid had been denied and that her house sitting services were not longer required. BURTON was compelled to move the 5th wheel trailer she resided in close to another property BURTON had an interest in.

  While it is true that Judge Lange alluded that BURTON was committing possible residence fraud, Judge Lange's uniformed and tenative finding was based on an initial assertion that the address of 320 Watertown Drive, Rapid City South Dakota "did not exist", followed by a subsequent assertion that the Watertown Drive address was condemned property. Neither of these assertions is borne out by the photograph of the property attached hereto as exhibit "2", nor did Judge Lange provide any condemnation papers to support his condemnation finding, specifically because these papers simply do not exist. Moreover, it is not clear whether Judge Lange was parroting ex parte communications with a defendant party or parties to the case; hence the unsupported findings.

  Nevertheless, Judge Lange denied Plaintiffs in forma pauparis standing, and since

Plaintiffs have paid the filing fee in this matter, Plaintiffs are now entitled to be granted a fair and full hearing on the merits of their claims and before an impartial tribunal.

It bears mentioning that since this case was filed, all parties have attempted to attack the venue of this court through repetitive tactical manuevers that comprise ongoing racketeering acts using this Court's office as the depository for the associated in fact enterprises' racketeering acts. For example, not satisfied with having interfered with BURTON's residential contacts at the Rapid City South Dakota address, the defendants have now conspired to deprive BURTON and TELFORD of the Oelrichs South Dakota address by surreptituously procuring the prior owners of that property to not turn over title to the Plaintiffs; irrespective that (1) the Olerichs property has been fully paid for by plaintiffs since November of 2016, (2) plaintiffs received a title insurance policy from the seller for the Oelrichs property in November of 2016 with Plaintiffs as the insureds; (3) Plaintiffs have occupied the property since the date the sale was to be finalized on November 30, 2016; (4) Plaintiffs have improved the property, and (5) Plaintiffs have paid property taxes attaching to the Olerichs property since the demanded closing date. See Motion to Amend Second Amended Complaint to add the South Dakota owners and their agents as parties to this litigation, filed on April 17, 2017. Moreover, BURTON has affixed her fifth wheel to the Olerichs property for residential purposes, see Doc. Nos. 104-2 through 104-6.

CENTURYLINK now asserts that because HOLLI TELFORD aka Holli Lundahl is a party to the matter before this court, that this is sufficient grounds to summarily grant an unconstitutional and broad filing injunction against HOLLI TELFORD aka HOLLI LUNDAHL for every court in the state of South Dakota and as applied to any person violating HOLLI's present and future rights.

To lead up to this contempt Petition, CENTURYLINK vomits prior unsupported and false findings made against HOLLI by other courts, without notice and in ex parte fashion, while HOLLI was falsely imprisoned for a period of more then 12 years in numerous jails as a pre-trial detainee based on more than 20 consecutive and unsuccessful felony prosecutions brought against HOLLI by ELI LILLY and Company over the past 26 years. [1]

_____

1. For the first time in 26 years, when HOLLI was unconstrained by false imprisonment and able to actually file a certiorari petition before the US Supreme Court (other certioari petitions were forged in HOLLI's name while HOLLI was in pre-trial custody), HOLLI filed a Certiorari petition before the US Supereme Court in April of 2016 attacking

5

HOLLI will file separate petitions attacking the validity of each of the previous injunctions entered against HOLLI, under this Courts inherent powers. Upon consideration of the validity of the underlying contempt injunctions, this court may not predicate a filing injunction in this case upon underlying VOID orders.

Complying with the foregoing principal of law, this court is left with the duty of deciding whether in fact, Plaintiffs TELFORD and BURTON have brought this underlying case to relitgate the merits of their FHA, ADA, section 504, RICO, FTCA, APA, BIVENS and Larson-Dugan claims in this forum, tnat according to CENTURYLINK were fully and farily litigated in the prior Wyoming case no. 15-cv-0188 ABJ.

Due to time constraints, Plaintiffs will be presenting their ARGUMENT that Plaintiffs claims herein have never been previously litigated in any other forum, in a supplemental pleading to be filed shortly herewith.

Date: 4/17/2017

Brenda Burton
885 US HIGHWAY 385
Oelrichs, South Dakota 57763
brenda.burton.99999@gmail.com

Hollie Telford
885 US HIGHWAY 385
Oelrichs, South Dakota 57763
hollietelford.1@gmail.com

---

the broad, false, corrupt and VOID pre-filing order entered by financially conflicted Wyoming federal judge Scott Skavdahl, without subject matter jurisdiction and in violation of HOLLI's due process and equal protection rights.

HOLLI's certiorari petition outlays a 25 year litigation history with ELI LILLY and which was corruptly and falsely cited by Judge Skavdahl in his January 2014 void pre-filing order. Specifically, the Certioari Petition attached hereto as exhibit "3" certified that more than 20 repetitive felony prosecutions were brought against HOLLI by El LILLY over a 25 year period, for the chief purpose of fixing a fabricated felony conviction against HOLLI in order to VOID HOLLI's tort claims against ELI LILLY; the epitomy of abuse of process.

The Certiorari petition goes on to further say, that because ELI LILLY was unsuccessful in each of these felony prosecutions (all of which had terminated in HOLLI's favor under the lower probable cause standards of proof after years of pre-trial detention); that ELI LILLY's attorneys forged HOLLI's name to numerous initiating petitions (primarily comprising of notice of appeals and some certiroari petitions) which LILLY's attorneys then filed in various federal and state appellate courts while HOLLI was falsely imprisoned under ELI LILLY's successive bad faith criminal charges as a pre-trial detainee. When these filed ex parte forged petitions were not advanced by Holli, they were summarily dismissed. This fabricated filing history led to the dominoed contempt injunction orders being entered against HOLLI in abstentia .

Nevertheless, ELI LILLY did not contest any of the allegations HOLLI made in her certiorari petition, thereby conceding to the factual merits thereof before the highest court in the land. See exhibit "4" attached for ELI LILLY's waiver of a response brief.

6

**CERTIFICATE OF SERVICE**

       The above signed certify that they served, a true and correct copy of the foregoing document upon all parties by placing the same in the ECF service utilized by the South Dakota Courts and by all parties to this proceeding.