No. **15-1325**

In The

# Supreme Court of the United States

HOLLI LUNDAHL

Petitioner

v.

10th CIRCUIT JUDGE CAROLYN McHUGH;
10th CIRCUIT CHIEF JUSTICE MARY BECK BRISCOE

Respondents

v.

ELI LILLY and COMPANY, et al.

Respondents

On Petition For Writ Of Certiorari To The United States
Court Of Appeals for The Tenth Circuit

Holli Lundahl
c/o Marti Lundahl
935 Wilderness Trail
Green River, WY 82935
307-212-6888
hollielundahl@gmail.com

## Questions Presented

1. Whether a removing defendant is required to obtain the written consent of all "defaulted parties" in the state action before effectively removing a state action to the federal court. If so, whether a federal court is authorized to reach substantive federal question grounds for removal BEFORE reaching a more obvious procedural defect in the removal under the unanimous consent rule, 28 U.S.C. $ 1446(b)(2)(A).

2. Whether Plaintiff's rule 60(b)(4)/ declaratory judgment/ inherent power motion to attack a 2005 VOID contempt judgment entered by the 10th Circuit court of appeals in re Stock v. Robbins, case no. 03-4219, was a proper response to ELI LILLY's successive and piggybacked petition to decree Plaintiff an abusive, contemptuous and vexatious litigant. If so, did the strike order of Plantiff's rule 60(b)(4)/inherent power motions violate Petitioner's 5th amendment due process rights to be heard and could Petitioner's filing of such motions be grounds for criminally contempting Petitioner.

3. Whether Petitioner's 5 past tort suits against ELI LILLY and all successively dismissed without prejudice by unilateral actions of the sitting judges, can form the basis of a criminal/civil contempt injunction against Petitioner charging Petitioner with abuse of the judicial processes through conjured up facts and bar Petitioner from re-suing ELI LILLY in any future action.

4. Whether a contempt injunction which punishes for past completed acts alleging 'constructive' abuse of the

court's judicial processes and other undefined deceits and which purports to broadly and generally police the contemnor's entire code of conduct in the future for the alleged purposes of protecting the integrity of the court's processes, requires the imposition of criminal procedures including a jury trial; especially when the accused denies the accusations of abuse, deceits and frauds, and further, claims retaliatory motive for the prosecution.

5. Whether ELI LILLY's "sham" contempt petition was protected under the Noerr Pennington Doctrine, the 1st Amendment or the federal litigation privilege.

## List Of Parties

The following persons never consented to personal jurisdiction but nevertheless joined the removal Petition.

ELI LILLY AND COMPANY
MICHEAL JOHNSON
LAW OFFICES OF SNELL AND WILNER

The following parties had been made parties to the state action, defaults had been entered against them and they did not execute any written consent to the removal petition initiated by ELI LILLY;

CHERYL SHROCK
U.S. BANK
DONALD HALBERG
FORTUNE MAGAZINE
KAI FALKENBURG
ELAM HALABI
AOL, INC.
JEFF SEMRAD
WELLS FARGO

The Tenth Circuit Officials were joined into the contempt proceedings by way of Petitioner's Rule 60(b)(4)/ Declaratory Judgment Act/ Inherent power petition to vacate the void 10th Circuit criminal/civil contempt injunction attached hereto as Appendix exhibit "M", and Judge Skavdahl was joined in the appeal by way of his refusal to recuse based on a financial and personal interest in the litigation.

### Corporate Disclosure Statements

ELI LILLY and COMPANY
1. Eli Lilly has the following subsidiary entities

outside of ELI LILLY's own name: (i) Alnara Pharmaceuticals, Inc.; (ii) AME Torreview LLC; (iii) Applied Molecular Evolution, Inc.; (iv) Avid Radiopharmaceuticals, Inc.; (v) del Sol Financial Services, Inc.; (vi) E L Management LLC; (vii) Elanco Trustees Limited ; (xii) ELCO for Trade and Marketing, S.A.E.; (xiii) ELCO Insurance Company;

2. Wells Fargo Bank owns the following subsidiaries: (i) Norest Corporation; (ii) Wachovia Corp.; (iii) First National Bank of Philadelphia; (iv) Crocker National Bank; (v) First Interstate Bancorp; (vi) First National Bank of Philadelphia; (vii) First Security Corporation ; (viii) H.D. Vest Financial Services; (ix) CIT Construction; (x) Placer Sierra Bank; (xi) Greater Bay Bancorp.; (xii) United Bancorporation of Wyoming; (xiii) Century Bancshares of Texas; (xiii) North Coast Surety Insurance Services; (xiv) Merlin Securities; (xv) The Rock Creek Group LP.

# TABLE OF CONTENTS

Questions Presented ........................................................... i

List of Parties................................................................iii

Corporate Disclosure Statements ......................................iii

Citation to Constitutional Provisions, Statutes, U.S
Supreme Court Cases (Contained in App. "L ")..............33a

Table of Contents............................................................. v

Opinions Below (See end of Table of Contents)................x

Table of Authorities.. ......................................................xii

Statement of Jurisdiction................................................xvi

Petition For Writ of Certiorari...........................................1

I.    Introduction.................................................................2

II.   Factual History of Litigations Between ELI
      LILLY and ELI LILLY's Insurers And
      Petitioner Dating Back To 1991...............................6

      A.   Summary of Thirteen (13) Of The Twenty
           (20) Felony Prosecutions Brought
           Against Petitioner Dating Back To 1991.............7

           1.   ELI  LILLY And Her Insurers Procured
                A Criminal Prosecution Against Lundahl
                For Insurance Fraud From 1991 To
                October 1, 1993 Seeking Two Life
                Sentence Terms Against Lundahl.......................7

           2.   On March 16, 1995, ELI LILLY And Her
                Insurers Brought A Criminal Contempt
                Action Against LUNDAHL Within The
                Context Of LUNDAHL's RICO Case
                Against ELI LILLY, et al, USDC-Cal. No.
                5:94-cv-00021-RJT.............................................8

3. The Second Assault Scheme ELI LILLY Procured Against Petitioner In September 1995 -- Resulted In An Acquittal Judgment In Petitioner's Favor .........................................9

4. ELI LILLY Brought A Fourth Criminal (Contempt) Prosecution Against Lundahl On August 12, 1996 Again Accusing Lundahl Of Forging Two Orders Dated 10/1/1993 and 10/17/1994 And For Which LUNDAHL Was Acquitted On April 11, 1995 (Referenced In Subsection 2 supra.)........12

5. ELI LILLY And Her Insurers Procured A Utah Federal Grand Jury No. C699 To Convene On May 3, 2000 And Indict Lundahl For Allegedly Forging The 10/1/1993 And 10/17/1994 Orders....................13

6. ELI LILLY And Her Insurers Procured A Utah Federal Grand Jury No. C101 To Convene On September 19, 2001 And Indict Lundahl For Allegedly Forging The 10/1/1993 And 10/17/1994 Orders...........14

7. On December 3, 2003, ELI LILLY And Her Insurers Charged Lundahl A Fifth Time With Forging The 10/1/1993 And 10/17/1994 Orders – By Invoking An Article I Judge Having A $9 million Pecuniary Interest In The Complaining Witnesses' Companies, To Conduct A Bench Trial On The Double Jeopardized, Time Barred And Collaterally Estopped Charges....................15

8. In October Of 2005, And Again In The Context Of A Civil Action, ELI LILLY's Insurers Wells Fargo And Washington Mutual Banks Falsely Charged Petitioner

With Forging Their Respective Bank
Notaries As Acknowledgments Onto
Petitioner's Declarations Filed With The
Court In re Los Angeles Homeowners Aid
vs. Holli Lundahl, Utah No. 05010020......14

9. Petitioner Was Transferred To Idaho
To Answer Criminal Charges In Re
USDC-Idaho.No.2:05-cv-127-RT........................15

10. ELI LILLY And Her Insurers Charged
LUNDAHL For The Sixth Time With
Forging The 10/1/1993 And The 10/17/1994
Orders In re USDC-UT.No.2:06-CR-693............15

11. On 5/2/2007 WELLS FARGO Recharged
LUNDAHL With Forgery Of Their Bank
Notary On Lundahl's State Declarations As
USDC-UT,2:07-CR-272-WFD; Charges Upon
Which LUNDAHL Had Been Acquitted In Re
Utah Fourth District Court Case No. 05010020....16

12. On 8/10/2011, ELI LILLY And Her Insurers
Colluded With Idaho Authorities To Bring
Charges Against Petitioner For Alleged Theft
Of An IP Address Pertaining To A Broadband
Service - In Order To Email Third Parties; A
Felony In Idaho, As Idaho v. Lundahl, Case
No. 2011-CR-719................................................17

13. On 10/29/2013, ELI LILLY And Her
Attorneys Unlawfully Removed A State
Action To The Wyoming Federal Court
Underlying This Appeal As USDC--WY
Case.No.2:13--cv--00241-SWS For The
Purpose Of Prosecuting LUNDAHL, Once
Again, Of Allegedly Falsely Claiming A
Fictitious Address In The State Of Wyoming.....17

B.  History Of The Five (5) Tort Actions
    Petitioner Filed Against the ELI LILLY
    And Banking Defendants Since 1992 --
    And All Dismissed Without Prejudice...............19

    1.  First Tort Action Brought By Petitioner
        Against the LILLY and Banking
        Defendants.........................................................20

    2.  Second Tort Action Brought By Petitioner
        Against The LILLY And Banking Defendants...21

    3.  Third Tort Action Brought By Petitioner
        Against The LILLY And Banking Defendants...24

    4.  Fourth Tort Action Brought By Petitioner
        Against The LILLY Defendants.........................25

    5.  Fifth Tort Action Brought By Petitioner
        Against The LILLY and Banking Defendants....26

    6.  Based On The Foregoing History, None
        Of Lundahl's Saved Claims Against The
        LILLY Or Banking Defendants Had Ever
        Been Heard Or Decided On It's Merits In
        Any Prior Forum As Judge Skavdahl
        Would Collusively Rule In His Contempt
        Injunction Issued On January 30, 2014........27

C.  Judge Scott Skavdahl Struck Petitioner's
    FRCP Rule 60(b)(4)/Declaratory judgment /
    Inherent Power Motions To Decree Certain
    Sister Foreign Judgments Void And Then
    Criminally Sanctioned Petitioner For
    Filing These Equity Petitions Authorized
    As A Matter Statutory Law.................................27

III.  Reasons For Granting The Writ ....................32

ix

A. The 10th Circuit Court Of Appeals Entered A Decision That Conflicts With Decisions Of This Court And Other Courts Of Appeal ................................32

1. The 10th Circuit's Decision To Reach Constitutional Issues Of Subject Matter Jurisdiction Before Reaching Obvious Procedural Rule Violations Conflicted With This Court's Well Established Jurisprudence........................................................32

2. Petitioner Had Statutory Right To Seek Dissolution Of The VOID Contempt Injunctions Supporting ELI LILLY's Latest Fraudulent Contempt Petition And It Was Constitutional Error To Strike Petitioner's Rule 60(b)(4)/ Inherent Power Motions Seeking To Dissolve The VOID Contempt Judgments Arising Out Of Other Federal Courts..................................36

3. The Invocation Of 28 USC § 1651 To Enter A Contempt Injunction Against LUNDAHL, Constituted A Usurpation Of Power Given The Lack Of Any Independent Federal Question Before The Court .............................................38

4. Judge Skavdahl Conjured Up Facts To Justify His Filing Injunction; Stripped Him Of Jurisdiction To Issue Any Rule In The Matter...........41

5. The Broad Pre-Filing Injunction Issued By Judge Skavdahl Was Based On Past Completed Acts And Sought To Police Petitioner's Entire Code Of Conduct To Access Any Federal Court In Wyoming, Thereby Making The Injunction Criminal

In Nature and Requiring The Pro-
tection of Criminal Procedures..........................43

6.  ELI LILLY's Sham Contempt Petition For
Another Pre-filing Injunction Against
Petitioner Was Not Protected By The
Federal Litigation Privilege And Should
Have Resulted In Sanctions In Petitioner's
Favor...............................................................46

Conclusion........................................................................48

Ex. #  **Appendix Of Relevant Portions of Opinions**

A    Tenth Circuit Appellate Order Affirming Validity
Of Broad Wyoming Pre-filing Order and Money
Sanctions Against Lundahl in re removed state
case, Lundahl v. Eli Lilly, et al. U.S. 10th
Circuit Court Of Appeals No. 14-8002............1a

B    Pre-filing Order and Sanctions Order in
Wyoming District Court case, Lundahl v. Eli
Lilly, et al., USDC- no. 13-CV-241 SWS.......14a

C    Dismissal Without Prejudice Order Of Removed
California cases, USDC- UT, case no. 2:04-CV-
088-PGC..........................................................21a

D    Dismissal Without Prejudice Order Of Removed
FTCA, etc. case, USDC-UT, case no. 2:04-CV-
089-PGC..........................................................23a

E    Dismissal Without Prejudice Order of USDC--
N.D. TX case no. 3:08-CV-1990......................25a

F    Affirmance of dismissal without prejudice order

of Texas FTCA, etc. case 3:08-CV-1990 by 5th Circuit U.S. Court of appeals, case no. 10- 11156 on March 29, 2011...........................................26a

G   Consolidated certiorari petition George v. USA, No. 12-156, denied Oct. 9, 2012.....................27a

H   Utah state case Lundahl v. Eli Lilly, et al. no. 130100009, dismissed by court without prejudice on October 28, 2013........................................28a

I.   Relevant part of ELI LILLY's motion to dismiss filed in case no. 16653 and admitting tort suit not barred under doctrine of collateral estoppel or res judicata....................................................29a

J   California federal order denying ELI LILLY's 1st motion to declare Lundahl vexatious in re USDC-Cent. Dist. Cal. 5:94cv00021RJT, Doc. 147.....31a

K   California federal order denying ELI LILLY's 2nd motion to declare Lundahl vexatious in re USDC-Cent. Dist. Cal. 5:94cv00021RJT, Doc.............32a

L   Constitutional and Statutory Provisions And Controlling U.S. Supreme Court Decisions.....33a

M   Tenth Circuit Pre-filing Injunction in Re Johnson, et al. v. Stock et al., Case No. 03-4219 (10th Cir. 2005)...................................45a

N   Lundahl v. NAR, Inc. No. 05-CV-127 USDC-ID.........................................................53a

O   Lundahl v. Eli Lilly, No. 04-8838 (U.S. 2005)...59a

## TABLE OF AUTHORITIES

**U.S. Statutes**

28 U.S.C. § 1446(a).............................................33, 35
28 U.S.C. § 1446(b)(2)(A).......................................33
28 U.S.C. § 1651......................................................39

**U.S. Supreme Court**

Bagwell, 512 U.S. At 829..........................................44
Bessette v. W.B. Conkey Co., 194 U.S. 324,
    24   S.Ct. 665, 667, 48 L.Ed. 997...................43
Bill Johnsons Restaurants Inc. v. NLRB,
    461 US. 731,743 (1983).....................................47
Bloom v. Illinois, 391 U.S. 194 (1968)....................44
Brandenburg v. Ohio, 395 U. S. 444 (1969) ...........46
California Motor Transport Co. v. Trucking
    Unlimited, 404 U.S. 508 (1972).......................47
Chicago, R.1. & P. R. Co. v. Martin, 178
    U.S. 245, 248 (1900)....................................33, 34
Costello v. United States, 365 U.S. 265,
    266 (1961)..........................................................43
De Beers, 325 U.S. At 217........................................39
Firefighters v. Cleveland, 478 U.S. 501,
    525 (1986)..........................................................40
F.T.C. v. TRUDEAU, 579 F.3d 754
    (D.C. Cir., 2009)................................................44
Garrison v. Louisiana, 379 U. S. 64, 75 (1964)....46, 47
Gertz v. Robert Welch, Inc., 418 U. S. 323 (1964)....46
Green v. United States, *356 U.S. 165,* 217,
    n. 33 (1958).......................................................44
Helwig v. United States, 188 U.S. 605 (1903)...........45
Herbert v. Lando, *441 U. S. 153,* 171 (1979).............46
Horne v. Flores, 557 U.S. 433 (2009).......................36
Hovey v. Elliott, 167 U.S. 409, 17 S. Ct. 841,

42 L. Ed. 2D 215 (1897).......................................44
International Union, UMW v. Bagwell,
    512 U.S. 821 (1994)..........................................43
In re Michael, 326 U. S. 224, 227 (1945)..................47
Kerr v. U.S. Dist. Court, 426 U.S. 394, 402 (1976)...39
Laird v. Tatum, 408 U.S. 1, 11, (1972)......................40
Lapides v. Bd. of Regents of Univ. Sys. of
    Ga., 535 U.S. 613,620 (2002)............................33
Maness v. Meyers, 419 U.S. 449, 460-63 (1975).......38
Murphy Bros., Inc. v. Michetti Pipe Stringing,
    Inc., 526 U.S. 344, 354, 119 S.Ct. 1322,
    143 L.Ed.2d 448 (1999)......................................34
Neder v. United States, 119 S.Ct. 1827,
    1833 (1999).......................................................43
Nye v. United States - 313 U.S. 33 (1941).................43
Pendergast v. United States, 317 U.S. 412 (1943).....44
Sabariego v Maverick, 124 US 261, 31 L Ed
    430, 8 S Ct 461 (1888)........................................35
Shamrock Oil & Gas Corp. v. Sheets, 313
    U. S. 100, 108-09 (1941)....................................34
Syngenta Crop Protection, Inc. v. Henson, 537
    U.S. 28, 123 S.Ct. 366, 369-70 (2002)................39
Mine Workers of America 67 S. Ct. 677, 330
    U.S. 258, 293 (U.S. 1947)...............................35
United Mine Workers of Am., 330 U.S. 258,
    295 (1947).......................................................40
United States v. Alvarez, No 1.1–210 (U.S. 2012).....46
United States v. LaFranca, 282 U.S. 568 (1931).......44
Wisc. Dep't of Corr. v. Schacht, 524 U. S.
    381, 393 (1998)...................................................34

## U.S. Circuit Courts

Balazik v. County of Dauphin, 44 F.3d 209, 213
    (3d Cir.1995).......................................................34
Blaylock v. Tinner, 13-3151 (10th Cir. 2013)...........45

Brierly v. Alusuisse Flexible Packaging, Inc.,
    184 F.3d 527, 533 n. 3 (6th Cir.1999)..................33
Brumfield v. Louisiana State Board, No.
    14-31010 (5th Cir. 2015)......................................37
Central Vermont Public Service Corp. v.
    Herbert, 341 F.3d 186, 190 (2d Cir. 2003)..........38
Clark v. United States, 61 F.2d 695 (8th Cir. 1932).....45
Cobell v. Norton, 334 F.3d 1128 (D.C.Cir. 2003)....44
Cohen v. United States District Court For The
    Northern District of California, Judge Ware,
    No. 09-70378 (9th Cir. 2009)..............................38
Cornwall v. Robinson, 654 F.2d 685, 686
    (10th Cir.1981)....................................................34
Doe v. Kerwood, 969 F.2d 165, 167 (5th Cir.1992)...34
Fajen v. Found. Reserve Ins. Co., 683 F.2d
    331, 333 (10th Cir. 1982)....................................34
F. J. Hanshaw Enters., Inc. v. Emerald River
    Dev., Inc., 244 F.3d 1128, 1139
    (9th Cir. 2001)....................................................44
Gillis v. Louisiana, 294 F.3d 755, 759
    (5th Cir. 2002)....................................................33
Gonzalez v. Feiner, 131 Fed.Appx. 373
    (3d Cir. 05/11/2005).............................................45
Gonzalez Saenz v. D. Reeves; et al, No.
    11-17751 (9th Cir 2012)......................................39
Hewitt v. City of Stanton, 798 F.2d 1230,
    1232 (9th Cir.1986).............................................34
In re: Glay Collier, II, No. 14-30887
    (5th Cir. 2014).....................................................45
In Re Tennant, 359 F'3d 523 (D.C. Cir. 2004)...........39
Kiay v. United Healthgroup, Inc., 376 F.3d 1092
    (11th Cir. 2004)...................................................35
Kerwit Medical Products, Inc. v. N.H. Instruments
    (Humanetics, Inc.), 616 F.2d 833
    (5th Cir. 1980)....................................................36

Kottle v. Northwest Kidney Centers , 146 F.3d
    1056 (9th Cir. 1998)............................................46
Living Designs, Inc. v. E.I. Dupont de Nemours
    & Co., 431 F.3d 353 (9th Cir.2005) ......................47
Loftis v. United Parcel Service,  342 F.3d 509
    (7th Cir. 2007).......................................................33
Marano Enters. of Kan. v. Z-Teca Rests., L.P.,
    254 F.3d 753, 754 (8th Cir.2001).........................34
Morris v. T E Marine Corp, 344 F.3d 439
    (5th Cir. 2003)......................................................39
Retirement Systems v. J.P. Morgan Chase,
    386 F.3d 419 (2nd Cir. 2004)...............................39
Trop'v. Fidelity National Title Ins. Co., at al.,
    289 F.3d 929, 943 (6th Cir. 2004)........................39
Sieverding v. Colo. Bar Ass'n, 469 F.3d 1340,
    1343 (10th Cir. 2006)...........................................45
U.S. v. Raheman, 355 F.3d 40 (1st Cir. 2004)............39
Venegas v. Skaggs, 867 F.2d 527, 529
    (9th Cir. 1989)......................................................40
W. Water Mgmt., Inc. v. Brown, 40 F.3d 105,
    109 (5th Cir. 1994)...............................................44
Wood v. Santa Barbara Chamber of Commerce,
    Inc., 705 F,2d 1515, 1524 (9th Cir. 1983).........45

## District Court Cases

Beverly v.  T.D.  Bank  NA, 09-34791 (S.D.
    FLA, 2013).........................................................35
Carr v.  Mesquite  Indep. Sch. Dist.,
    Civ. A. No. 3:04-CV 0239, 2004 WL 1335827
    (N.D. Tex. June 14, 2004)..................................35
Grimes v. Amtec Corp., Case 5:12-cv-01144-
    RBP (N.D. Ala. 2012)...........................................35
Grant County Savings and Loan Association,
    v. Arkansas Custom Homes Inc., 698 F.
    Supp. 169 (D.C. AR 1988)..................................35

McMahan v. Fontenot, 212 F.Supp. 812
   (W.D.Ark.1963)...................................................35
New England Explosives Corp. v. Maine
   Ledge Blasting Specialist, Inc., 542 F. Supp.
   1343, 1347, note 7 (D. Me. 1982).......................35
Office Building LLC v. Castlerock Sec.,
   Civ A. No. 10-61582, 2011 WL 1674963
   (S.D. Fla. May 3, 2011)......................................35
Schlegle & Sons Printing v. United English
   Breeders & Fanciers Assoc., Inc., 682 F.
   Supp. 36, 37 (C.D. Ill.1988)..............................35
White v. Bombardier Corp., 313 F. Supp. 2d
   1295, 1304 (N.D. Fla. 2004)..............................35

## State Supreme Courts

Hammett v. Zimmerman, 804 S.W.2d 663
   (TX 1991)...........................................................41
In re Contempt, No. 02-13 (WY 2002).......................45
In re Krepela, 628 N.E.2d 262, 271
   (Nebraska 2001).................................................41
In the Matter of Seaman, 627 A.2d 106, 121.............41
Philen v. Sorensen, 609 S.W.2d 656 (TX 1980)........41

## JURISDICTION

The judgment of the court of appeals was entered on December 3, 2014. App. 1a – 11a. A petition for rehearing was denied on January 5, 2015 App. 12a-13a). Throughout this appeal period several extensions have been granted with the last extension granted on February 20, 2016. The Petition was depsoited with UPS on April 14, 2016, although not required to be deposited in the mail until April 20, 2016. The jurisdiction of this Court rests on 28 U.S.C. 1254(1).

# PETITION FOR WRIT OF CERTIORARI

Holli Lundahl petitions for a writ of certiorari to review the Tenth Circuit Affirmance order in re Lundahl v. Eli.LilIy, et al., appeal case no. 14-8002, Appendix A. pgs 1a-11a; the denial for a rehearing en banc, Appendix.A pgs. 12a-13a; the Wyoming federal criminal/civil contempt judgment / injunction entered on January 30, 2014 and based upon prior void criminal / civil contempt judgments /injunctions entered ex parte against Petitioner, without subject matter jurisdiction, personal jurisdiction and in violation of due process, Appendix.B. pgs 14a--20a; and the strike order of the trial judge as Doc. 59 which prohibited Petitioner from attacking the validity of the VOID sister foreign criminal / civil contempt judgments /injunctions registered into the record by ELI LILLY in support of a new criminal / civil contempt judgment /injunction against Petitioner.

Petitioner also seeks a rule from this court that the Wyoming federal judge had no subject matter jurisdiction over the removed state action from the outset given statutory violations under the 28 U.S.C. § 1446(b)(2) (A); that his contempt ruling under rule 11 was both an abuse of discretion and a statutory violation under FRCP rule 11 (c)( 5)(B); that no jurisdiction existed under 28 USC § 1651 to issue a pre-filing injunction against Petitioner because no independent federal question existed in the improperly removed matter and because Petitioner's "saved" tort claims against the removing defendants had never been heard on their merits to justify a future injunction against Petitioner.

Petitioner also challenges the broad nature of the pre-filing injunction and the required procedures to impose such an injunction admittedly based upon Petitioner's alleged past and completed conduct and given the

injunction  seeks to police Petitioner's future compliance to protect the integrity of the court's processes.

## I.  INTRODUCTION

This  action involves a  26  year  litigation history between  Petitioner  and  the  primary  respondent  ELI LILLY  and  Company.

In  1990,  Petitioner,  then a  licensed health care provider owning medical and related health care facilities, whistle blew  on  Eli Lilly  and  Company for  numerous regulatory violations at ELI LILLY's manufacturing plants and  resulting  in  multiple  (in  the  hundreds)  permanent disability injuries to ELI LILLY employees.  OSHA and several other regulatory bodies sanctioned  ELI  LILLY with  regulatory  fines.  ELI LILLY had terminated their disabled  employees  which  comprised  largely  of  poor, uneducated,  racial  minorities  and  remanded  these employees  to  the  welfare  markets  in  various  states  to subsidize these employees permanent injuries ad infinitum at the tax payers' expense;  as opposed to ELI  LILLY indemnifying these workers compensation injuries through ELI LILLY's  workers compensation insurers, Wells Fargo and  Washington  Mutual  Banks'  insurance  arms  and PIMCO.  ELI  LILLY's  insurers fidelity mutual and General Electric also contributed to the bad faith actions of ELI LILLY to avoid indemnifying any fidelity and fraud actions by corporate principals of  ELI  LILLY.

The  foci  of the regulatory investigations was the state of  California.  When  the  disabled  employees  were terminated,  a large majority moved out of state to less expensive jurisdictions placing them beyond the reach of the investigation core.  Nevertheless,  in 1991 ELI LILLY was  subjected  to  whopping  fines  by  OSHA  for  running unsafe manufacturing facilities causing resultant cancers

as well as permanent motor function injuries to it's employees.

To obstruct further regulatory investigations on a multi state level and any personal injury suits arising out of the OSHA convictions, ELI LILLY and her aforestated insurers, would procure more than twenty (20) bad faith felony prosecutions against Petitioner commencing in December of 1991. In the later criminal prosecutions, ELI LILLY and her insurers would use acts of bribery for the purpose of securing convictions against Petitioner. In the earlier criminal prosecutions, ELI LILLY would simply hire henchmen to expire Petitioner as a witness and thereby defeat all impending liability. These accusations are more fully defined below in Petitioner's history of 8 of the 20 felony prosecutions.

Each of the felony prosecutions procured by ELI LILLY and her insurers required imprisonment terms upon conviction of no less than 40 years with the greatest penalty being two life sentence terms.

All of the felony prosecutions imposed under criminal procedures, ultimately terminated in Petitioner's favor upon findings of lack of probable cause that Petitioner had committed any crimes and hence failure to state any criminal offense against Petitioner.

Nevertheless, irrespective that no valid criminal offenses were stated against Petitioner at the outset of each of these related felony prosecutions constituting acts of witness tampering against Petitioner under 18 USC section 1512; irrespective that Petitioner had never been convicted of either a felony or misdemeanor crime during any previous criminal prosecution, and irrespective that Petitioner had substantial business connections with her various communities; Petitioner was falsely imprisoned

in various federal and state jails as a pre-trial detainee for no less than 12 interim consecutive years; all in violation of the Bail Reform Act and her due process rights under the 5th and 14th Amendments.

While Petitioner was unlawfully pre-trial detained for this interim consecutive period of 12 years commencing in 1995, the complaining witnesses in these criminal prosecutions, i.e ELI LILLY and her various insurers, would go into several judicial forums ex parte and obtain criminal /civil contempt judgments / injunctions against Petitioner to obstruct Petitioner's access to the judicial forums to seek redress for her injuries. In more than 24 instances, ELI LILLY's attorneys would forge Petitioner's names to initiating petitions while Petitioner was falsely imprisoned in either a state or federal jail – to secure void pre-filing injunctions against Petitioner.

In the instances that Petitioner was not incarcerated in jail, ELI LILLY would knowingly and willfully file false pleadings before various federal courts claiming that Petitioner had previously litigated more than 100, and later, 38 tort actions (actually mooted adversary proceedings) against ELI LILLY (see Appendices.A,B,pgs 9a, 10a, & 16a); had lost all of these lawsuits and therefore should be decreed an abusive litigant (see appendices,J&K,pgs 31a-32a where prior California federal judge having the 100+ judgments before him, twice ruled that Petitioner was not a vexatious litigant because **Petitioner had won all of the "100" contract reimbursement lawsuits** brought between the dates of 1991 to 1992 and referred to by the 10th circuit at App. pg. 9a); and that accordingly Petitioner's removed tort claims to Wyoming Judge Scott Skavdahl's court reportedly rehashing the previously prejudicially dismissed [contract] claims, were "virtually all meritless".

(See Appendix.B,pg. 17A, para. 3, for Judge Skavdahl's findings.). In fact, the 100 contract reimbursement lawsuits adjudicated in Petitioner's favor in the California small claims and municipal courts and referred too in the 10th circuit and Judge Skavdahl's orders (App. pgs 9a, 10a, & 16a), DID NOT AS A MATTER OF CALIFORNIA LAW ACT AS RES JUDICATA TO PETITIONER'S 4 TORT ACTIONS BROUGHT AGAINST ELI LILLY AND HER INSURERS. The seminole case for this holding is **Biro v. Keyes, B247927 (Cal. 2nd Dist. 2015) :**

The claim preclusion aspect of res judicata applies to **small claims judgments.** (Pitzen v. Superior Court (2004) 120 Cal.App.4th 1374, 1381 (Pitzen).) In California, what constitutes a "cause of action" for purposes of res judicata is determined by application of the primary right theory. **But different primary rights, or injuries, may be suffered by the same wrongful conduct.** (Le Parc Community Assn. v. Workers' Comp. Appeals Bd. (2003) 110 Cal.4th 1161, 1170 (Le Parc); see also Agarwal v. Johnson (1979) 25 Cal.3d 932, 954- 955 ["[T]he significant factor is the harm suffered; that the same facts are involved in both suits is not conclusive."].) **Although Biro's claims arose out of the same conduct, they seek to vindicate two different primary rights: (1) the right to obtain what one bargains for in a contractual relationship (the small claims action); and (2) the right to be free from the negligent infliction of bodily harm (the superior court action).** We hold that the small claims judgments in Biro's favor regarding the agreed costs of services underlying the health care provided to Biro by Keyes, although related to the same health care contract, **does not work as res**

**judicata to Biro's medical malpractice claim against Keyes.**

In the fact history of this certiorari petition, sub-section A: Petitioner will set out only 13 of the 20 felony prosecutions ELI LILLY and her insurers brought against Petitioner; the last one accruing on November 22, 2013 and as referenced in the 10th circuit order at App. pg 3a, to give this court a background of ongoing abuse of the criminal processes against Petitioner and hence torts consistently accruing in Petitioner's favor even through the order attacked in this certiorari petition.

Subsection B will summarize the 4 tort actions Petitioner brought against ELI LILLY dating back to 1991, and which had all been dismissed without prejudice at the time ELI LILLY sought to remove the Wyoming state case to the Wyoming federal court; the order attacked in this cert petition.

Finally, Subsection C will summarize the VOID criminal / civil contempt injunctions entered against Petitioner ex parte while Petitioner was pre-trial detained in various federal and state courts and which Petitioner attempted to attack in Judge Skavdahl's court, but Judge Skavdahl unconstitutionally struck Petitioner's Rule 60(b)(4)/declaratory judgment act/ inherent power motions asserting that they were not responses to ELI LILLY's latest false petition seeking yet another criminal/civil contempt injunction against Petitioner for abusive litigation practices.

## II. Factual History of Litigations Between ELI LILLY and ELI LILLY's Insurers And Petitioner Dating Back To 1991

Petitioner hereby incorporates the whistleblowing

allegations  set forth in the Introduction supra as if set fully herein,  as the preface to the following facts  history.

### A.  Summary of Thirteen (13) Of The Twenty (20) Felony Prosecutions Brought Against Petitioner Dating Back To 1991

#### 1.  ELI  LILLY And Her Insurers Procured A  Criminal Prosecution Against Lundahl For  Insurance Fraud  From  1991 To October 1,  1993  Seeking  Two  Life Sentence Terms Against Lundahl

In December of 1991,  ELI LILLY and her Insurers charged LUNDAHL with Insurance fraud with respect to services  LUNDAHL provided to ELI LILLY employees in re California Riverside County Superior Court case no. CR44162,  California v. Lundahl.   The imprisonment for this criminal prosecution  was two life sentence terms. The Jury Trial was to commence on July 23, 1993.

On July 18, 1993,  four  days  before the  criminl jury trial  in  the  insurance  fraud  case  was  to  start,     ELI LILLY's  insurer  WELLS  FARGO,   the  latter  also providing homeowners insurance coverage to one Jeffrey Compton,   conspired with  COMPTON to shoot and kill LUNDAHL in order to default the criminal action in  ELI LILLY's  favor.   A  criminal  report  was  made  to  the Riverside  County  Sheriff's  Office  that  same  day as  file number  WR93850029   by  officer  J.  Stull.  See  this sherriff's report filed in Idaho federal case:1:05-cv-00145-MHW-Document.7-1,Filed-07/28/05,Page-23.   On March 30,  1994,   LUNDAHL  would  obtain  a  civil  judgment against COMPTON for the assault in California Riverside County  Superior  Court  case  no.  242422,  LUNDAHL v. COMPTON,  et al.  but neither COMPTON nor WELLS FARGO  would  ever  pay  this  assault  judgment  resulting

from COMPTON discharging rifle bullets directly from the back veranda of COMPTON's neighboring property; irrespective that LUNDAHL brought numerous actions to collect on the judgment.

Nevertheless, the next day after the assault with a deadly weapon, on July 19, 1993, the state prosecutor dismissed the criminal prosecution with prejudice in LUNDAHL's favor concluding that ELI LILLY's employees and officers had filed false police reports and perjured statements to procure a malicious and bad faith criminal prosecution against LUNDAHL. See prosecutor's letter in 10th Circuit record: Appellate.Case:14-8000, Document:01019211322,Filed:03/04/2014,Pages:1211-1212. The State's official transcript verified that the action was dismissed for lack of any material witness against LUNDAHL and in the interest of justice. See 10th Circuit record:Appellate.case:14-8000,Document:01019211322,Filed: 03/04/2014, Pages:1214-1244 for these certified official records.

**2. On March 16, 1995, ELI LILLY And Her Insurers Brought A Criminal Contempt Action Against LUNDAHL Within The Context Of LUNDAHL's RICO Case Against ELI LILLY, et al, USDC-Cal. No. 5:94-cv-00021RJT**

On March 16, 1995 as Doc. No. 77 in re USDC-Cent.Cal. No.5:94-cv-00021-RJT, ELI LILLY and her insurers brought a criminal contempt action against Petitioner falsely charging Petitioner with forging the 10/1/1993 minute order dismissing the California state criminal action CR44162 and a related 10/17/1994 status conference order. After a two day trial wherein the executing judges denied the forgery

charges, Petitioner was acquitted on April 11, 1995.

### 3. The Second Assault Scheme ELI LILLY Procured Against Petitioner In September 1995 -- Resulted In An Acquittal Judgment In Petitioner's Favor

In September of 1995, ELI LILLY procured Petitioner's appearance (petitioner was then a Utah Citizen) into the state of California for a deposition proceeding to be conducted at ELI LILLY's Attorneys' Los Angeles law offices re the federal tort case no. USDC-Cal. 94-CV-21, LUNDAHL v. ELI LILLY (which was **the first federal tort case** Petitioner had ever brought against ELI LILLY.)

Petitioner brought her video equipment to film the deposition proceeding to make sure any transcript arising out of the proceeding was not altered in favor of ELI LILLY. Once Petitioner was directed to a conference room at LILLY's law offices and her video-equipment set up, a person came into the conference room wearing a police uniform and seized Petitioner under the guise of a "non-existent" traffic citation. Petitioner's video equipment was left at LILLY's attorney's law offices. This unnamed officer then drove Petitioner (3 hours away) to Laguna Niguel, California and escorted Petitioner into a classroom inside a commercial building where Petitioner observed ELI LILLY's attorneys present; a "represented master" to overseer the discovery proceedings; supposed witnesses for ELI LILLY, and; plain clothed persons representing themselves as privately contracted "security personnel / bailiffs" to provide security for the proceedings.

Petitioner objected to the proceedings being conducted at the distant location other than the location noticed in the Subpoena. Petitioner was escorted outside

the hearing room while ELI LILLY's attorneys discussed the matter with the official presiding over the proceeding.

While waiting in the hallway, Petitioner noticed that her original evidence documents locked inside Petitioner's car left in ELI LILLY's attorney's parking lot in Los Angeles, was being carted to the deposition room. A heated discussion arose between Petitioner and the Bailiffs, once Petitioner learned that her car had been broken into and her original trial evidence seized without her consent. As Petitioner attempted to retrieve her trial properties, one of the plain clothed bailiffs radioed the LILLY group inside the deposition room to alert them of Petitioner's actions. That officer later known as Fred Tillman was instructed to beat Petitioner with his baton. The other bailiff officer then joined the assault. The hallway was manned with security surveillance cameras because of large sums of money being received by the district IRS payment office located across the hall from the "deposition room". Petitioner's beating was memorialized on film.

ELI LILLY's attorneys subsequently instructed the "bailiff officers by radioed communication to take Petitioner to an HCA hospital owned by ELI LILLY and Senator Bill Frist's family and admit Petitioner under an involuntary hold, ignoring Petitioner's serious injuries. ELI LILLY had personnel waiting at this HCA hospital to immediately restrain Petitioner in 5 point insertions face down to a wooden bed, and then TILLMAN weighing some 350 lbs, subsequently jumped onto the back of Petitioners already compromised body rendering Petitioner temporarily paralyzed from a resultant spinal cord contusion. After chaining Petitioner to the wooden bed, Petitioner was subsequently involuntarily injected with a tampered drug that put petitioner into convulsions, a heart

attack and coma. [1] See transcripts describing these events in the 10th circuit Appellate.Case:14-8000,Document: 01019211322,Filed:03/04/2014-Pages:1018-1032.

Three days later and while Petitioner was still in a coma, Petitioner would be transferred to the federal jail under 302 FBI reports filed by ELI LILLY's attorneys that Petitioner had assaulted the two IRS officers that were acting as the security officers (bailiffs) for the deposition proceedings; and who had actually assaulted Petitioner. Petitioner was falsely imprisoned at the Metropolitan detention Ctr in Los Angeles while an indictment issued against Petitioner for two counts of felony assault in re USDC-Central Dist. Cal. Case no. CR-95-0114 AAH and until the jury verdict of acquittal was rendered in Petitioner's favor the following year.

At the pre--trial conference in the assault prosecution, an IRS surveillance videotape was submitted to the criminal court to show that ELI LILLY's attorneys were not in the hallway at the time of the assault and therefore could not testify on behalf of the IRS officers. The trial judge struck ELI LILLY's attorneys false 302 FBI reports and would not allow ELI LILLY's attorneys to testify before the "assault" jury.

---

1. This witness tampering event would be memorialized in a trial transcript of a subsequent assault prosecution brought against Petitioner in the federal court in Los Angeles as USDC-Cal. Case no. CR 95-114 AAH, on June 28, 1996. In addition, during the 2006 federal criminal proceeding ELI LILLY initiated against Petitioner as USDC-Utah case no. 2:06-CR-693, on June 23, 2008 as PACER Doc. no. 238, the Government's assigned panel attorney subpoenaed Petitioner's medical records arising out of this involuntary admission into the HCA facilities in 1995 and resulting in Petitioner's present chronic diagnoses of diastolic congestive heart failure. etc.

During the jury trial, the surveillance videotape of the assault altercation was submitted into evidence as defense exhibit no. "11"; IRS officer ESTES testified that he and TILLMAN had forcefully seized Petitioner; that ESTES had executed an excessive force memorandum to his superiors; both officers testified that the assault allegedly committed by Petitioner involved Petitioner biting the officers' hands while these officers were attacking Petitioner; a Nurse Practitioner for the Government 'testified that she examined the officers' alleged bite wounds under a microscope shortly after the altercation and could see no broken skin; and both IRS officers testified that they had no legal authority to seize either Petitioner or Petitioner's trial evidence against ELI LILLY.

The IRS assault jury returned a not guilty verdict against Petitioner within 10 minutes of submission to the jury.

While Petitioner was in a coma, paralyzed and in custody for the above referenced "counter-assault" prosecution, ELI LILLY went into the pending federal tort action between Petitioner and ELI LILLY, i.e. USDC-Cal. Case no. 94-CV-21 and sought to default Petitioner in that action for failing to comply with discovery obligations. The federal court rejected this motion because Petitioner was in custody on assault charges that would determine the legitimacy of Petitioner's purported avoidance of ELI LILLY's discovery tactics.

**4. ELI LILLY Brought A Fourth Criminal (Contempt) Prosecution Against Lundahl On August 12, 1996 Again Accusing Lundahl Of Forging Two Orders Dated 10/1/1993 and 10/17/1994 And For Which LUNDAHL Was Acquitted On April 11, 1995 (Referenced In Subsection 2 supra.)**

On August 12, 1996 as Doc. 602 in re USDC-Cent.Cal. no.5:94-cv-00021-RJT, ELI LILLY again charged LUNDAHL of forging the Two Orders Dated 10/1/1993 and 10/17/1994 and for which LUNDAHL had been acquitted on April 11, 1995. The federal judge denied LILLY's second contempt petition on September 19, 1996 as Doc.762.

5. **ELI LILLY And Her Insurers Procured A Utah Federal Grand Jury No. C699 To Convene On May 3, 2000 And Indict Lundahl For Allegedly Forging The 10/1/1993 And 10/17/1994 Orders**

For a third time ELI LILLY and her insurers procured a charging body to indict Petitioner for forgery of the 10/1/1993 and 10/17/1994 Orders above referenced. The Utah federal grand jury refused to return an indictment.

6. **ELI LILLY And Her Insurers Procured A Utah Federal Grand Jury No. C101 To Convene On September 19, 2001 And Indict Lundahl For Allegedly Forging The 10/1/1993 And 10/17/1994 Orders**

For a fourth time ELI LILLY and her insurers procured a charging body to indict Petitioner for forgery of the 10/1/1993 and 10/17/1994 Orders. The federal grand jury refused to return an indictment.

7. **On December 3, 2003, ELI LILLY And Her Insurers Charged Lundahl A Fifth Time With Forging The 10/1/1993 And 10/17/1994 Orders – By Invoking An Article I Judge Having A $9 million Pecuniary Interest In The Complaining Witnesses' Companies, To Conduct A Bench Trial**

**On The Double Jeopardized, Time Barred
And Collaterally Estopped Charges**

On December 3, 2003, ELI LILLY and her insurers procured an Article I bankruptcy judge owning a $9 million interest in the complaining witnesses companies seeking to convict LUNDAHL of forging the the 10/1/1993 and 10/17/1994 Orders, to conduct a bench trial on these felony charges. LUNDAHL filed a writ of mandamus and prohibition against this article I Judge as lacking jurisdiction to conduct felony prosecutions and without a jury. LUNDAHL also objected to any court's jurisdiction because the charges were barred by the double jeopardy clause, the collateral estoppel arm of the double jeopardy clause, failure of probable cause as determined by two separate grand juries, and the statute of limitations. An article III judge enjoined entry of any judgment given the prosecution had already proceeded by illegal compulsion of the article I judge. However ELI LILLY's attorneys in collusion with the Article I judge would fabricate criminal evidence during those proceedings for another identical criminal prosecution 3 years later as shown by a 2006 indictment entered in USDC-UT.case.no.2:06-CR-693.WFD– this time pursuing the forgery charges under the perjury statute to surreptitiously avoid a bar to the latest criminal prosecution.

8. **In October Of 2005, And Again In The Context Of A Civil Action, ELI LILLY's Insurers Wells Fargo And Washington Mutual Banks Falsely Charged Petitioner With Forging Their Respective Bank Notaries As Acknowledgments Onto Petitioner's Dec1arations Filed With The Court In re Los Angeles Homeowners Aid vs. Holli Lundahl, Utah No. 05010020.**

On October 12, 2005, in Utah Fourth Dist.case.no. 05010020, Los.Angeles.Homeowners.Aid v. Lundahl,et al., ELI LILLY's insurers Wells Fargo and Washington Mutual Banks falsely charged Petitioner with forging their bank notaries on acknowledgments to Petitioner's declarations filed in that action. Petitioner would be falsely detained on these charges until she was acquitted and her custody transferred to Idaho to answer charges of fictitious Idaho address in Idaho federal case.no.2:05-cv-127-RT.

### 9. Petitioner Was Transferred To Idaho To Answer Criminal Charges In Re USDC-Idaho.No.2:05-cv-127-RT

The federal Judge owning $450,000 stock interests in Wells Fargo, General Electric and Fidelity Ins. (some of the complaining witnesses for the criminal contempt proceeding) would convict plaintiff of fictitious Idaho address (Appendix.N-54a,58a) in closed chambers under 18 USC 1342 and of violating a court order not file process attacking the civil contempt component of the court's May 24, 2006 Order. (appendix.53a-55a). The Idaho Judge did so without employing the protection of any criminal procedures. Petitioner would file a timely Rule 59 motion attacking the constitutionality of the Idaho federal judges' orders, on August 1, 2006. The judge would summarily deny LUNDAHL's Rule 59 motion, and LUNDAHL would timely appeal. LUNDAHL would not be able to process this appeal because she would be seized on ELI LILLY's 2006 criminal charges in re USDC-UT.no.2:06-CR-693WFD, two months later.

### 10. ELI LILLY And Her Insurers Charged LUNDAHL For The Sixth Time With Forging The 10/1/1993 And The 10/17/1994 Orders In re USDC-UT.No.2:06-CR-693

Petitioner was seized on a new criminal action initiated by ELI LILLY and her insurers on October 4, 2006 by the indictment identified in 10th Circuit Appellate. Case:14-8000-Document:01019211322,Filed:03/04/2014-Pages:1240–1245. A review of the Indictment shows that the Indictment charges Petitioner for the Sixth time of forging the 10/1/1993 and the 10/17/1994 Orders first prosecuted in March of 1995 and resulting in LUNDAHL's acquittal, and repeatedly denied or dismissed as lacking in probable cause in 5 other prior forums. No extradition proceedings were exercised in Wyoming to authorize Petitioner's seizure and transfer across state lines into Utah as required under 18 U.S.C. § 3182. Petitioner was incarcerated under the Utah Federal perjury charges from October 8, 2006 until May 16,2009, AFTER the charges were dismissed for lack of probable cause and hence subject matter jurisdiction on 1/21/2009.

**11.  On 5/2/2007 WELLS FARGO Recharged LUNDAHL With Forgery Of Their Bank Notary On Lundahl's State Declarations As USDC-UT,2:07-CR-272-WFD; Charges Upon Which LUNDAHL Had Been Acquitted In Re Utah Fourth District Court Case No. 05010020**

After LUNDAHL had been acquitted on Wells Fargo's former notary forgery charges as applied to her state declarations submitted in Utah Fourth Judicial District Court case no. 05010020, LAHA v. Lundahl, etal., on 6/6/2006, WELLS FARGO unsatisfied with the failure to obtain a conviction against LUNDAHL, procured these identical charges to be brought against LUNDAHL in the federal forum as USDC UT.case.no.: 2:06-CR-272-WFD. On January 21, 2009, these charges were dismissed against LUNDAHL for lack of probable

cause (See 10th Circuit Appellate.Case:14-8000,Document: 01019211322,Filed:03/04/2014,Pages:1310--1311), but Lundahl continued to be pre-trial detained until May 16, 2009 at the Carswell Women's prison in Texas.

**12. On 8/10/2011, ELI LILLY And Her Insurers Colluded With Idaho Authorities To Bring Charges Against Petitioner For Alleged Theft Of An IP Address Pertaining To A Broadband Service - In Order To Email Third Parties; A Felony In Idaho, As Idaho v. Lundahl, Case No. 2011-CR-719**

Sometime before 8/10/2011, ELI LILLY and her insurers colluded with local Idaho authorities to bring charges against LUNDAHL for alleged theft of an IP address belonging to a broadband service located more than 25 miles from LUNDAHL's Idaho residence. The Oneida County Sheriff's department knocked down the front door to the dwelling, and when LUNDAHL went to grab her video camera to tape the illegal "raid", she was bilaterally handcuffed to a conference chair to prevent her from videotaping the raid, conducted under the pretext of a search and seizure. The local authorities seized all of Petitioner's legal files, paper & electronic evidence/records, and Petitioner's computers and electronic storage devices. The theft charge was dismissed as lacking in probable cause in May of 2012. The Idaho authorities destroyed Petitioner's seized papers and electronic records and returned Petitioner's computers and storage devices with gutted hard drives and electronic death knell viruses. Petitioner subsequently acquired a tort for computer abuse and fraud against ELI LILLY and her insurers.

**13. On 10/29/2013, ELI LILLY And Her Attorneys Unlawfully Removed A State**

**Action To The Wyoming Federal Court Underlying This Appeal As USDC--WY Case.No.2:13--cv--00241-SWS For The Purpose Of Prosecuting LUNDAHL, Once Again, Of Allegedly Falsely Claiming A Fictitious Address In The State Of Wyoming**

On 10/29/2013, ELI LILLY and her attorneys illegally removed a state action to the Wyoming federal court in violation of the unanimous consent rule 28 U.S.C. § 1446(b)(2)(A). The federal court Scott Skavdahl owned stocks interests in the illegally removed banking defendants who had been defaulted in the state court action and never signed any consent to the removal. Petitioner filed a motion for recusal within the 10 day period of the filing of the removal petition under 28 USC sections 144 and 455(b). Petitioner's affidavits also raised other jurisdictional objections to the federal court under 28 U.S.C. § 1446(b)(2)(A).

The LILLY Defendants colluded with the financially conflicted federal judge to summarily reject Petitioner's recusal papers and accuse Petitioner again of filing an action in a federal forum in which Petitioner allegedly did not have a residence contact; just like ELI LILLY and other complaining witnesses did ex parte before the 2006 Idaho federal court in re Lundahl v. NAR, Inc.,no.4:05-cv-00127-RCT while LUNDAHL was in custody on other charges by ELI LILLY's insurers.

The federal judge, deliberately ignored the unanimous consent violations under 28 U.S.C. § 1446(b)(2)(A) and scheduled a trial date for November 22, 2013 in which to determine if LUNDAHL had falsely claimed a Wyoming residence existed sufficient to pursue tort claims against the ELI LILLY and the Banking defendants in Wyoming

in violation of 18 USC § 1342.

Consistent with this collusive plan, the federal judge delayed rejecting Petitioner's recusal/disqualification motion and motion to vacate the hearing, until three days before the scheduled hearing date at a court located 7 hours one way traveling time to the Casper Wyoming federal courthouse from Petitioner's Wyoming's residence, knowing that mailed notice of the rejection would not reach Petitioner in time. The day before the scheduled hearing, Petitioner contacted the federal court to inquire into whether the hearing had been taken off calender and Judge Skavdahl had recused. Petitioner was told no. Petitioner then specifically requested permission to file her FRCP Rule 41(a)(1)(A)(i) notice of dismissal without prejudice via the court's ECF filing system, the clerk's email account, or emergency fax filing to prevent further proceedings before a clearly biased court. The court rejected Petitioner's request.

Petitioner made an appearance at the distant hearing so as not to be found in contempt. Ninety minutes before the hearing and well within the period of remand, Petitioner filed her Rule 41(a)(1)(A)(i) notice of dismissal. When the federal court nevertheless proceeded with the hearing to determine Petitioner's residential contacts with Wyoming, this conduct established as a matter of fact and law that Judge Skavdahl was in fact conducting a criminal proceeding. Nevertheless, at the close of the contempt trial Judge Skavdahl discharged the contempt charge of fictitious Wyoming address having no probable cause evidence to pursue the felony charge.

**B. History Of The Five (5) Tort Actions Petitioner Filed Against the ELI LILLY And Banking Defendants Since 1992 -- And All Dismissed Without Prejudice**

From 1991 to 1995, Petitioner brought approximately 100 health care contract reimbursement lawsuits against ELI LILLY's health plan in the small claims and municipal courts in the state of California where LILLY's Health Plan's principal offices were located. Petitioner also brought 140 health care contract reimbursement lawsuits against other Plans between the dates of 1991 to 1995 in the states of California and Utah. Petitioner's contract reimbursement lawsuits sought damages anywhere from $150 to $2250 per small claims suit. Petitioner won all of these small claims contract suits in her favor. As shown in BIRO supra, the California Supreme Court holds that a small claims contract suit does not act as res judicata to a tort action against the defendant. ELI LILLY committed a fraud upon the Wyoming Court by asserting such a baseless and false claim.

### 1. First Tort Action Brought By Petitioner Against the LILLY and Banking Defendants

In early 1992, Petitioner brought her first state tort case against ELI LILLY and the Banking defendants for defamation, fraud, false arrest-imprisonment, etc. as California case no. 214606 that was later changed to 219124. The state civil tort action was indefinitely during the prosecution of the criminal action by stipulation of the parties. See 10th Circuit Appellate.Case:14-8000,Document:01019211322,Filed:03/04/2014,Pages:1207-1209 for stipulation to stay approved by the California Superior Court.

After LUNDAHL won the California Insurance fraud case ELI LILLY procured against LUNDAHL in re case no. CR-44162 on October 1, 1993, LUNDAHL opened up a federal action against ELI LILLY 3 months later as USDC-Cent.Dist.Cal.-4:94-CV-021-RJT also suing ELI

LILLY for racketeering, ongoing defamation, conspiracy to violate LUNDAHL's civil rights, malicious prosecution, false imprisonment, abuse of process, conspiracy to assault and intentional infliction of emotional distress.

In the interim, the LILLY and Banking defendants removed the stayed California state tort action to the federal court & which was assigned USDC.Cal.West.Dist.-3:94-CV-045GLT. This removed action was merged into Petitioner's action filed into the Central District of California and assigned case no. 5:94-CV-021-RJT. Hence, LUNDAHL had one (1) consolidated tort case pending against the ELI LILLY defendants in California until these consolidated cases were removed to the Bankruptcy court in Utah in 2003 as shown in the 10th Circuit record at Appellate.Case:14-8000,Document:01019211322,Filed:03/04/2014,Pages:1248-1258 and dismissed by the Utah federal district court judge sitting in his bankruptcy jurisdiction, Paul Cassell, without prejudice on September 1, 2004 as shown in Appendix.C hereto at pages 21a-22a.

## 2. Second Tort Action Brought By Petitioner Against The LILLY And Banking Defendants

In 1997, Petitioner brought a second tort action against the ELI LILLY defendants, the USA, the Banking Defendants acting as ELI LILLY's insurers, and several individuals as USDC-UT,case.no.2:97-cv-951-TC under the FTCA and separately named torts for (a) assault which rendered Petitioner permanently disabled, (b) malicious prosecution re the criminal assault prosecution and a later prescription fraud prosecution both terminating in Petitioners favor in 1996 and in September of 1997, (c) additional RICO claims accruing from September 1995 forward, (d) intentional infliction of emotional distress;

(e) defamation against the private party defendants, (f) Bivens claims against the individual federal defendants, (g) Injunction claims against ELI LILLY's Banking insurers to bar foreclosure on Petitioner's Utah real properties, (h) Quiet Title claim against the USA for a fabricated tax bill created during LUNDAHL's assault prosecution referenced in section A, subsection 3, supra, and (i) a tax injunction claim against the IRS.

In 1998, Petitioner also filed an FRCP Rule 60(b) independent action to decree a 9th Circuit Court of appeals pre-filing injunction entered in case no. 97-80258, void ab initio. This equity action was consolidated into Petitioner's FTCA action.

This consolidated federal action was forum shopped to four different federal judges by the defendant tortfeasors in these cases, until this consolidated case landed with a federal judge Tena Campbell that owned $750,000 stock interests in all of the defendant's companies, including ELI LILLY's. See 10th Cir. Record Appellate.Case:14-8000, Document:01019211322,Filed:03/04/2014,Pages:1038-1056 for some of these financial records.

Petitioner and the other Plaintiffs filed a series of mandamus petitions with the U.S. 10th circuit appeals court to remove this financially biased judge. The 10th circuit denied these mandamus petitions asserting that the bias of the judge could be resolved in final judgments rendered in the case. From December of 1998 to March 13, 1999, the biased judge Tena Campbell entered sweeping orders dismissing plaintiff's RICO claims against the majority of the defendants for lack of personal jurisdiction in spite of a nationwide service of process statute that invoked personal jurisdiction in the forum. Defendant ELI LILLY had a corporate affiliate office in

Sandy Utah, therefore Judge Tena Campbell dismissed Plaintiff's claims against ELI LILLY for improper venue. Judge Campbells jurisdictional dismissals were all ordered with prejudice in violation of FRCP Rule 41(b).    Judge Campbell left remaining Petitioner's: (a)  Quiet Title claim against the USA,   (b) Tax injunction claim against the IRS; and   (c) Injunction and FHAA claim against a wrongful foreclosure of   Petitioner's Utah residence property.   On July 13, 1999, Judge Campbell issued  an indefinite stay order in the consolidated federal action. See 10th Circuit Appellate.Case:14-8000,Document:01019211322 Filed:03/04/2014,Page:1078 for this stay order.

Three and one-half years later,  Petitioner would file chapter 13 bankruptcy.    Petitioner would remove the stayed  consolidated FTCA/RICO action case.no.2:97-cv-951-TC and another RICO action against the Compton Defendants and ELI LILLY's  Banking insurers in re USDC-UT.case.co.2:99-cv-015, to the bankruptcy court as adversary proceeding no. 03-ADV-2401. After removal, Petitioner moved to withdraw her tort cases to an Article III judge as required under the Bankruptcy code.  After Petitioner's amended chapter 13 plan was confirmed on June 11, 2003,  Petitioner's tort actions removed to the bankruptcy court were dismissed without prejudice by an article I judge.  Petitioner filed a timely appeal of the dismissal order given Petitioner's removed actions stated other federal question claims outside of the Bankruptcy code.  The Article III district court judge Paul Cassel denied Petitioner's motions to withdraw as MOOT and entered an article III judgment dismissing Petitioner's removed cases without prejudice.   See attached Appendix.D at pages  23a-24a for this dismissal order. Petitioner appealed the dismissal without prejudice orders to the U.S. 10th Circuit court of appeals.   On 10/20/2005 as appeal no. 04-4231, the tenth circuit procedurally

terminated Petitioner's appeal because Petitioner was in jail on Wells Fargo's and WAMU's notary forgery charges above referenced in section A,subsection 8. The termination order affirmed the dismissal without prejudice orders of Judge Paul Cassell in 2004.

### 3. Third Tort Action Brought By Petitioner Against The LILLY And Banking Defendants

On October 6, 2006, Petitioner re-filed her saved claims against the LILLY and the Banking defendants in the Utah federal court. The federal court refused to assign Petitioner's filing a case number because unbeknownst to Petitioner, two days earlier, ELI LILLY's attorneys procured an incompetent and sealed indictment against Petitioner charging Petitioner **for the sixth time** of forging court orders dated 10/1/1993 and 10/17/1994 as referenced in Section A,subsection 10 supra.

Petitioner was seized (out of state in violation of the extradition statutes) on the October 4, 2006 indictment several days after she file stamped her re-newed action against the LILLY and Banking defendants. Petitioner's renewed tort action was ordered shelved by the Wyoming federal judge assigned to the criminal actions and the judge further ordered the clerks office not to accept any filings made by Petitioner, whatsoever. See Doc.no. 178 in USDC-UT-2:06-CR-693-WFD.

When Petitioner was shipped to the Carswell Women's Prison in her continuing status as a pre-trial detainee in July of 2008, Petitioner filed another renewed tort action in the federal court in Texas as USDC.N.D.TX,case.no.3:08-CV-1990, Lundahl,et al. v. USA, et.al. On September 17,2010, the Texas federal court dismissed Petitioner's tort case without prejudice because Petitioner was in custody in another criminal matter brought by U.S. Bank.

See Appendix,F.pg.25a   for dismissal without prejudice order.  Petitioner appealed the dismissal order for lacking a requested tolling injunction until Petitioner was out of custody.   Petitioner's appeal was assigned 5th Circuit.case.no.10-11156.   On March 29, 2011,  the 5th Circuit dismissed LUNDAHL's appeal for failure to prosecute. See Appendix.F,pg.26a.   On January 24, 2012, Supreme Court clerk Gail Johnson returned Petitioners timely submitted cert. petitions based on a procedural violation of rule 46.1.   Petitioner's cert petitions were resubmitted to Gail Johnson under a joinder with cert. no. 12-156 as raising a common equity question.  On October 9,2012, the Supreme Court declined certiorari review. App.27a.   Petitioner would timely re-bring her saved claims against the LILLY defendants in the Utah state court within several months of rejected review by the U.S. Supreme Court.

### 4.     Fourth Tort Action Brought By Petitioner Against The LILLY  Defendants

On January  2, 2013,  Petitioner re-brought her saved claims against  the LILLY defendants in the First Judicial District Court, State of Utah as case no. 130100009. Petitioner immediately served a  defendant in the Utah action, Marlene Telford, and sought a default judgment when this defendant did not appear and defend.    The Court clerk entered a default certificate against Marlene Telford and deferred entry of a default judgment for a sum certain amount to the District Judge.   Instead of entering a default judgment against Marlene Telford,  the District Judge  dismissed the Utah action without prejudice on October  28, 2013 because  no  other  defendant  had appeared and responded and because Petitioner was living in Wyoming.  See Appendix.H.pg.28a.

### 5. Fifth Tort Action Brought By Petitioner Against The LILLY and Banking Defendants

Fearing that the Utah district court might obstruct fair prosecution of her tort case against the LILLY defendants like as was done during the 2006-2009 criminal actions, Petitioner also filed a "saved" tort case against the LILLY and Banking defendants in the Wyoming District Court in Teton county as case no. 16263.  As admitted in the 10th circuit order, the LILLY defendants removed the state action to the federal court by filing a false pleading claiming that LUNDAHL did not have a Wyoming residence (but rather resided in Idaho),  or in the alternative,  that Lundahl did not serve the  Wyoming defendant with the state court process,  and therefore diversity jurisdiction existed to remove the action.  The Wyoming defendant immediately filed an affidavit averring she was served the state process and that the state record supported such service;   thus leaving the LILLY defendants to singly prove that LUNDAHL was a resident of Idaho and not Wyoming, in order to sustain the LILLY's defendant's removal under the diversity clause.

As set forth in Section A,subsection 13 @ pg.17 supra, the federal judge ignored Petitioner's complaints that the removal violated the unanimous consent rule  28 U.S.C. § 1446(b)(2)(A), refused to recuse,  and converted ELI LILLY's challenge to Petitioner's Wyoming residence status  as a felony crime under 18 USC § 1342.

The biased trial court delayed ruling on Petitioner's disqualification challenge and motion to vacate the November 22, 2013 criminal contempt hearing until 3 days  before the contempt was scheduled to be tried  at a distant court located more than 7 hours driving time from Petitioner's Wyoming residence.  Because the court would not allow petitioner to file her Rule 41(a)(1)(A)(i) notice

of voluntary dismissal without prejudice via the court's ECF filing system, Petitioner was compelled to file her Notice Ninety minutes before the hearing and well within the period of remand.

> **6. Based On The Foregoing History, None Of Lundahl's Saved Claims Against The LILLY Or Banking Defendants Had Ever Been Heard Or Decided On It's Merits In Any Prior Forum As Judge Skavdahl Would Collusively Rule In His Contempt Injunction Issued On January 30, 2014**

**C. Judge Scott Skavdahl Struck Petitioner's FRCP Rule 60(b)(4)/Declaratory judgment act/Inherent Power Motions To Decree Certain Sister Foreign Judgments Void And Then Criminally Sanctioned Petitioner For Filing These Equity Petitions Authorized As A Matter Statutory Law**

While Petitioner was unlawfully pre-trial detained for a period of nearly 12 consecutive years, the LILLY defendants and LILLY's banking insurers went into several courts and obtained VOID ex parte criminal contempt injunctions against Petitioner in violation of Petitioner's due process rights. Each of these contempt injunctions were VOID for the following summary reasons:

**(1)** *Lundahl* v. *Nor Inc., 434* F.Supp.2d 855 (D.1daho May 24, 2006):

Incorporating herein the averments contained in Section A, subsection 9 supra, @pg.14, and Appendix @pgs.53a-58a, the record shows that the Idaho federal court while sitting in private chambers and without the protection of criminal procedures, corruptly found that Petitioner did not have an Idaho residence; a false and

patently void finding considering Petitioner was subsequently maliciously prosecuted for stealing a broadband internet service from her then Idaho residence as averred @pg.16, Section A,subsection 12 supra. Nevertheless, as shown in Appendix pgs 53a-58a, the Idaho court fined Petitioner $500 for attacking void pre-filing injunctions from other jurisdictions in Idaho based on the false premise that Petitioner did not have ownership in an Idaho ranch. The Court ordered Petitioner to pay a fine of $500 for a felony violation of 18 USC § 1342 and for violating court order not to attack the court's criminal contempt judgment. The court also admittedly dismissed Petitioner's claims against the NAR defendants as an additional criminal penalty. As complained of by Petitioner in the Court's docket on August 1, 2006, the criminal contempt judgment was void for failure to provide Petitioner with criminal procedures under FRCr.P rule 42(b) and for advancing a criminal penalty in favor of a private party in violation of *Bessette v. W.B. Conkey Co.,* 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997 (1904).

**(2)** Stock v. Johnson, no. 03-4219 (10th Cir. 2005). This interlocutory appeal derived from trial case.no. 2:97-CV-951-TC which had been removed to the bankruptcy court as adversary proceeding no. 03-Adv.-2401 and later dismissed without prejudice on September 1, 2004 by an article III judge. See Appendix.D pgs.23a-24a. When the trial court dismissed the entire case without prejudice, the 10th circuit lost jurisdiction over any case and controversy.

In addition, reference to the 10th Circuit contempt order found @ Appendix.M.pgs. 46a-47a, the Court cited to Petitioner's 1999 objections which showed that the Court clearly violated Petitioner's due process rights without impugnity, to wit:

(1)  In issue no. 1,  the 10th Circuit found it okay that the presiding judge owned $750,000 stock interests in LILLY and  LILLY's malfeasance insurers  companies.

(2)  In issue nos. 2,  4, & 9,  the  10th  Circuit acknowledged that Petitioner had  a Tax injunction and Quiet Title claim  pending in the district court at the time of removal to the bankruptcy court and that these claims (which were  not dismissed by Judge Tena Cambell) subjected  Petitioner's  Tort case to the automatic stay of the bankruptcy code.

(3)  In issues 3,6 and 7,  the 10th circuit admitted that the majority of Petitioners claims were dismissed against the defendants for alleged lack of personal jurisdiction under rule 12(b)(2) or venue jurisdiction under rule 12(b)(3);  these types of dismissals are without prejudice,

Accordingly,   the contempt order on it's face evidenced the lack of jurisdiction by the 10th circuit court, especially as applied to the bankruptcy removal and automatic stay statutes.

**(3)**  The Ninth Circuit Court of Appeals,  *In re Lundahl, No. 97- 80258 (9th Cir. Jul. 17, 1997).*

While Petitioner was in a coma in jail on the above referenced assault prosecution,   ELI LILLY forged Petitioner's name to 22 notices of appeals in the 9th circuit court of appeals.   All of these appeals were summarily dismissed when the circuit clerk discovered that no final judgment had been entered in Petitioner's case against ELI LILLY,  i.e.USDC.C.D.Cal-5:94-cv-021-RJT.

In July of 1997,  without having any appeal with jurisdiction pending before it,   a  9th circuit commissioner bearing article I jurisdiction only,    in violation of the quorum clause,  28 USC § 1651,   notice and personal jurisdiction provisions of the 5th amendment,  entered a

contempt injunction against Petitioner based on the foregoing 22 forged notices of appeals in Petitioner's name. The 9th Circuit contempt injunction is void for lack of subject matter jurisdiction, lack of personal jurisdiction and because it was rendered in violation of Petitioner's due process rights.

**(4)** The United States Supreme Court, *Lundahl* v. Eli Lilly & Company*.,* 73 USLW 3631, 2005 WL 461288 (Apr. 25, 2005);

In June of 2004, the state of Utah seized Petitioner on multiple bad faith misdemeanor traffic charges as Utah v. Holli Lundahl, Fourth Judicial District Court case no. 045403074. Petitioner was detained in custody through April of 2005. While Petitioner was falsely imprisoned on the foregoing criminal charges, ELI LILLY's attorneys forged Petitioner's name to a Certiorari Petition submitted to the United States Supreme Court on January 19,2005 re a decision entered by the circuit court on October 25, 2004, as cert petition no. 04-8838. Petitioner was informed that the basis of the certiorari petition was enforcement of an interlocutory $50,000 default judgment in favor of ELI LILLY and which the bankruptcy court on June 11, 2003 permanently enjoined as void. Nevertheless, the injury presented by the default judgment was rendered MOOT by the time the circuit court sat on the appeal and most certainly by the time the forged certiorari petition was filed with the U.S. Supreme Court in January of 2005; because on September 1, 2004, the action in which the interlocutory default judgment was entered –was dismissed without prejudice by a Utah federal judge as shown in Appendix.C,pgs:21a-22a.

The U.S. Supreme Court contempt judgment is therefore void because it was based on a forged petition, because there was no active case or controversy at the time

the petition was submitted to the court, and because Petitioner was given no notice that the Supreme Court was considering any contempt matter against Petitioner.

**(5)** The United States District Court for the District of Utah, *In re Lundahl* (D.Utah July 8, 2004) (general order imposing filing restrictions)

This contempt injunction was entered in the private chambers of a Utah district court judge in July of 2004 without any case involving Petitioner pending before this judge; the contempt judgment was issued under the alleged authority of 28 USC § 1651 without stating a separate federal question claim to support the contempt judgment; there was no OSC served upon Petitioner regarding this contempt matter hence the absence of a return showing service of process; this contempt judgment was not supported by correct facts regarding the true dispositions of Petitioner's cases, and; this contempt judgment conceived in private chambers was first published in a case filed 8 months later in re 2:05-mc-253-DB and properly dismissed by the issuing judge upon Petitioner's jurisdictional challenges.

\*\*\*\*\*\*\*\*\*\*\*\*\*

Petitioner filed Rule 60(b)(4) / declaratory judgment act / inherent power motions with the federal court as part of her responses to ELI LILLY's latest petition to enter a contempt injunction against Petitioner under 28 USC § 1651 that would bar Petitioner from suing ELI LILLY in the future.

As trial doc. no. 59 and 10th Cir. Record Appellate.Case:14-8000.Document:01019211322,Filed: 03/04/2014,Pages:1325-1326, the financially conflicted

trial judge **struck Petitioner's Rule 60(b)(4)/ declaratory judgment act/ inherent power motions** seeking to dissolve the VOID sister foreign contempt judgments registered into the record by ELI LILLY and supporting ELI LILLY's petition for yet another contempt injunction. The Judge asserted that Petitioner's Rule 60(b) motions were not proper responses to ELI LILLY's petition seeking another contempt injunction against Petitioner, and further, found that Petitioner's attempt to attack the validity of the supporting contempt judgments was an act of criminal contempt by Petitioner. See Appendices at pages 11a and 17a, for court orders finding that LUNDAHL committed criminal contempt when she filed her rule 60(b)(4)/inherent power motions.

### III.  Reasons  For  Granting The Writ

**A.  The 10th Circuit  Court Of Appeals  Entered A  Decision That Conflicts With Decisions Of This  Court And  Other Courts Of  Appeal**

**1.  The 10th Circuit's Decision To  Reach Constitutional Issues Of Subject Matter Jurisdiction Before Reaching Obvious Procedural Rule Violations  Conflicted With This Court's  Well  Established Jurisprudence**

In  Fisher v. University of Texas, 11-345 (U.S. 2013), this court reaffirmed the rule that a court should **always first address patently obvious rule violations before reaching constitutional issues.).**

It  is uncontested that the LILLY defendants removed a state action to the federal court in violation of the unanimous consent rule by not obtaining the consent of all

defaulted parties in the state action. 28 U.S.C. § 1446(b)(2)
(A). In ***Chicago, R.1. & P. R. Co.* v. *Martin, 178 U.S.* *245,***
248 (1900) this court held that removal requires the consent of
**all defendants;** a decision this court reaffirmed in Lapides v.
Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613,620 (2002).

The federal circuit courts addressing the unanimous consent
rule agree. See **Gillis v. Louisiana, 294 F.3d 755, 759 (5th
Cir. 2002** (Defendant or defendants desiring to remove any
civil action ... from a State court shall file in the [appropriate]
district court of the United States a notice of removal **signed
pursuant to Rule 11 of the Federal Rules of Civil
Procedure, by all served and joined parties** to the state case
28 U.S.C. § 1446(a). Failure to obtain consent by all served
and joined parties is fatal to the removal petition.);   Loftis v.
United Parcel Service,  342 F.3d 509, 517, opining :

> We do not reach the question of the district
> court's exercise of discretion because we find that
> there was a more basic defect in the removal
> procedure, which should have been addressed
> first. The record plainly demonstrates that the
> removal petition was defective because all
> defendants did not join in the petition or consent
> to removal. *See Brierly v. Alusuisse Flexible
> Packaging, Inc.,* 184 F.3d 527, 533 n. 3 (6th
> Cir.1999), *cert. denied,* 528 U.S. 1076, 120 S.Ct.
> 790, 145 L.Ed.2d 667 (2000). Here, Defendant
> Adkins not only failed to consent to the removal,
> but affirmatively opposed it and filed a timely
> motion to remand.

> In *Brierly,* 184 F.3d at 533 n. 3, the court held:
> "The rule of unanimity requires that in order for a
> notice of removal to be properly before the court,
> all defendants who have been served or otherwise
> properly joined in the action **must either join in
> the removal, or file a written consent to the**

**removal.**" Following ***Chicago, R.1. & P. R. Co.
v. Martin, 178 U.S. 245,*** 248 (1900) and *Murphy
Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526
U.S. 344, 354, 119 S.Ct. 1322, 143 L.Ed.2d 448
(1999).

Failure to obtain unanimous consent forecloses
the opportunity for removal under Section 1446.
This rule is universally accepted in the other
circuits to consider the question. *See Marano
Enters. of Kan. v. Z-Teca Rests., L.P.,* 254 F.3d
753, 754 (8th Cir.2001);*Balazik v. County of
Dauphin,* 44 F.3d 209, 213 (3d Cir.1995); *Doe v.
Kerwood,* 969 F.2d 165, 167 (5th Cir.1992);
*Hewitt v. City of Stanton,* 798 F.2d 1230, 1232
(9th Cir.1986); *N. Ill. Gas Co. v. Airco Indus.
Gases,* 676 F.2d 270, 272-73 (7th
Cir.1982);*Cornwall v. Robinson,* 654 F.2d 685,
686 (10th Cir.1981).

The district court should have remanded the
action from the outset before reaching the
question of his subject matter jurisdiction.

See too Farmland National Beef Packing Co., L.P. v.
Stone Container Corp., No. 04-3028 (10th Cir. 2004):

Our examination of the timing of appellee's
motion to remand begins with the overriding
principle that **because federal removal
jurisdiction is statutory in nature, it is strictly
construed.** See Shamrock Oil & Gas Corp. v.
Sheets, 313 U. S. 100, 108-09 (1941). **"[A]ll
doubts are to be resolved against removal."**
Fajen v. Found. Reserve Ins. Co., 683 F.2d 331,
333 (10th Cir. 1982). It is true that all of the
defendants must consent to removal. Wisc. Dep't
of Corr. v. Schacht, 524 U. S. 381, 393 (1998)

(Kennedy, J., concurring); Without such consent the removal is defective from the outset.; §§ 1441(a),1446(a).

Defaulted parties must comply with rule 11 and sign their consent to removal. Accord in  Grimes v. Amtec Corp., Case 5:12-cv-01144-RBP (N.D. Ala. 2012);   White v. Bombardier Corp., 313 F. Supp. 2d 1295, 1304 (N.D. Fla. 2004); Grant County Savings and Loan Association, v. Arkansas Custom Homes Inc., 698 F.Supp. 169 (D.C. AR. 1988); McMahan v. Fontenot, 212 F.Supp. 812 (W.D.Ark.1963); Office Building LLC v. Castlerock Sec., Civ A. No. 10-61582, 2011 WL 1674963 (S.D. Fla. May 3, 2011); Schlegle & Sons Printing v. United English Breeders & Fanciers Assoc., Inc., 682 F. Supp. 36, 37 (C.D. Ill.1988); Beverly v. T.D. Bank NA, 09-34791 (S.D. FLA,2013); Carr v.  Mesquite  Indep. Sch. Dist., Civ. A. No. 3:04-CV 0239, 2004 WL 1335827 (N.D. Tex. June 14, 2004); New  England  Explosives Corp. v. Maine Ledge Blasting Specialist, Inc., 542 F. Supp. 1343, 1347, note 7 (D. Me. 1982).

In the state case,  the Clerk of the court served all of the  non-resident defendant parties with the summons and complaint by certified mail,   Green return receipt requested.  Six individual defendants did not appear and respond and were thus defaulted by the clerk of the court. The LILLY defendants did not obtain the written consent of any of the 6 defaulted defendants.

Citing United Mine Workers of America 67 S. Ct. 677, 330 U.S.   258, 293 (U.S. 1947) ,  Walker v. City of Birmingham , 388 U.S. 307, 315 (1967) and  J. Myer Schine at 557,   Petitioner argued that the district court's attempted invocation of removal jurisdiction by conducting a hearing to determine Petitioner's Wyoming residence status three weeks after the defective removal

petition had been filed with the court, was **"transparently unlawful"** and therefore the court lacked jurisdiction to consider any contempt charges against LUNDAHL.

The 10th circuit disagreed and held that:
> "[a] court does not usurp its power when
> it erroneously exercises jurisdiction,"
> Gschwind, 232 F.3d at 1346.

See  Appendix.A pg 8a.

Petitioner argued that the court's attempted exercise of jurisdiction over a matter in which the court held stock interests in the banking defendant's companies was not an erroneous exercise of jurisdiction, but rather it was a malicious and knowing usurpation of power.  Petitioner contends the fatal defect in the removal petition stripped the court of any and all  jurisdiction.

**2. Petitioner Had Statutory Right To Seek Dissolution Of The VOID Contempt Injunctions Supporting ELI LILLY's Latest Fraudulent Contempt Petition And It Was Constitutional Error To Strike Petitioner's Rule 60(b)(4)/ Inherent Power Motions Seeking To Dissolve The VOID Contempt Judgments Arising Out Of Other Federal Courts**

In  Horne v. Flores, 557 U.S. 433 (2009), this Court held that a  Rule 60(b) motion was proper to vacate an injunction that extends beyond its subject matter. Similarly the 5th Circuit and other circuit courts have held that rule 60(b) motions are proper when the moving party seeks to dissolve an offending injunction. See Kerwit Medical Products, Inc. v. N.H. Instruments (Humanetics, Inc.), 616 F.2d

833 (5th Cir. 1980), opined :

> Kerwit moved to cite Humanetics for contempt of the 1971 injunction. Humanetics contended that the order denying its Rule 60(b) motion in effect continued or refused to dissolve the challenged injunction. Held: The denial of Humanetics' Rule 60(b) motion was, among other things, a determination that Kerwit's injunction would remain in effect while the district court considered the damages to be awarded as a result of Humanetics' alleged contempt. It was proper to use rule 60(b) in the manner employed.

Also see Brumfield v. Louisiana State Board, No. 14-31010 (5th Cir. 2015):

> The DOJ explained, "that we're seeking modification of the injunction pertaining to educational voucher awards." The indigent black students intervened with a rule 60(b)(4) motion asserting lack of standing in the DOJ to modify the injunction. The Rule 60(b)(4) motion was a proper effort by the interveanors to dissolve the Doj's modified injunction for lack of standing and the district court error in granting the DOJ's modification of the injunction.

See also In re Metzger, 346 B.R. 806, 818 (Bankr. N.D. Cal. 2006) (applying Rule 60(b)(4) to void fourteen-year-old sale order for defective notice); Youngbear v. McKinney, 198 F.3d 252 (8th Cir. 1999) (In attacking the injunction Burlington could properly use Rule 60(b) (4)); State Street Bank and Trust Co. v. Inversions Errazuriz Limitada, 374 F.d 158, 178 (2d Cir. 2004) (**"Rule 60(b)**

**motion proper where issuing "court plainly usurped jurisdiction,"** citing Central Vermont Public Service Corp. v. Herbert, 341 F.3d 186, 190 (2d Cir. 2003); Maness v. Meyers, 419 U.S. 449, 460-63 (1975)(where contempt order breaches constitutional rights and is transparently invalid, the collateral bar rule does not preclude the contemnor from attacking the validity of the orders underlying the contempt in a collateral proceeding)

LUNDAHL contends that it was constitutional error for the court to strike LUNDAHL's Rule 60(b)(4)/ Inherent power motions to decree the registered foreign contempt judgments VOID ab initio which LUNDAHL filed as responses to ELI LILLY's sham petition for another contempt injunction against LUNDAHL. See *Sabariego v Maverick*, 124 US 261, 31 L Ed 430, 8 S Ct 461 (1888) (A judgment of a court without hearing the party or giving him an opportunity to be heard is not a judicial determination of his rights and *is not entitled to respect in any other tribunal.).* It was even more offensive to due process to used those same challenged contempt judgments as a basis in which to domino yet another contempt injunction against LUNDAHL. Finally, to criminally contempt LUNDAHL for providing an authorized defense to the enforcement of void contempt judgments, was a clear and unlawful usurpation of power.

**3. The Invocation Of 28 USC § 1651 To Enter A Contempt Injunction Against LUNDAHL, Constituted A Usurpation Of Power Given The Lack Of Any Independent Federal Question Before The Court**

In Cohen v. United States District Court For The Northern District of California, Judge Ware, No. 09-70378 (9th Cir. 2009), the unanimous Court held (quoting

Kerr v. U.S. Dist. Court, 426 U.S. 394, 402 (1976)), held that:

> When a statute speaks with clarity to an issue,
> courts must apply the clear meaning of the statute.
> Estate of Cowart v. Nicklos Drilling Co., 505 U.S.
> 469, 476 (1992); United States v. W. R. Grace, 504 F.3d
> 745, 757-58 (9th Cir. 2007) (finding clear error by the Court
> based on plain text of statute);

In Judge Skavdahl's pre-filing injunction, Judge
Skavdahl asserted that the jurisdictional basis for his pre-
filing contempt injunction was 28 U.S.C. § 1651. It is
uncontested that Judge Skavdahl never obtained federal
question jurisdiction over the removed action, either
procedurally or substantively.

In De Beers, 325 U.S. At 217, the Supreme Court
held that the writ authority under § 1651 is available to
"aid and confine a court to a lawful exercise of its
prescribed jurisdiction." See too Syngenta Crop
Protection, Inc. v. Henson, 537 U.S. 28, 123 S.Ct. 366,
369-70 (2002) (Held: **"[t]he All Writs Act does not
confer subject matter jurisdiction on federal courts;
there must be an independent basis for subject matter
jurisdiction in order to issue a Writ or injunction
under the All Writs Act.).** See too Fed. R. Civ. P. 81(b)
pertaining to federal district courts and providing use of
§ 1651 in aid of the district court's jurisdiction. Other
federal circuits concur that the All Writs Act does not
provide a basis for jurisdiction to issue a writ/ injunction
where no independent federal question is stated in the
petition before the court. See Trop'v. Fidelity National
Title Ins. Co., at al., 289 F.3d 929, 943 (6th Cir. 2004);
Morris v. T E Marine Corp, 344 F.3d 439 (5th Cir. 2003);
Gonzalez Saenz v. D. Reeves; et al, No. 11-17751 (9th Cir
2012); Retirement Systems v. J.P. Morgan Chase, 386
F.3d 419 (2nd Cir. 2004); Kiay v. United Healthgroup,

Inc., 376 F.3d 1092 (11th Cir. 2004); In Re Tennant, 359 F'3d 523 (D.C. Cir. 2004); U.S. v. Raheman, 355 F.3d 40 (1ˢᵗ Cir. 2004).     While the 10ᵗʰ Circuit cited to LUNDAHL's jurisdiction objection in this regard at App. pg. 7A, the 10ᵗʰ circuit adopted this jurisdictional defect against Petitioner out of spite and ill will to deny Petitioner access to any court within their jurisdiction.

De Beers supra held the a judicial "usurpation of power" occurs when the court "ha[d] no judicial power to do what it purport[ed] to do." 325 U.S. At 217-23. Here, it is clear that neither the District Court or the 10ᵗʰ circuit court of appeals had the judicial power to enforce a contempt injunction where it was transparent that subject matter jurisdiction was otherwise lacking in the federal court. Accordingly, a patent First Amendment violation existed in the Pre-filing Injunction because it was not based on legitimate constitutional grounds.     See also Laird v. Tatum, 408 U.S. 1, 11, (1972) ("[C]onstitutional violations arise from the deterrent, or 'chilling,' effect of governmental acts that prohibit the exercise of First Amendment rights."). Venegas v. Skaggs, 867 F.2d 527, 529 (9th Cir. 1989) the 9ᵗʰ circuit following the Supreme Court precedent said:

> "The Circuit Court was without authority to make the orders for the examination of petitioner in this case, and equally without authority to enforce these orders by process for contempt. The orders being without jurisdiction are absolutely void.

**Firefighters v. Cleveland, 478 U.S. 501, 525 (1986)** ("A controversy must further the **objectives of the law upon which the complaint was based." Id.);** If subject matter jurisdiction is lacking, the jurisdiction to render any order of contempt is also lacking. See also United States v.

United Mine Workers of Am., 330 U.S. 258, 295 (1947) (If no jurisdiction existed, "then the proceedings were void and the civil contempt citation must be reversed 'in its entirety.'').

Because the federal court had no federal question jurisdiction, the contempt orders issued by the court were void.

### 4. Judge Skavdahl Conjured Up Facts To Justify His Filing Injunction; Stripped Him Of Jurisdiction To Issue Any Rule In The Matter

*In re Krepela,* 628 N.E.2d 262, 271 (Nebraska 2001), the Nebraska Supreme Court held that: "Judges do not have the right to alter or conjure out of thin air key "facts" to justify their ruling in a case," following Richard A. Posner, *Cardozo: A Study in Reputation,* University of Chicago Press, 43); Arizona State Law Journal, VoL 41, 2009. The purpose of judicial oversight is to reassure the public that judicial misconduct is not tolerated or condoned *(In the Matter of Seaman,* 627 A.2d 106, 121 (New Jersey 1993); **The Texas Supreme Court has compared "fact fixing" to acting without jurisdiction.** See Hammett v. Zimmerman, 804 S.W.2d 663 (TX 1991); Philen v. Sorensen, 609 S.W.2d 656 (TX 1980)( "a trial court has no authority to ignore the undisputed facts of a case as to do so is equivalent to divesting a party of the right to a fair trial. ").

In the case at bar, Judge Skavdahl admits that her read Petitioner's complaint unlawfully removed to his court and determined:

> **Her legal claims in this case are virtually all meritless, having been denied or dismissed in various other courts on a number of occasions.**

See Appendix.B @ 17a, paragraph 3.

Petitioner's complaint gave the history described supra of at least 12 felony cases brought against Petitioner since 1991 and with the last felony prosecution terminating in May of 2012. Judge Skavdahl irregularly and unconstitutionally ruled that Petitioner's 100 health care contract reimbursement lawsuits against the LILLY defendants prosecuted from 1991 to 1994 in the small claims courts in California and the 38 adversary proceeding petitions filed during LUNDAHL's chapter 13 bankruptcy case in 2003 (many addressing discrete units of bankruptcy law), **in fact adjudicated Lundahl's continuing tort claims against the LILLY Defendants** (largely including abusive criminal felony prosecutions against LUNDAHL through the date of May 16, 2012 when the last criminal prosecution terminated.). Clearly these findings by Judge Skavdahl were "conjured up" to justify the entry of another VOID contempt injunction against LUNDAHL as they exact a prima facie defense of impossibility.

Moreover, Judge Skavdahl was under the obligation to impose the Savings statutes for the state of Wyoming with respect to Petitioner's saved claims also enumerated supra and specifically plead under the tolling allegations of Petitioner's removed state complaint. Petitioner's tolling allegations under Wyoming Savings statute, W.S. § 1-3-118, very specifically plead and proved by the 98 exhibits made part of the complaint by attachment, that all Five of Petitioner's tort actions brought against ELI LILLY since 1991, albeit the earlier cases consistently changing case nos. through transfers authorized under federal law, were all dismissed without prejudice by various coordiante courts and these dismissals were affirmed upon on appeal. It goes without saying that a dismissal without prejudice of

a civil suit IS NOT A MERITS dismissal. See Costello v. United States, 365 U.S. 265, 266 (1961). Accordingly, Judge Skavdahl's legal conclusion that LUNDAHL's "claims were virtually all meritless" was a clear misstatement of law and supported another ground for stripping Judge Skavdahl's contempt judgment of any jurisdictional credit.

Last but not least, Judge Skavdahl owned stock interests in Chase, Wachovia, and Wells Fargo upwards of $115,000 at the time he considered Petitioner's removal petition. See *Neder v. United States*, 119 S.Ct. 1827, 1833 (1999) (a biased judge is structural error . . .and requires reversal or nullification.). See also App.L pgs 41a-42a.

**5. The Broad Pre-Filing Injunction Issued By Judge Skavdahl Was Based On Past Completed Acts And Sought To Police Petitioner's Entire Code Of Conduct To Access Any Federal Court In Wyoming, Thereby Making The Injunction Criminal In Nature and Requiring The Protection of Criminal Procedures**

In **International Union, UMW v. Bagwell, 512 U.S. 821 (1994),** the court opined**:**

> The use of a court's contempt power is subject to arbitrary abuse." **Where the judgment awards no relief to a private suitor but exacts punishment for abuse of the court's processes, Bessette v. W.B. Conkey Co., 194 U.S. 324, 24 S.Ct. 665, 667, 48 L.Ed. 997, the judgment is criminal in** nature and requires a jury trial. *Bloom,* 391 U. S., at 210; See too Nye v. United States - 313 U.S. 33 (1941) : A Fraud upon the court charge carries a criminal hallmark and when

disputed must be prosecuted before a jury. Bloom v. Illinois, 391 U.S. 194 (1968) (Defendant submitted a forged will to the court after the putative testator's death.  His request  for a jury trial was refused by the trial court.  Reversed.  The charged act was a serious crime requiring  a trial by jury.)

Here,  the Virginia trial court  levied sanctions for  widespread  out-of- court violations of an injunction.   The Court then proceeded to police compliance with that injunction.  **When the court polices the respondent's compliance with an entire code of conduct in an injunction that the court itself  imposed,   the contempt is criminal in <u>nature.</u>**    The reason violations of injunctions are scrutinized under a higher criminal contempt standard is because [ 512 U.S. 834 ] elaborate and reliable fact finding is required to determine those violations.  **Cf. *Green* v. *United States, 356 U.S. 165,* 217, n. 33 (1958).**   In addition,  since the judge  fashions  the  injunction, **the risk of erroneous deprivation from the lack of a neutral fact finder may be substantial. *Id.,* at 214-215.**    Under these circumstances, criminal procedural protections are both necessary and appropriate to protect the due process rights of parties and **prevent the arbitrary exercise of judicial power.**

Accord in  Bagwell, 512 U.S. At 829 ; Gompers, 221 U.S. At 443);   F.T.C. v. TRUDEAU,  579 F.3d 754 (D.C. Cir., 2009); *W. Water Mgmt., Inc. v. Brown, 40 F.3d 105,* 109 (5th Cir. 1994);   Cobell   v. Norton, 334 F.3d 1128 (D.C.Cir. 07/18/2003); Pendergast v. United States, 317 U.S. 412  (1943); F. J. Hanshaw Enters.,  Inc. v. Emerald River Dev., Inc.,   244 F.3d 1128, 1139 (9th Cir. 2001);

Hovey v. Elliott, 167 U.S. 409, 17 S. Ct. 841, 42 L. Ed. 2D 215 (1897);   United States v.  LaFranca, 282 U.S. 568 (1931);  Helwig v. United States, 188 U.S. 605 (1903); In re: Glay Collier, II,  No. 14-30887 (5th Cir. 2014)( If the purpose of the sanction is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal. FRCrP  Rule 42(a)); Clark v. United States, 61 F.2d 695 (8th Cir. 1932);  ln re Contempt, No. 02-13 (WY 2002).

The Injunction entered against Petitioner was to exact punishment against Petitioner for alleged abuse of the court's processes,  as such Petitioner shoud have been entitled to criminal procedures along with the protection of a jury trial.

In addition,  the Injunction was suffuciently broad to render it unconstitutional as in violation of the First Amendment.   See too Gonzalez v. Feiner, 131 Fed.Appx. 373 (3d Cir. 05/11/2005) (We will vacate the District Court's pre-filing injunction order with instructions to limit the order only to parties and claims before the court to avoid broadness.);   Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F,2d 1515, 1524 (9th Cir. 1983) (pre-filing orders should be entered only when the defendant **attempts to relitigate matters previously litigated and estopped under the doctrines of collateral estoppel and res judicata.**) ; Blaylock  v. Tinner, 13-3151  (10th Cir. 11/04/2013)(an  "injunction must be carefully tailored and may not be so burdensome as to deny the litigant meaningful access to the courts. Remand to limit the injunction to the parties on litigated claims on their merits. Sieverding v. Colo. Bar Ass'n, 469 F.3d 1340, 1343 (10th Cir. 2006)).

## 6.   ELI  LILLY's  Sham Contempt Petition For

**Another Pre-filing Injunction Against Petitioner Was Not Protected By The Federal Litigation Privilege And Should Have Resulted In Sanctions In Petitioner's Favor**

". . .**knowing fraud upon,** and intentional misrepresentations to the court deprives the litigation of it's **legitimacy and is not protected by Noerr Pennington or the <u>First</u> Amendment.**" Kottle v. Northwest Kidney Centers , 146 F.3d 1056 (9th Cir. 1998). See too  UNITED STATES *v.* ALVAREZ, No. 11–210. (U.S. 2012):

> . . .although false statements having no target of injury are not actionable,  speech is outside the First Amendment protection **if the statement is a knowing and reckless falsehood** citing See *New York Times* v. *Sullivan*, 376 U. S. 254, 280. **False matter which undermines the function and province of the law and threatens the integrity of judgments . . .is not protected.** see, *e.g., Gertz* v. *Robert Welch, Inc.*, 418 U. S. 323, 340 when false facts are made in the context of official proceedings  and there is a showing that the false statements caused specific harm, the conduct will not be protected. . . . Specifically speech which is not protected includes: **advocacy intended, and likely, to incite imminent lawless action,** see *Brandenburg* v. *Ohio*, 395 U. S. 444 (1969) *(per curiam); Herbert v. Lando, 441 U. S. 153,* 171 (1979) (**"Spreading false information with resulting injury** carries no First Amendment credentials"); ***Garrison v. Louisiana, 379 U. S. 64, 75* (1964) ("[T]he knowingly false state-**

**ment and the false statement made with
reckless disregard of the truth, do not enjoy
constitutional protection").** Perjured testimony
or false statements **"are at war with justice"
because they can cause a court to render a
"judgment not resting on truth."** *In re
Michael*, 326 U. S. 224, 227 (1945).

See too *Living Designs, Inc. v. E.I.* Dupont de Nemours &
Co., 431 F.3d 353 (9th Cir.2005); *Bill Johnson's
Restaurants, Inc.* v. *NLRB*, 461 U. S. 731, 743 (1983)
("[F]alse statements are not immunized by the First
Amendment right to freedom of speech"); *Garrison* v.
*Louisiana*, 379 U. S. 64, 75 (1964) ("[T]he knowingly
false statement and the false statement made with reckless
disregard of the truth, do not enjoy constitutional
protection"). *California Motor Transport Co. v. Trucking
Unlimited* 404 U.S. 508 (1972)("The case is established
that abuse of those processes that produce an illegal result,
and effectively bar respondents from access to the
agencies and courts". . . is sham activity that will not be
immuned. 512-13. The Court indicated that evidence of
"unethical conduct" . . . is an indication of sham activity.

In this case at bar, the federal judge did not conjure
of the false facts on his own; rather he grafted these false
facts and representations made in his contempt injunction
from ELI LILLY's contempt petition. When Petitioner
sought counter sanctions against ELI LILLY, the judge
summarily denied Petitioner judicial relief based on the
assertion that ELI LILLY's illicit, unethical and fraudulent
actions in the midst of litigation was protected under the
litigation privilege doctrine. Petitioner contends that this
litigation conduct was not protected under the First
Amendment as previously ruled by this court and seeks a
definitive first impression rule from this court that this

lack of protection extends to the federal litigation privilege doctrine.

## CONCLUSION

For all of the foregoing reasons, Petitioner seeks certiorari review by this court of the 10th Circuit decision arbitrarily, capriciously and in violation of Petitioner's due process rights, affirming the Void Contempt Injunction entered by the Wyoming federal court Judge Scott Skavdahl on January 30, 2014. Petitioner also seeks a rule that the Tenth Circuit Judgment entered on June 8, 2005, case no. 03-4219, Appendix.M, pgs 45a- 52a be declared void ab intio for the aforesaid reasons. Finally, Petitioner requests that this court also vacate it's own contempt judgment entered against Petitioner in 2005 and referenced in App. O pg. 69 as a MOOT controversy at the time this forged petition was submitted to this court.

Dated: April 14, 2016

Holm Lundahl