## IN THE UNITED STATES DISTRICT COURT
## FOR SOUTH DAKOTA, PIERRE OFFICE

225 South Pierre Street, Pierre, SD 57501

| | | |
|---|---|---|
| BRENDA BURTON and HOLLIE TELFORD | ) | |
| Plaintiffs | | |
| v. | ) | CIVIL ACTION NO. **3:16-cv-3033 RAL** |
| UNITED STATE OF AMERICA; | ) | **VERIFIED SUPPLEMENTAL** |
| ALAN B. JOHNSON;  NENA JAMES AND THOMAS DEERING IN | ) | |
| THEIR INDIVIDUAL  OFFICIAL CAPACITIES;  GLOBAL E. LLC | ) | **OPPOSITION TO CENTURY-LINK'S MOTION AND BRIEF FOR FILING INJUNCTION & JOINED  BY  REMAINDER DEFENDANTS** |
| aka PIONEER  PARK;  ANN CLAYTON JUDY CIRRILLO, CENTURYLINK | ) | |
| O'KELLEY H.  PEARSON, LAW OFFICE HICKEY  AND EVANS LLP, DONALD | ) | **CROSS MOTION TO DECREE ALL PRIOR PRE-FILING** |
| THATCHER,    EVA TAFOYA, HUD and DOES 1-10. | ) | **INJUNCTIONS VOID AB INTIO AND TO VACATE SAME AS** |
| Defendants | ) | **AS  REQUIRED BY LAW** |

COMES   NOW both Plaintiffs  Brenda Burton and  Hollie Telford to SUPPLEMENT their OPPOSITION to CENTURYLINK's motion for filing injunction against plaintiff TELFORD only.   Plaintiffs also OPPOSE the remainder defendant parties joinders,  that last joinder occurring on April 17, 2017.  Finally,  HOLLIE cross moves for a declaratory decree adjudicating all prior pre-filing injunctions entered against HOLLIE, void ab initio and to vacate same as required by law.

## ARGUMENT

1. **Plaintiff Telford Is Not The Alter Ego Nor ALIAS Of Her Sister Marti Lundahl  As Declared  In  MARTI's  Separately Filed Declaration**

On page 2 of Centurylink's motion for pre-filing order,  CENTURYLINK has parroted the same false claims parroted by a previous trial court  in Idaho while TELFORD aka LUNDAHL was falsely imprisoned under one of many of ELI LILLY's procured criminal prosecutions, to wit:

> Ms. Lundahl frequently uses aliases. See Lundahl v. Zimmer, 296 F.3d 936, 937 (10th Cir. 2002)(noting Ms. Lundahl filed a suit in the District of Utah under the name of Holli Telford); see also Lundahl v. Nar Inc., 434 F. Supp.2d 855, 860 n.2 (D. Idaho May 24, 2006)("Plaintiff has employed numerous aliases in her past litigation including, but not limited to, H.M. Telford, M.H. Telford, Marti Telford, Holli Lundahl, Marti Lundahl, and Holly Marti Telford").

 As TELFORD has attested before and as she attests yet again herein by this verified pleading and as Marti Lundahl attests in her separately filed  declaration,   TELFORD has never used the aliases of H.M. Telford,  (M. H. Telford is a typographical error for Ms. H. Telford), Marti Telford, Marti Lundahl, or Holly Marti Telford.   In fact,   Hollie's sister Marti Lundahl,  who admittedly exists,  has used  the name of Marti Telford and  Marti Lundahl as is her permitted right given both names are on Marti's identification.   Accordingly to represent that the  foregoing aliases belong to plaintiff HOLLIE,  is a continuing fraud upon this court..

## 2.    The Claims Presented In This Litigation Have Never Been Previously Heard In A  Full And Fair Hearing And On Their Merits Thus Lacking The Necessary Element To Granting A Serious  Filing  Injunction Against TELFORD

### A.  Plaintiffs Claims Were Never Heard By Judge Johnson's Court

One alleged  basis for CENTURYLINK's baseless petition for an unconstitutionally broad pre-filing order is because Plaintiff TELFORD aka LUNDAHL allegedly seeks to re-litigate matters that were subject matter of  prior proceedings before another court, namely defendant Judge JOHNSON's federal court in Wyoming,   and whom Plaintiffs have advanced a Larson-Dugan claim against Judge JOHNSON in this court for total abdication of his judicial duties and for acting ultra  vires  the  law  in  the  Wyoming  Court action. [1]   As shown in footnote 1 infra,  Judge JOHNSON never reached the federal or state questions presented in the SAC before this court.

_____

1.  Plaintiffs filed a separate Opposition to Defendant Judge JOHNSON's motion to

footnote 1 continued. . .
_____

dismiss and moved for cross summary judgment on their sole Larson-Dugan claim against
JOHNSON.   JOHNSON has recently filed a REPLY and OPPOSITION to Plaintiff's summary
judgment motion and which completely fails to address the constitutional and statutory
violations  Plaintiffs alleged and argued  against  JOHNSON.   More particularly,  Plaintiffs
asserted numerous ultra vires acts by  JOHNSON,   to wit:

      (a)    **Violation of  the removal  procedures provided by 28 USC 1441, et seq**.
JOHNSON  violated the rules attendant to the removal statute under 28 USC section 1441,
when JOHNSON directed that a state unlawful detainer action be removed into Plaintiff
TELFORD's originally filed FHA, ADA, section 504 and Ex Parte Young case pending before
JOHNSON's court as TELFORD vs. PIONEER PARK, et al. Case no. 2:15-cv-0188 ABJ ;
thereby causing an inherent and corrupt misalignment of the parties in TELFORD and her
sister's original civil rights case and ultimately barring Plaintiff TELFORD and her sister from
litigating any of their federal claims presented in the former Wyoming federal action.

      The  Government's response to  this  ultra vires act  was  whitewashing
JOHNSON's  dishonest, immoral, and illegal acts.   There  simply  exists no authority to
remove a state unlawful detainer action where TELFORD and her sister were defendants –
into a pending federal civil rights  case where TELFORD and her sister were the Plaintiffs and
thereby cause a structural misalignment of the parties sufficient to render the entire process
void ab inito.

      (b)    **Structural  Error In  Violation of  the Federal Rules of Civil Procedure**.
To  remedy the structural misalignment of the parties,  Judge JOHNSON then orally directed
TELFORD and her sister to appear as the Cross Plaintiffs in their original filed civil rights
case;    however JOHNSON never changed his court docket to reflect such    alignment
changes given the Rules of Civil  Procedure did not authorize such procedural deception.

      The  Government's response to this procedural gaming  that   was directly
orchestrated by Judge JOHNSON was that TELFORD and her sister misaligned themselves
in the prior federal action because no order was formally of record by JOHNSON  changing
TELFORD and her sister's statuses to Cross Plaintiffs  in  USDC-WY case no. 2:15-cv-0188
ABJ.   Moreover as evidence that  JOHNSON directly disavowed any authorization to allow
Plaintiffs to appear as Cross Plaintiffs in Plaintiffs originally filed civil rights action  USDC-WY
case no. 2:15-cv-0188,  the Government presented JOHNSON's Order denying as MOOT  all
pending motions seeking to dispose of TELFORD and her sister's federal civil rights claims,
as exhibit "1" attached hereto.   In that order, JOHNSON  impliedly denied authorization for
TELFORD's changed party status when he stated that TELFORD's Declaratory Judgment
Petition and TELFORD's  Verified [amended] Cross Complaint,  were not properly before
JOHNSON's court. . . after JOHNSON entered his remand order.   Judicial Notice should be
taken that the caption heading of JOHNSON's order at exhibit "1" attached   places GLOBAL
E, LLC, d/b/a PIONEER PARK  MHC  as the plaintiff in the action and MARTi LUNDAHL and
HOLLIE TELFORD as the defendants in the action.   Drawn  in support of this OPPOSITION
is the most recent court docket in USDC-WY case no. 2:15-cv-0188 ABJ and attached hereto
as exhibit "2".   As shown on the face of this docket,  GLOBAL E, LLC, d/b/a PIONEER PARK
MHC  are  and were defendants in this case,  not plaintiffs.   MARTI LUNDAHL and HOLLIE
TELFORD are and were  plaintiffs in this case,  not defendants.   Accordingly,  JOHNSON's
own self imposed docketing procedure caused the structural misalignment,  not TELFORD or
her sister.

footnote 1 continued. . .
_____

      (c)   **Violation of  the remand procedures provided by 28 USC 1446, et seq**
Referencing   JOHNSON's order MOOTING all motions and attached hereto as exhibit "1",
shows a clear indication  that JOHNSON intended too and did remand not only the removed
state actions, but also purported to remand Plaintiff TELFORD's FHA, ADA, section 504,  and
Ex Parte  Young action originally filed in the federal court – to a Wyoming State Court.    A
reading of 28 USC section 1446 provides no procedure for remanding an originally filed
federal case to a state court.   In fact there is no federal rule or statute that permits for a
transfer of an originally filed  federal case to a state court.    JOHNSON simply fabricated this
procedure  under  the  cloak  of  his  office  for  the  clear  purpose  of  obstructing  Plaintiff
TELFORD's right to have her federal claims in this case ever heard.

      (d)   **Violation of Procedural Due  Process Rights Under the 5th Amendment
To Hear and Try Plaintiff's Federal and Supplemented State Law Claims.**
Referencing again   exhibit "1" attached,   Judge JOHNSON's Order denying as MOOT All
Pending motions,  shows that JOHNSON declined to hear and try any matters related to
plaintiff TELFORD's and her sisters  "Amended Complaint" also denominated on the court
docket attached hereto as exhibit "2" as a   Verified Cross Complaint and which document set
forth Plaintiff TELFORD's  amended FHA, ADA, section 504,  and Ex Parte Young claims. An
order denying a document as MOOT is equivalent to an order dismissing the document or
pleading without prejudice. Accordingly,  neither Plaintiff's  federal or supplemented state law
claims were ever heard on their merits.

      (e)   **Violation of the Civil Rights Removal Statute 28 USC section 1443.**
JOHNSON violated TELFORD's due process rights when rejecting removal under the federal
civil rights statute,  28 USC section 1443 because :  (a) Plaintiff TELFORD's household was
bi-racial,  (b)   the fair housing act provided for equal protection rights under the housing laws
for race protected households,  (c)  the state of Wyoming would not allow federal defenses,
counterclaims or equitable defenses to be prosecuted in eviction proceedings, see Ferguson
v. Haygood, supra, 225 P.2d at 342 ("neither the court of the justice of the peace nor the
action of unlawful detainer is designed to try equitable defenses or counterclaims.") followed
in KNIGHT v. BONER, 459 P.2d 205 (Wyo. 1969),  (d)  the state judge DEERING would only
allow  two  jury  instructions  to  be  submitted  to  the  eviction  jury    because  the
GLOBAL/PIONEER defendants refused to execute a written lease contract with Plaintiffs
accommodating Plaintiffs' demands that GLOBAL/PIONEER waive their "no mobile home lot
sublease policy",   and, (e)   the eviction action was prosecuted  in retaliation to Plaintiff's
seeking equal protection of their housing rights.    In support of their removal right under
section 1443, plaintiff TELFORD  submitted case authority  Bossen Terrace v. Ewing,  4-91-
Civil-824,  (USDC, MI  1992) and  which asserted removal was proper under section 1443
because Ewing was afro-american,  her landlord was trying to evict her on racial grounds and
the  Michigan  state  court  would    not  allow  Ewing  to  present  any  federal  defenses  or
counterclaims into the state eviction action.   These facts correlate directly with the facts in
TELFORD's case.   Accordingly JOHNSON violated TELFORD's rights to have the federal
laws equally applied to TELFORD under the civil rights removal statute.

      (f)   **Violation of the  Removal Statute based on the Diversity Clause.**
JOHNSON violated the removal statute based on the Diversity Clause when he found that
TELFORD and her sister could not meet the minimum amount in controversy of $75,000 to
sustain a removal under the diversity clause because the  eviction action  only determined the

footnote 1 continued. . .
_____

right of possession to the property and sought costs in the amount of $180.

JOHNSON clearly did not read TELFORD of her sister's objection papers.  In those papers,  the TELFORD defendants argued that the amount in controversy was required to be determined by the pecuniary result to either party in the suit.  The TELFORD defendants directly cited to the following supreme court authorities for this rule of law.  Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 351 (1961) citing Smith v. Adams, 130 U.S. 167, 175 (1889) (in actions for recovery of possession of property, **"the rule is that the jurisdictional test of the amount in controversy takes in view the pecuniary result to either party in the suit.**" Accord in   Ronzio v. Denver R. G. W. R. Co., 116 F.2d 604, 606 (10th Cir. 1940);  Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 405 (9th Cir. 1996); Oklahoma Retail Grocers Ass'n v. Wal-Mart Stores, Inc., 605 F.2d 1155, 1159-1160 (10th Cir. 1979); McCarty, 595 F.2d at 393-395;  Smith v. Washington, 593 F.2d 1097, 1100 & n.6 (D.C. Cir. 1978); Berman v. Narragansett Racing Ass'n, 414 F.2d 311, 314 (1st Cir. 1969); Government Employees Ins. Co., v. Lally, 327 F.2d 568, 569 (4th Cir. 1964); Ridder Bros. v. Blethen, 142 F.2d 395, 398-399 (9th Cir. 1944);  Elliot v. Empire Natural Gas Co., 4 F.2d 493 (8th Cir. 1925).

The  TELFORD  defendants further argued that even if their damages could only be limited to their possession rights to GLOBAL's mobile home lot,  and could not include damages related to the TELFORD defendant's original tort  claims improperly merged with the removal petition,  that the 10th circuit in re  Ronzio v. Denver R. G. W. R. Co., 116 F.2d 604, 606 (10th Cir. 1940) and other federal courts  held that the amount of damages associated with an unlawful detainer action  was determined by (1) the value of the right of exclusive possession of the land for the term of any lease applicable thereto  (See Ezon v. Cornwall Equities Ltd., 540 F. Supp. 885 (S.D. Tex. 1982), and  the rent for the remainder of the lease **including any renewal terms,** the cost of improvements made by Defendant, and costs that would result from dispossession.  See ***Poplar Avalon, LLC v. Sprintcom, Inc.,* 2016 U.S. Dist. LEXIS 86497 (W.D. Tenn. July 5, 2016).**  "In a suit to enjoin  threatened or continued commission of certain acts,  the amount or value involved is the value of the right which the complainant seeks to protect from invasion,   or of the object to be  gained by the bill.   Hunt v. New York Cotton Exchange, 205  U.S. 322, 27 S. Ct. 529, 51 L. Ed. 821; W. & A. R. R. v. R. R. Comm., 261 U.S. 264, 43 S. Ct. 252, 67 L. Ed. 645; McNeill v. Southern Ry. Co.,202 U.S. 543, 26 S. Ct. 722, 50 L. Ed. 1142; Bitterman v. Louisville & Nashville R. R. Co., 207 U.S. 205, 28 S. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693.

In  consideration of  these authorities, the TELFORD  defendants  presented the  following  diversity  damages  relative  to  depriving  the  TELFORD  defendants  of  the possessory rights to the mobile home lot in question.

(1)  It is undisputed  that  the TELFORD defendants had  a five  year tenancy lease with BURTON's  trustee/landlord at the rate of $1750 per month, and that  HUD was funding that tenancy lease by way of a HAP contract.  It is uncontested that the HAP contract attached indirectly to GLOBAL/PIONEER's mobile home lot and that the GLOBAL/PIONEER defendants interfered with the HAP contract by refusing to grant the TELFORD defendant's accommodation request to sublease GLOBAL/PIONEER's mobile home lot under the same conditions  and  financial  terms  offered  to  other  members  of  the  Park.    Had  the GLOBAL/PIONEER defendants not interfered with the HAP contract attaching to their mobile home lot in violation of the  federal housing laws,  the TELFORD defendants would have secured rent benefits for the term of the 5 year lease in the amount of $105,000.

Accordingly,  based on footnote one of this supplemental brief,  Judge Johnson did not decide any matters concerning the claims before this court.

**B.   Judge Skavdahl's Dismissal Order Of Plaintiff's First Attempt To Litigate Part of The Claims Herein Is Not Entitled To Any Respect Because It Was The Product Of  File Tampering**

CENTURYLINK next points to Plaintiff TELFORD's  First and earlier efforts to have

_____

(2)    It is uncontested the pursuant to 24 CFR  § 983.205(a), the TELFORD defendants were entitled to increase the initial term of their HAP contract for another 10 years to meet the initial 15 year term limit.  The monetary value of  this additional 10 year renewal lease period  was  $210,000.

(3)    It is further uncontested that  § 983.205(b) permitted the TELFORD defendants to extend their HAP lease for another 15 years after the initial lease period of 15 years expired.  The value of that additional 15 year lease extension period was $315,000.

(4)    It is further uncontested that the TELFORD defendants had utility contracts attaching to the home which were committed to an additional two year period in the amount of $1,980.

(5)    It is  also uncontested that  both TELFORD and her sister  moved into the Green River Property to be close to a cancer hospital. Since 2014, the state of Wyoming has expended more than $1.5 million in medicaid services for the TELFORD household.  Removal from the Green River Property to another residence out of county that Plaintiffs will be able to afford without the housing benefits usurped from the TELFORD household  as a result of the GLOBAL/PIONEER defendants corrupt conduct,  likely in or about the parameter of Riverton Wyoming area for example,  will cost the TELFORD household at least $5,000 in travel costs per year.   For the term of the initial   15 year lease period authorized by law for HAP contracts,  the TELFORD family could be taxed an additional $75,000 in travel costs that would have been avoided had the GLOBAL/PIONEER defendants not deprived the TELFORD household of  living accommodations in GLOBAL's Park.

Based  on the foregoing,  the TELFORD household claimed the total value of $707,000 attaching to their lost possession rights on the  GLOBAL/PIONEER  mobile home lot;   well past the amount in controversy required under  the diversity statute of  $75,000.

Judge JOHNSON  considered  none  of TELFORD or her sister's arguments. See Collins v. Morgan Stanley Dean Witter, 224 F.3d 496; 47 Fed. R.  Serv. 3d (Callaghan) 399 (5th Cir. 2000)  (**No judge has the authority to ignore motions under the rules.  The district courts must carefully consider each  motion on its merits, without begrudging any party who wishes to avail himself of the opportunity to present such motions.**). **Brown v. State, 816 P.2d 818 (Wyo. 08/23/1991)** (The t**ruthfulness of the facts cannot be questioned by the judge.** Lester v. Com., 250 Ky. 227,62 S.W.2d 469 (1933). This rule has an extended history. Dickenson v. Parks, 104 Fla. 577,  140 So. 459 (1932).  Orderville Irr. Co. v. Glendale Irr. Co., 17 Utah 2d 282, 409 P.2d 616 (1965));    **Ohlander v. Larson, 114 F.3d 1531 (10th Cir.1997)** (It has been concluded that federal courts cannot simply refuse to consider a party's pleading because that party has contempt orders against them.    A district court's  discretion does not excuse a court's failure to exercise any discretion, nor does it save an unpermitted exercise of discretion from reversal.);   *Alamance Indus., Inc. v. Filene's, 291 F.2d 142, 146-47 (1st Cir.), cert. denied, 368 U.S. 831 (1961).*

some of the  claims herein stated, heard by the Wyoming federal court system and which were illegally usurped by biased Judge Scott Skavdahl  (the same judge subject of TELFORD aka LUNDAHL's Certiorari Petition before the U.S. Supreme Court in 2016 and attached as exhibit "3" to TELFORD's Opposition to Centurylink's motion for pre-filing injunction as DOC. 127-3).

The procedural history as restated is, in early October of 2015, TELFORD and her sister submitted an original federal complaint seeking relief for  FHA, ADA,  section 504 and ex parte young claims, in conjunction with a Petition To Proceed Pro Se by TELFORD,  to the Wyoming federal court in Cheyenne.  After a review of TELFORD's pre-flling petition, Judge Johnson directed that the case be assigned a case no. TELFORD v. PIONEER PARK, 2:15;-cv-178.   After ex parte communications with defendant state judge Nena James and GLOBAL's attorney STULKEN,  JOHNSON allowed an out of district judge Scott Skavdahl to usurp jurisdiction over Plaintiff TELFORD's  civil rights case in violation of the random selection policies.  Upon receiving the case Judge Skavdahl proceeded to GRAFT  Plaintiff TELFORD's  first Petition To Proceed Pro Se from the Court record in order to subsequently summarily  dismiss TELFORD and her  sister's  first  submitted  civil rights complaint – "for TELFORD's alleged failure to submit a  Petition To Proceed Pro Se'.  This ultra vires and criminal act is not entitled to any respect.   See  *Inquiry Concerning Johnson, 692 So. 2D* 168 (Florida 1997)  (Judge removed for  directing  clerk to backdate court records in order to fix the end result of a case.);   *In re Judge Lewie Hilton* (TX 1991) (judge who had  altered and fabricated criminal docket sheets according to the designs of the judge was desciplined.); and *In the Matter of Esworthy*, 568 N.E.2d 1195 (New York 1991)  (Judge removed for modeling the record to imply inculpitory  admissions had been made by the accused.).

After TELFORD complained to the  U.S. office of administrative hearings about Skavdahl's record tampering acts,    TELFORD's concealed Petition to Proceed Pro Se was transferred back to  JOHNSON's court  who then s open a new case as USDC-WY, case no. 2:15-cv-0188 ABJ.  JOHNSON then dismissed TELFORD and her sister's civil rights action WITHOUT PREJUDICE based on a perceived error in TELFORD's Petition to Proceed Pro Se.  TELFORD immediately thereafter  corrected the clerical error and submitted a corrected Petition To Proceed Pro Se which, yet again, was now concealed from JOHNSON's docket ; an event that would not be permitted to happen  if Pro Se  litigants  were permitted  to file electronically  in the Wyoming Federal  Courts.

The concealing of Pro Se documents from the court record was not the only unconstitutional practice engaged by the Wyoming federal courts.  Plaintiff's also complained about fact fixing  for the corrupt purpose of fixing dispositions before the court.  One of these complaints of false fact fixing was incorporated into TELFORD aka LUNDAHL's  uncontested U.S. Supreme Court certiorari petition at page 4,  [Doc. 127-3] ,  where LUNDAHL averred:

> ELI LILLY would knowingly and willfully file false pleadings before various federal courts claiming that Petitioner had previously litigated more than 100, and later, 38 additional  tort actions  against ELI LILLY (see Appendices. A, B, pgs 9a, l0a, & 16a);  had lost all of these lawsuits and therefore should be decreed an abusive litigant. (See appendices, J & K, pgs 31a-32a where prior a California federal judge having the 100+ judgments before him, twice ruled that Petitioner was not a vexatious litigant because Petitioner had won all of the "100" contract reimbursement lawsuits brought between the dates of 1991 to   sic [1996] . . . Wyoming Judge Scott Skavdahl's court finding that LUNDAHL's previously prejudicially dismissed [contract] claims in LUNDAHL's favor, were "virtually all  meritless". . .

> was  a false finding because  claims resulting  in  money judgments in favor of LUNDAHL on  their merits largely in 1992,  cannot  more than 22 years later,   be determined as meritless or frivolous given HOLLIE won those cases "on their merits".

 "**Clear usurpation of power exists where there is no arguable basis on which [the court] could have rested it's findings"**  quoting  Lubben, 453 F.2d at 649.

Hence,  Judge Skavdahl engaged in fact fixing in order to fix a contempt judgment against LUNDAHL. [2]  See *In re  Krepela*,  628 N.E.2d 262, 271 (Nebraska 2001))(Judges do not have the right to alter or conjure out of thin air key "facts" to justify their ruling in a case, following  Richard A. Posner, *Cardozo: A Study in Reputation*, University of Chicago Press, 43);  Arizona State Law Journal, Vol. 41, 2009.  The purpose of judicial oversight  is to reassure the public that judicial misconduct is not tolerated or condoned (*In the Matter of Seaman*, 627 A.2d 106, 121 (New Jersey 1993);  The Texas Supreme Court has compared **"fact fixing"  to  acting  without  jurisdiction.**   See  Hammett v. Zimmerman, 804 S.W.2d

_____

2.   Plaintiff's Certiorari Petition, DOC. 127-3,  identifies Judge Skavdahl's ultra vires acts committed in 2013- 2014 in re the state action illegally removed from a Wyoming state court  by ELI LILLY and her banking insurers in violation of the unanimous consent clause of the removal statute and the federal bribery statute, 18 U.S.C. § 201, to federal Judge Skavdahl's court.   As uncontested by ELLI LILLY in the US Supreme Court case  (see DOC. 127-4),  Judge Skavdahl regularly engaged in ultra vires acts  without sanctions by judges of the 10th circuit court.

663 (TX 1991); Philen v. Sorensen, 609 S.W.2d 656 (TX 1980)( "a trial court has no authority to ignore the undisputed facts of a case as to do so is equivalent to divesting a party of the right to a fair trial."); Moreover, "fact fixing" is construed by many courts to be a form of record tampering. *In re Melograne*, No.1 JD 99, Order (PA, 2000)(Judge violated civil rights based on a conspiracy to fix cases before the statutory appeals division of the court of common pleas.); *In the Matter of Esworthy*, 568 N.E.2d 1195 (New York 1991) (Judge removed for modeling the record to imply inculpitory admissions had been made by the accused.).

In addition to modeling the above stated false record before his court in order to enter the 2014 contempt injunction against HOLLIE in re Order Imposing Filing Restrictions on Holli Lundahl, *Lundahl v. Eli Lilly & Company et al*, 13-CV-00241, (D.Wyo. 2014), Judge Skavdahl also had stock interests in ELI LILLY's banking malfeasance insurers in that action, which he failed to address and thereafter properly recuse. See United States v. Ciavarella, 716 F.3d 705, 729-30 (3d Cir. 2013) (judges' false financial disclosure filings supported conviction on honest services mail fraud carried out through scheme of bribery and kickbacks even though evidence did not establish specific bribe or kickback for the filing). In spite of this financial interest, the 10th circuit would refuse to disqualify Judge Skadahl's participation in the case under the mandamus statute, thus making any rule by the 10th circuit equally void. See Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 167-68 (3d Cir. 1993) ("We are authorized to order the reassignment of this case to another district court judge pursuant either to the All Writs Act, 28 U.S.C. § 1651(a), or 28 U.S.C. § 2106."). See too V. T. A., INC. V. AIRCO, INC., 597 F.2d 220, fn 8 (10th Cir. 1979) (If the underlying judgment is void, the order based on it is also void. Austin v. Smith, 114 U.S.App.D.C. 97, 103, 312 F.2d 337, 343 (1962). If voidness is found, relief is not a discretionary matter; it is mandatory. See 11 C. Wright A. Miller, *supra* note 7, at § 2862.). Finally see *Neder v. United States*, 119 S.Ct. 1827, 1833 (1999)(where party is denied a fair and impartial judge, the proceedings and subsequent judgment are void.). Judge Skavdahl's pecuniary interest in the contempt proceedings rendered him an incompetent court and the resulting judgment void ab initio, aside from the fact that Judge Skavdahl did not have subject matter jurisdiction from the outset based on the unanimous consent violations.

### 3. Judge Skavdahl Illegally Invoked Jurisdiction Over Mart Lundahl's Insurance Collection Case In Re Lundahl v. American Bankers Ins.

9

**Co. of Florida, USDC-WY, case no. 12-cv-280 SS, AND Engaged
In False Fact Finding And Legal Conclusions In That Case;
Nevertheless The ABIC Case Does Not Justify A Filing Injunction
Against HOLLIE,  A Different Party,   In This Case**

CENTURYLINK  has  also  cited to  another case  in which Judge Skavdahl usurped jurisdiction, i.e.  *Lundahl v. American Bankers Ins. Co. of Florida*, 610 Fed.Appx. 734, 737 (10th Cir. 2015).   That case involved an insurance judgment originally awarded in Marti Lundahl's favor by a Utah court of general jurisdiction.   In the Utah action,  Marti filed a petition to garnish ABIC's insurance policy to satisfy the judgment.   ABIC objected to the garnishment action asserting lack of policy coverage and also complained that  Marti had made  specific references to ABIC in the insurance judgment.  The state court denied ABIC's objection regarding policy coverage but entered an amended judgment striking references to ABIC's name.  ABIC therefore lost the garnishment claim.   ABIC did not appeal the Utah judgment trying  the garnishment matter.      After MARTI  won  the  matter concerning  her garnishment rights,   Marti  registered the Utah Judgment into  a state court in her domicile state of Wyoming  for collection against  ABIC.

ABIC  subsequently removed  the  state  action to the  knowingly  biased court of Judge Skavdahl under the diversity clause via the premise that  ABIC had the right to object to  the  garnishment exceeding  $75,000 – before  a federal court.     Marti objected to the removal based on three jurisdictional grounds, to wit:   (1) Diversity Jurisdiction was lacking because her action was a direct collection action against the carrier;  (2) The Rooker Feldman Doctrine stripped the federal court of subject matter jurisdiction to retry  ABIC's garnishment objection given the final state court judgment deciding this right against ABIC and which ABIC failed to appeal;  and  (3)  because the Doctrine of res judicata barred ABIC from retrying any garnishment objection.   After removal,  ABIC additionally moved to dismiss Marti's collection action  on venue grounds because the original judgment was entered in Utah.

As  Judge JOHNSON had done in the removed eviction action,   Judge Skavdahl also completely ignored  MARTI's  arguments going to the issue of remand.  Judge Skavdahl summarily ruled  that  the  direct action rule  did  not  apply  to  Marti's removed state action (irrespective that ABIC was the only defendant named in the collection action) because Marti's action on its face was a garnishment proceeding.  Judge Skavdahl disregarded Marti's other jurisdictional defenses of Rooker Feldman and res judicata, deliberately omitting these defenses from his opinion denying remand.  Later Judge Skavdahl  dismissed the  Insurance

case  without prejudice on venue grounds. [3]

After dismissing the insurance case for improper venue,  Judge Skavdahl subsequently scheduled a hearing for November 22, 2013 to consider  removal sanctions against MARTI. Judge Skavdahl  demanded that MARTI  personally appear.    MARTI  filed a motion for telephonic appearance indicating that she had cancer and would be seeking treatment out of state on November 22, 2013.  Judge Skavdahl days before the hearing denied Marti's motion for telephonic appearance.   Marti did not receive notice of the denial order and  accordingly appeared by telephone on November 22, 2013.   Judge Skavdahl rejected Marti's phone appearance and ordered  MARTI to personally appear on December 23, 2013 or be arrested for criminal contempt of court.   Before MARTI appeared  on December 23, 2013,  MARTI filed sealed pleadings attaching her medical records which supported her diagnoses of MDS and invasive carcinoma. Some of the records showed that MARTI was at a medical facility in Idaho receiving treatment on November 22, 2013.  Marti appeared at the December 23, 2013 hearing and personally testified about her MDS and cancer diagnoses which required MARTI to seek treatment with various specialists in the mountain states.   Judge Skavdahl took the

---

3.    In 2016, A Utah federal Court  would  reaffirm that  Marti Lundahl's removal petition was not based on either frivolous or sanctionable grounds in an unrelated case based on the same legal premises cited by MARTI -- in re Dall v. Constantino, et al. , Case 2:15-cv-00125-DAK (UT,  2016))  attached hereto as exhibit "10".   In that case, a default judgment was entered against DALL for an alleged  credit card debt.  The creditor filed a garnishment action against DALL and was successfully  garnishing DALL's wages.   Dall challenged the garnishment action in a direct rule 60(b) attack on the default judgment.  DALL also filed a separate state action against the creditor for violations under the  Fair Debt Collection Practices Act.   The creditor immediately removed the FDCPA case to the Utah federal court and moved for dismissal on the basis of res judicata, **the Rooker Feldman Doctrine** and the statute of limitations.   The federal judge concluded that because the state court had already decided the garnishment issue against DALL (irrespective that there was pending a rule 60(b) attack) and because DALL's FDCPA claim was directly based on the alleged improper means of obtaining  the garnishment judgment,   **that the federal court lacked subject matter jurisdiction to hear the federal claim under the ROOKER FELDMAN doctrine** as directly entwined with the garnishment judgment.

Marti  argued  a  like defense  in  her collection  action, to wit:   that ABIC had already tried her defense to Marti's garnishment rights in the Utah state court action and never appealed the trial court's judgment denying  ABIC's garnishment defense.  Accordingly, ABIC  could not remove Marti's subsequently filed collection action in Wyoming  to the Wyoming federal court on a second attempt to attack Marti's garnishment rights – as to do so would constitute a back handed appeal of the Utah Judgment denying ABIC's garnishment defense  (irrespective that ABIC attempted to do so under the diversity statute.).

matter under submission and on or about December 26, 2013, yet again, engaged in false fact finding to fix a contempt judgment against Marti when Judge Skavdahl collusively found without any evidentiary support that MARTI had:

> "filed numerous frivolous pleadings and motions containing factual and legal misrepresentations, conducted the litigation in bad faith in an attempt to harass [the defendants] and to harass and perpetrate a fraud on the court…."

. . . purportedly based on MARTI's claims that she suffered from various cancer related diagnoses'; clearly a corrupt and ultra vires act given the state of Wyoming has paid more than $1.5 million dollars in medicaid services for MARTI's cancer related diagnoses'. [4]

On appeal, two 10th Circuit judges in violation of the quorum clause and without conducting any review of the sealed medical records sent to that court in support of Marti's claim that she suffered from various cancer related diagnosis', issued a brief affirmance order i.e. Lundahl v. American Bankers Ins. Co. of Florida, 610 Fed.Appx. 734, 737 (10th Cir. 2015) invalidly regurgitating Judge Schavdahl's order that Marti had factually and legally misrepresented her health issues . . . in an attempt to harass and perpetrate any fraud upon Judge Skavdahl's court. Aside from the fact that the 10th Circuit failed to competently address MARIT's appellate issues, the U.S. Supreme court in re NGUYEN V. UNITED SnTATES (01-10873) 540 U.S. 935 (2003) had long held that violations of the quorum clause under 28 U.S.C. § 46(b) will result in a void judgment. Attached hereto as exhibit "11" is this authority. Here, only two article judges sat on Marti's appeal. MARTI petitioned for certiorari review by the Supreme Court on this legal error. The U.S. Supreme Court summarily denied Marti's certiorari petition on the basis that the high court was not intended to be a court on the correction of legal error. Nevertheless, efforts to advance the VOID trial and appellate judgments in this action against Plaintiff TELFORD, **are clearly ongoing ultra vires acts.**

### 4. Multiple Trial Court and Appellate Court Petitions Forged in TELFORD aka LUNDAHL's Name Over The Past 27 Years While TELFORD aka LUNDAHL Was Falsely Imprisoned

---

4. *See* Marti's separately filed declaration attacking Judge Skavdahls' wrongful actions.

**In  Various Federal And State Jails For a Period  Of No Less Than 12 Consecutive Years  At  The  Defendant Tortfeasors' Hands,  Cannot  Ground  A  Contempt  Judgment  Against TELFORD aka   Lundahl  In This Action**

CENTURYLINK cites to LUNDAHL's alleged abusive litigation history by quoting  a United States District Judge for the  Southern  District of Texas's uninformed finding of the number of cases LUNDAHL has allegedly filed in various  federal courts across the country by the end of 2008,  and while LUNDAHL was still falsely imprisoned in jail as a pre-trial detainee on repetitive criminal prosecutions brought by ELI LILLY, to wit:

> A review of the U.S. Party and Case Index reveals that [Lundahl] has filed more than sixty pro se lawsuits in the federal courts of California, Utah, Nevada, Montana, Texas, Idaho, and over eighty appeals in the federal appellate courts of those states.
>
> *Lundahl v. United States of America et al.*, 08-CV-3786, (S.D.Tex. Jan. 14, 2009).

First and foremost, by this verified  supplemental pleading, TELFORD aka LUNDAHL adamantly denies that she has ever filed  more than sixty pro se  lawsuits in the district courts above mentioned, or over eighty appeals in the federal appellate courts.     In fact TELFORD denies having filed anywhere near the amounts attributed to her,  pre – 2008; the date of the Texas federal judge's  challenged finding on numerosity.   Moreover if there are, in fact,  this many cases filed under the label of TELFORD aka LUNDAHL's name, then they are cases which were forged in TELFORD aka LUNDAHL's name while TELFORD aka LUNDAHL was falsely imprisoned in jail as a pre-trial detainee for more than 12 years in successive criminal prosecutions procured by ELI LILLY against LUNDAHL  and    AS  ELI LILLY ADMITTED BEFORE THE  U.S. SUPREME COURT IN 2016.  Refer back to Doc. #  127-4  PageID #: 1815 for ELI LILLY's wholesale admission to LUNDAHL's pleading facts in  U.S. Supreme Court case no. 15-1325.  Refer back to TELFORD aka LUNDAHL's Certiorari Petition at Doc. # 127-3 herein at  PageID #: 1770,  for ELI LILLY's admission  that TELFORD  had been in jail as a pretrial detainee for a period of more than 12 years based on more than   20 successive felony prosecutions procured by ELI LILLY  against LUNDAHL from the dates of 1991 to 2013.   See  PageID #': 1770,  PageID #: 1795,  PageID #: 1796,  and  PageID #: 1814   for the page references where LUNDAHL had pleaded without contest by ELI LILLY, the many instances ELI LILLY forged LUNDAHL's name to initiating petitions while LUNDAHL

was in jail as a pre-trial detainee.

Accordingly,  TELFORD aka  LUNDAHL  denies that this court or any other court has established that she filed and litigated [emphasis added], more than 60 federal district court actions and more than 80 federal appeals, abusively, and on their merits;  as forged petitions are prima facie VOID process. [5]

Moreover,  CENTURYLINK  has arbitrarily referenced these forged case's as a basis for this court to enter a new pre-filing injunction against TELFORD,  knowing that the undefined cases referenced supra were void ab initio as largely premised upon forged petitions in TELFORD aka LUNDAHL's name,  in abtensia.   The All Writs Act cannot be enforced based upon VOID process.  See Maness v. Meyers, 419 U.S. 449, 460-63 (1975) (**where contempt order breaches constitutional rights and is transparently invalid,** the collateral bar rule does not  preclude  the  contemnor  from  attacking  the  validity  of  the orders  in  collateral  proceedings.). See also Venegas v. Skaggs, 867 F.2d 527, 529 (9th Cir. 1989) ("The Circuit Court was without authority to  contempt based on underlying orders which were  absolutely void.).   "[T]he constitution, by prohibiting an act, renders it void, if done,  otherwise;  as the prohibition is nugatory.   Thus, a warrant is a nullity where based on prohibitory acts."  Anderson v. Dunn, 19 U.S. 204, 217 (1821).   "A judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere."   World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980).   "A void judgment is from its inception a legal nullity."  Boch Oldsmobile, at 909 F.2d 657, 661 (1st Cir. 1990);  Lops v.   140 F.3d 927, 941 n. 19 (11th Cir. 1998) ("something that  is  null  is void and

---

5.    It is well settled that a document which has been forged is void ab initio. See In re Orosco, No. 87-1933 (9th Cir. 1988) (forged document is void in into). In addition,  **"any document based on a forged document is likewise void**." See In Re Abboud, BAP No. 99-033 (10th Cir. 1999) citing to Heiser v. Woodruff, 327 US 726 (1946) (judgment procured by fraud is void ab initio.). See also Weber Meadow-View Corp. v. Wilde, 575 P.2d 1053, 1054 (Utah 1978) (where the record showed subterfuge, devious means, or collusion, any resulting judgment is void and must be vacated.); In re KOUGASIAN v. TMSL, INC., 359 *F.3d* 1136 (9th Cir. 2004) (Full Faith and Credit Clause does not give credit to a judgment obtained by way of extrinsic fraud and fraud upon the court. Citing *Barrow v. Hunton,* 99 U.S. (9 Otto) 80 (1878) (**"If the court "finds that fraud played a part in obtaining a judgment, it will deprive the judgment of any enforcement effect.");** McDaniel v. Traylor, 196 US 416, 423. In re Factor VII, 159 F.3d 1016 (7th Cir. 1998) (if the appellants are correct that the consent decree is "void," **then the injunction, being ancillary to it,** would fall with it and both are unappealable because a void order imposes no obligations.).

has no legal or binding force.");   Carter v. Fenner, at 136 F.3d 1000 (5th Cir. 1998)("[a] void judgment may not be enforced.) ; "Courts are constituted by authority, and they cannot go beyond the power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities. They are not voidable, but simply void, and this even prior to reversal." Valley v. Northern Fire & Marine Ins. Co., 254 U.S. 348, 354 (1920).

Here,  because the many filings cited by the Texas Federal Judge were forged, they are void  ab initio and  cannot  support any  contempt judgment  entered  by this court. [6]

---

6.   The Texas federal judge did not bother to distinguish which cases TELFORD aka LUNDAHL could have actually filed and litigated on their merits in the federal court system while being falsely imprisoned for more than 12 years.  TELFORD aka LUNDAHL  asserts that the only federal cases that she was able to attempt to litigate whatsoever,  were two cases in California, i.e  case nos. 2:94-cv-045-GLT consolidated with  2:94-cv- 021 RJT. While this consolidated case was  appealed to the 9th circuit court of appeals  as appeal case no. 98-56850,  in 2002 the 9th circuit dismissed the appeal for failure of the trial court to enter a final rule 58 judgment.  Attached hereto as exhibit "3"  is the docket in that appeal reflecting that dismissal order on August 26, 2002 along with the attached order.  After that appeal was dismissed for lack of jurisdiction and remanded back to the district court,  the district court case was removed to the Utah bankruptcy court  as adversary proceeding no. 03-P-02402 and withdrawn to the Utah District Court as a personal injury  and RICO case as USDC-UT case no. 2:04-cv-088 PC.  See removal petition as exhibit "4" attached hereto.  On September 1, 2004,  this removed action was dismissed without prejudice by Judge Paul G. Casell.  See Docket attached hereto as exhibit "5".  TELFORD is unable to provide the actual dismissal order because she received a computer virus on the computer memorializing this document and the Utah federal courts have sealed TELFORD's aka LUNDAHL's bankruptcy records as shown in exhibit "6" attached, thus preventing access to this document.
        As to the second tort action LUNDAHL filed against ELI LILLY, LUNDAHL filed an FTCA  and RICO action for  assault, false imprisonment,  malicious prosecution,  and witness tampering  re a federal criminal prosecution in re USDC-CA, case no. 95-CR-114 AAH which was adjudicated in LUNDAHL's favor by a jury acquittal in 1996. See relevant transcript where the federal judge described the  assault upon Lundahl's person as rediculous and later as outrageous in exhibit "7" attached hereto.   After having left LUNDAHL in a coma after the assault,  federal IRS officers counter charged LUNDAHL with counter assault for allegedly biting the officers on their hands during the assault (bite wounds federal medical personnel denied existed after examination of the  two charging officers assault wounds under a microscope and denying existence of any broken skin or bite marks. See exhibit "13" attached.)  It took a federal jury 6 minutes to acquit LUNDAHL of assault charges against her two charging assailants. See exhibit "8" attached.  Nevertheless, LUNDAHL sued the USA for torts related to her assault and both the USA and  ELI LILLY and her  attorneys for Malicious prosecution and witness tampering under RICO.   TELFORD also sued various  California agencies for  stealing her  properties  in the  state of  California during the assault trial.

Nevertheless, TELFORD aka LUNDAHL summarily attacks each of the VOID contempt judgments cited by CENTURYLINK herein and entered against HOLLIE largely in ex parte fashion and by judges in violation of the criminal conflict of interest statutes, 18 USC 201. [7]

> **5.   All Of The Filing Injunctions Cited By CENTURYLINK On Page 4 Of CENTURYLINK's Petition For A Filing Injunction In This Action, Were The Product Of Either Forgery OR Fraud By The Petitioning Defendants And Hence Must Be Declared VOID;  As Such They May Not Support A Filing Injunction Against Telford In This Action**

---

pursuant to designated schemes orchestrated by ELI LILLY while TELFORD aka LUNDAHL was under custody of the USA.  This FTCA/RICO action was likewise removed to the Utah Bankruptcy court as adversary proceeding number 03-P-2401.  That action was then withdrawn to the Utah district court as case no. 2:04-cv-089 PGC whereupon Judge Paul Cassell dismissed that action without prejudice on September 2004.    See exhibit "9" attached. See    Costello v. United States, 365 U.S. 265, 266 (1961)(dismissal without prejudice does not bar the rebringing of another action on the same claims);  Bourke v. Grey Wolf Drilling Company, LP, S-12-0258 (Wyo. 07/31/2013) (Bourke may rebring his claims in the correct county upon dismissal without prejudice by the trial court -- under the Wyoming Savings Statute.).    After appellate review sustaining the dismissal without prejudice, TELFORD timely resued ELI LILLY in the Wyoming state court on her "saved claims" -- adding additional tort claims in the interim. That case has been presently stayed for political reasons.  Hence TELFORD aka LUNDHAL's claims against ELI LILLy have never been heard on their merits because of the many ultra vires control tactics utilized by various judges.

Rather than suing the private party co-defendants for encouraging officers of the USA to participate in ELI LILLY's criminal schemes,  the USA has consistently and illicitly used the fist of the government to deny TELFORD aka LUNDAHL any judicial relief.

7.    See   United States v. McConney, 728 F.2d 1195,  1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S. Ct. 101, 83 L. Ed. 2d 46 (1984)(a judgment is **void if a court plainly misinterprets the scope of a statutory grant of jurisdiction such that there is a blatant usurpation of power. See 7 J. Moore, Moore's Federal Practice P60.25[2], at 60-226 to 60-228 (1983))**.  Gschwind, 232 F.3d at 1346 (There is a plain usurpation of power, when a court wrongfully extends its jurisdiction beyond the scope of its authority." Kansas City Southern, Ry. Co. v. Great Lakes Carbon Corp., 624 F.2d 822, 825 (8th Cir. 1980) (citations omitted); accord Nemaizer v. Baker, 793 F.2d 58, 65 (2d Cir. 1986) (observing that collateral attack is permitted under Rule 60(b)(4) where there is "a clear usurpation of power by a district court, and not an error of law in determining jurisdiction.  **Clear usurpation of power exists where there is "no arguable basis on which [the court] could have rested it's findings"** quoting Lubben, 453 F.2d at 649);  See too Stutsman County v. Wallace, 12 S. Ct. 227, 142 U.S. 293 (U.S. 01/04/1892) (**no discretion not to vacate a void judgment.**));  Marshall v. Board of Ed., Bergenfield, N.J., 575 F.2d 417, 422 (3rd Cir.1978); Lubben v. Selective Service System Local Board No. 27,  453 F.2d 645, 649-50 (1st Cir.1972); J. Moore

As the Tenth Circuit long ago held in  V. T. A., INC. V. AIRCO, INC., 597 F.2d 220, fn 8  (10th Cir. 1979) :

> If the underlying judgment is void, the order based on it is also void.  Austin v. Smith, 114 U.S.App.D.C. 97, 103, 312 F.2d 337, 343 (1962).  If voidness is found, **relief is not a discretionary matter; it is mandatory.** See 11 C. Wright A. Miller, *supra* note 7, at § 2862.).

CENTURYLINK  has listed a number of pre-filings orders entered against  Hollie Lundahl aka Hollie Telford (largely on an ex parte basis)  as a basis for jusitfying entry of another BROAD pre-filing injunction against HOLLIE in this instant action.  As summarily decribed herein; as conceded too by ELI LILLY before the US Supreme Court in Doc. Nos 127-3 and 127-4; and as more fully summarily described in  the subsections of this pleading, infra,   the above referenced filing injunctions were either the product of petit:ons forged in Hollie  Lundahl aka Hollie Teflrod's name while HOLLIE  was imprisoned in various state and federal jails consecutively over the past 26 years,  the injunctions were the product of fraud upon the court by the petitioning parties,  and/or the petitions were obtained by judges that held financial interests in the  petitioning parties.   Specifically, the contempt injunction(s) entered in:

### (i)   United States Court of Appeal for the Ninth Circuit: *In re Lundahl*,  No.  97-80258 (9th Cir. Jul. 17, 1997),  Was VOID AB INITIO:

This pre-filing order was entered as a result of more than 22 forged Notices of Appeals  filed in TELFORD aka LUNDAHL's name in re  Lundahl v. ELI LILLY, et al. USDC-Cal. Case no.  94-cv-021 RJT  and addressing non-final orders --  **while  HOLLIE was in a coma and paralyzed in federal jail  from an assualt orchestrated by ELI LILLY** and as identified on the  intake record with the  Los Angeles federal detention center attached hereto as exhibit "12".   Orders based on forged petitons are void

---

& J. Lucas, supra, p 60.25 at 227.   **"A Plaintiff  suffers a cognizable harm when the government acts unconstitutionally.  See Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d 1114, 1145 (10th Cir. 2013) (en banc).** "[I]t is always in the public interest to prevent the violation of a party's constitutional rights."  Awad v. Ziriax, 670 F.3d 1111, 1132 (10th Cir. 2012). "It is clear that the public interest suffers irreparable injury whenever an enactment of its people . . . is enjoined or not enforced."  Coalition for Econ. Equity v. Wilson, 122 F.3d 718, 719 (9th Cir. 1997) (citing New Motor Vehicle Bd. v. Orrin W. Fox Co., 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) ("It also seems to me that any time an order violates the constitution and statutes,  the public suffers a  form of irreparable injury.")); Espirita Beneficiente Uniao De Vegetal v. Ashcroft, 314 F.3d 463, 467 (10th Cir. 2002) (granting a vacation of an injunction because  the public interest suffers irreparable harm when constitutional violations are raised.).

ab initio.    See In re Orosco, No. 87-1933 (9th Cir. 1988) (forged document is void ab inito). "Any document based on a forged document is likewise void." In Re Abboud, BAP No. 99- 033 (10th Cir. 1999) citing to Heiser v. Woodruff, 327 US 726 (1946); Weber Meadow-View Corp. v. Wilde, 575 P.2d 1053, 1054 (Utah 1978) (where the record showed subterfuge, devious means, or collusion which prevented a party from fairly appearing before the court, and any resulting judgment is void and must be vacated.); In re KOUGASIAN v. TMSL, INC., 359 *F.3d* 1136 (9th Cir. 2004); "If the court "finds that fraud played a part in obtaining a judgment, it will deprive the judgment of any enforcement effect."    *McDaniel* v. *Traylor,* 196 US 416, 423.

In order for an appellate court to acquire article III powers, a final judgment raised by a timely notice of appeal, or a timely injunction appeal must be filed with the appellate court.    See Gladstone, Realtors v. Village of Bellwood. 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). Absent any final or special judgment,  the appellate court lacks subject matter jurisdiction. See *United States v. United Mine Workers of Am.,* 330 U.S. 258, 295 (1947) **(If no jurisdiction existed, "then the proceedings were void and the civil contempt citation must be reversed 'in its entirety.'"**); *Magness v. Russian Federation,247 F.3d 609,619 n. 19 (5th Cir.), cert. denied, 122 S.Ct. 209 (2001); Followed in Rieser at* 1224 (Where a court lacks jurisdiction, any judgment thereafter entered is void.).

Here,  each of  the 22  notice of appeals were directed at non-final orders entered by the trial court while HOLLIE was in a coma and paralyzed in federal jail in re  USA v. Hollie Lundahl,  USDC-CAL. Case no. 95-CR-0114 AAH.  Every single appeal was dismissed for lack of subject matter jurisdiction by clerks of the 9th Circuit court  shortly after each forged Notice of Appeal was filed  --  unbeknownst to HOLLIE.

At the time the Injunction action was sua sponte entertained by 9th circuit  clerk  Susan Gelmis,  there was no appeal pending in the 9th circuit involving Hollie. Ms. Gelmis unilaterally opened an appeal  under 28 USC section 1651, the All Writs Act, to perform the contempt action.  Treatises have long held that **Federal Law for the purposes of  § 1331, does not include the All Writs Act, the Parental Kidnapping Prevention Act, the local laws of the District of Columbia,. or the Federal Rules of Civil or Appellate Procedure.** Citing 130 Wright & Miller § 3563, pp. 22022.; 130 Wright & Miller § 3563, pp. 217-18,231-32; and 15 Moore's Federal Practice 103.32['1][6].).   The unilaterally opened appeal was VOID from the outset lacking federal authority for such action.

In addition, a single clerk Ms Gelmis, entered the contempt injunction against HOLLIE without service of notice and in violation of the Quorum clause, Title 28 § 46 providing in part :

(b)  In each circuit the court may authorize the hearing and
determination  of cases and controversies by separate
panels, each consisting of  three judges.

In  Nguyen v. United States,  539 U.S. 69 (2003) : the Supreme Court confirmed that the federal quorum statute, 28 U. S. C. § 46(d), authorized

courts of appeals to sit in panels which require the inclusion of at least three article III judges in the first instance. The failure to provide this panel of authorized judges rendered the judgment a nullity. *United States* v. *American-Foreign S. S. Corp.,* 363 U. S. 685.

Here, Ms. Gelmis was not a Judge, much less an Article III Judge, and did not have the jurisdiction to enter a serious contempt injunction against HOLLIE under 28 U. S. C. § 46(d). "A tribunal whom rules against an express statutory mandate, makes a void order", US v. Van Grinffin, 874 F.2d 634 (9th Cir. 1989), and, proceeds in an unconstitutional manner; the effect of which is to destroy the jurisdiction of the court ...." Thomas v. Justice Court of Washakie County, 538 P.2d 42, 44 (Wyo. 1975).

For all of the foregoing reasons, the 9th Circuit Contempt Injunction was vid ab initio.

### (ii) United States Court of Appeals for theTenth Circuit: Johnson v. Stock, 2005 WL 1349963 (10th Cir. 2005), was VOID AB INITIO:

This pre-filing injunction was entered regarding trial case no. 2:97-CV-951 TC, Lundahl v. USA et al.

In late 1998, Judge Tena Campbell usurped jurisdiction over this action irrespective that she owned substantial stock interests in the defendant's companies appearing before her bar. Immediately thereafter, Plaintiff TELFORD filed a mandamus petition with the 10th Circuit court of appeals to remove Judge Tena Campbell based on her financial interests. The 10th Circuit rejected TELFORD aka LUNDAHL's Mandamus petition holding that HOLLIE could wait until conclusion of the action and then raise a judicial bias claim upon final judgment.

Immediately after the 10th circuit unlawfully refused to disqualify Judge Tena Campbell, Judge Campbell unconstitutionally dismissed HOLLIE's claims against ELI LILLY with prejudice based on venue grounds-- irrespective that ELI LILLY had a corporate office in Utah. See exhibit "14" attached. In March of 1999, Judge Campbell unconstitutionally dismissed HOLLIE's FTCA claim against the USA based on the false claim that HOLLIE had failed to submit an administrative claim to the Government -- when the undisputed evidence before the court showed that (1) HOLLIE had testified during her criminal trial that she had filed an FTCA claim with the US Attorneys office [see exhibit "15" attached], (2) the US prosecutor conceded during the trial that HOLLIE had filed an FTCA claim with his office, and (3) Holli's administrative FTCA claim with her attached medical records referencing the assault matter– were submitted to the assault jury as defense exhibit no. 12. [See exhibit "16" attached for the defendants exhibit list in re the USA v. Holli Lundahl, USDC-CAL., case no. 2:95-CR-114 AAH].

In July of 1999, Judge Campbell indefinitely stayed Hollie's FTCA / RICO action to game plan further obstruction of the action. See exhibit "17" attached. This action remained stayed even after HOLLIE filed chapter 13 bankruptcy in January 2003 as case no. 03-21660. At the time of HOLLIE's 2003 bankruptcy, Judge Campbell maintained a stock interest in

the defendant's companies in USDC-UT case no. 2:97-cv-951 TC of approximately $750,000.00. See exhibit "18" attached for Tena Campbell's 2003 financial disclosure report with astericks in the left column for those companies that were represented as defendants (and constituent entities of the defendants) in USDC-UT case no. 2:97-cv-951 TC.

HOLLIE immediately removed that stayed action to the Bankruptcy court as adversary proceeding no. 03-P-2401 under the bankruptcy removal statute which permitted removal by the debtor regardless of whether debtor was a plaintiff or defendant and for purposes of merging the suit into HOLLIE's chapter 13 bankruptcy estate. HOLLIE's FTCA/ RICO action was then withdrawn to another district court as required under the Bankruptcy code and assigned case no. 2:04-cv-89 PGC. See exhibit "9" attached for the court docket. On September 22, 2004, to address Judge Tena Campbell's interlocutory rulings which clearly violated due process, Judge Paul Cassell dismissed the entire action without prejudice (refer back to ex. "9" attached reflecting this dismissal) – leaving HOLLIE the right to re-bring her saved claims under Utah's savings statute. See In re Piper Aircraft Distrib. Sys. Antitrust Litig., 551 F.2d 213, 219 (8th Cir. 1977)(**"A dismissal without prejudice carries down with it previous proceedings and orders in the action, and all pleadings, both of plaintiff and defendant, and all issues, with respect to plaintiff's claim."'** Id. (quoting 27 C.J.S. Dismissal and Nonsuit § 39 (1959)). …". Accord in **DE LEON v. MARCOS, No. 10–1578. (10th Cir. 2011).**

**AS A MATTER OF LAW, the U.S. court of appeals for the 10th Circuit, lost appellate jurisdiction over any matters concerning USDC-UT case no. 2:97-cv-951 AFTER HOLLIE removed that action to the bankruptcy court for further prosecution.** See Granny Goose Food Inc. v. Teamsters, 415 US 423, 435-438 (1974) (after removal to a federal court, a non-bankruptcy court loses jurisdiction over the subject matter; furthermore after removal, a judgment entered by a non-bankruptcy court may be set aside, modified or otherwise corrected by a federal court on equitable grounds. After removal, the federal court sitting in it's bankruptcy jurisdiction has exclusive jurisdiction over the removed claims citing Gen. Lnv. Co. v. Lake Shore Ry., 260 US 261, 267 (1922) (after removal, the power to alter, correct, modify or otherwise dispose of the case passes to the federal court.); Accord in In re Birting Fisheries, Inc., 300 B R. 489 (9th Cir. B.A.P. 2003); In re General Carriers Corp 258 B.R. 181 (9th Cir. BA P 2011) (Only federal court sitting in its bankruptcy jurisdiction has jurisdiction to decide matters concerning the removed case.)

Subsequent to the dismissal of the removed action without prejudice, ELI LILLY then procured several more criminal prosecutions against HOLLIE as identified in Doc. 127-3 and as admitted by ELI LILLY in Doc, 127-4.

Nevertheless, the US Court of Appeals for the 10th circuit never acquired subject matter jurisdiction in appeal case no. 03-4219 from the outset sufficient to permit that Appellate Court to enter any judgment (including a contempt judgment) against HOLLIE because the underlying action had been removed from their appellate jurisdiction as a matter of

law.   See **City Center West v.  American Modern Home Insurance, No. 12–1343 (10th Cir. 2014)** (We agree with American Modern that our judgment must be vacated because the appeal was mooted before we published  the decision,   by a transfer in rights to the  controversy.)

Secondly, because Judge Campbell was a constitutionally biased tribunal,  all dispositions by Judge Campbell were prima facially void and the 10th Circuit had no authority but to declare such voidness.  Refer back to  V. T. A., INC. V. AIRCO, INC., 597 F.2d 220, fn 8  (10th Cir. 1979).  Also see Arizona v. Fulminante, 499 U.S. 279 (1991) Held: Trial by a biased judge is structural error mandating automatic reversal because such error "calls into question the very accuracy and reliability of the trial process." **McGurk v. Stenberg, 163 F.3d 470, 474 (8th Cir. 1998**)). Tumey v. Ohio, 273 U.S. 510 (1927) (structural error to be subjected to a biased tribunal.); See also **Am. Isuzu Motors, Inc., et.al. v. Ntsebeza, et al., No. 07-919,** Supreme Court of United States. (May 12, 2008) (Case rejected because four Supreme Court justices own upwards of $15,000 stock interests in the corporate  defendants named in the lawsuit); ***Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 2551 n. 2, 165 L.Ed.2d 466 (2006) (**structural error, not susceptible to forfeiture (or harmless error analysis).**; Sullivan v. Louisiana , 508 U.S. 275, 283, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)(**"due process demands that the judge be disqualified for "bias, or a likelihood or appearance of bias.") **In re Murchison , 349 U.S. 133, 136, 99 L.Ed. 942 (1955).**

Third,  Trial case no. 2:97-cv-951 TC was subject to the automatic stay of the bankruptcy code immediately after HOLLIE filed chapter 13 bankruptcy because ELI LILLY and the IRS were attempting to collect debts against HOLLIE as set offs for HOLLIE's tort claims against these defendants.  (See Creditors' registry filed in HOLLIE's 2003 bankruptcy case as exhibit "19" attached and identifying  these alleged creditors claims filed by ELI LILLY and the IRS.) **[8]** .  **The  stay applies to  tax matters irregardless of what position the  debtor occupies  in the non-bankruptcy case**.   See **40235 Washington Street Corporation v. Lusardi (9th Cir., 2003) (**Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition creates an automatic "stay, applicable to all entities, of," inter alia, "any act to create, perfect, or enforce any lien

---

8.  Bankruptcy Judge Judith Boulden in June of 2003 would affirm HOLLIES' amended chapter 13 plan and disallow both ELI LILLY and the IRS' creditors claims as void and unenforceable AFTER  finding that these creditors claims were completely  fabricated by these alleged creditors to extort HOLLIE into foregoing her tort claims  against these tortfeasors.   See **Systemcare Inc v. Wang Laboratories, 95-1032 (10th Cir. 1996)** (Where non-bankruptcy lawsuit seeks claims against the debtor for pre petition conduct, claims are permanently enjoined upon confirmation of the debtor's plan.);   **Siegel v. Federal Home Loan Mortg. Corp., 143 F.3d at 529 (9th Cir. 2003)** (The Ninth Circuit has repeatedly held "a bankruptcy court's allowance or disallowance of a claim at the confirmation hearing becomes a final judgment upon expiration of the period of appeal,

against property of the estate." **11 U.S.C. § 362(a). "This stay applies equally to tax matters. . .and it would be irrelevant what position the debtor occupied in a non-bankruptcy case because the inquiry is whether a creditor was seeking to enforce a lien." In re Kampman Farms, Inc., 6 B.R. 653 (Bankr.W.D.Okl., 1980)).**

For the aforesaid reasons,  the automatic stay of the bankruptcy code enjoined the 10th circuit court of appeals from acquiring appellate jurisdiction  AS A MATTER OF LAW.   See  Consolidated Electric Corp., 894 F. 2d 371, 373  (10th Cir. 1990) (Stay applies in any  **official proceeding where the debtor is a defendant or respondent.**   Any continuation of that proceeding is taken in violation of the automatic stay when  causes of action  are part of the debtor's estate.  Any resulting judgment in the non-bankruptcy court  **is void and without effect.").**

Last but not least,  the appellate panel assigned to 10th circuit appeal case no. 03-4219, owned upwards of $2 million in stock interests in the appellee companies subject to that unauthorized appeal.  Accordingly, because HOLLIE was deprived of a constitutionally impartial tribunal,  any orders entered by anyone of the three justices invoking jurisdiction over that appeal,  was constitutionally VOID.

### (iii)     United States Supreme Court: Lundahl v. Eli Lilly & Co., 125 S. Ct. 1940 (2005), was VOID AB INITIO:

This  was a  Certiorari Petition  forged in  HOLLIE's name  by ELI LILLY and COMPANY  AFTER ELI LILLY procured HOLLIE's false imprisonment in jail on yet another criminal prosecution,  and as averred by HOLLIE in her Certiorari  Petition filed in  the U.S. Supreme Court  at  PageID #'s: 1796-1977 herein  and  as  admitted by  ELI LILLY in that  Cert proceeding as shown by PageID #: 1815 herein. [9]   For the aforesaid  grounds,  the forgery of the Certiorari Petition in HOLLIE's name rendered the entire Supreme Court proceedings void and any contempt judgment resulting therefrom, equally void.  See Rose v. Himely, (1808) 4 Cranch 241, 2 Led 608; Pennoyer v. Neff, (1877) 95 US 714, 24 L Ed 565; Thompson v. Whitman (1873) 18 Wall 457, 21 l Ed 897; Windsor v. McVeigh, (1876) 93 US 274, 23 L Ed 914; McDonald v. Mabee, (1917) 243 US 90, 61 L Ed 608 .

In addition,  the US Supreme Court order is additionally void because it was entered in  violation of the automatic stay of the bankruptcy code. Specifically,   the automatically stay of the bankruptcy code attaches to a chapter 13 debtor's estate until that estate has been administered and closed. See 1 David G. Epstein  et al.,  Bankruptcy § 3-14, at 162 (1992) ("Section

---

9.   See  Robert K. Brown v. City of Casper and Officer Eric E. Walters, Individually, 2011 WY 35 (Wyo. 2011) (**averments not denied are deemed admitted**.).   Also see Starbuck v. Murray, 5 Wendell, 158, held: "It is strenuously contended that if  matter may be pleaded by the defendant, **he is estopped from asserting anything against the allegation contained in the record" . . . where the defendant fails to oppose the record with contrary evidence.**

362(a)(3) stays all actions, whether judicial or private, that seek to obtain possession of property of the estate, or property from the estate, or to exercise control over property of the estate. The trustee or debtor in possession takes control of all property of the estate.   No entity, including a federal or state court, may exercise control over the causes of action in an estate unless the court grants an order lifting the automatic stay pursuant to specific limitations set forth in the code.").   "The automatic stay protects lawsuits which are assets of an estate until the estate is administered and closed."   In re Chaparro Martinez, 293 B.R. 387 (Bankr. N.D. Tex. 2003); Foster v. Heitkemp, 670 F.2d 478 (5th Cir. 1982).  In re Small, Civ. No. 14-08-01075-CV (Tex. App. - Houston (14th Disl.) 2009) (The automatic bankruptcy stay abates any judicial proceeding that is an attempt to collect against the debtor, depriving state and federal courts of jurisdiction over the debtor and his property **until the stay is   nullified by closure of the bankruptcy estate.** Baytown SI. Bank v. Nimmons, 904 S.W.2d 902, 905 (Tex. App.-Houston [1 st Dis1. 11995, writ denied).  An action taken in violation of the automatic bankruptcy stay is void, not merely voidable. Howell v. Thompson, 839 S.W. 2D 92, 92 (Tex. 1992) (order); Continental Casing Corp. v. Sameadan Oil Corp., 751 S.W. 2D 499, 501 (Tex. 1988) (per curiam). Consolidated Electric Corp., 894 F. 2d 371, 373 (10th Cir. 1990).

Attached hereto as exhibit "20" is the order closing  LUNDAHL's chapter 13 estate on January 4, 2006.  The Supreme Court contempt judgment was entered ex parte  and without notice to LUNDAHL and based on a forged petition,  on April 25, 2005;  during the pendency of  the stay applying LUNDAHL's chapter 13  estate.  Accordingly the  US Supreme Court contempt injunction  is VOID Ab Initio and this court has a duty to vacate same.

**(iv)  United States  District Court  for  the District  of Utah:  L.A. Homeowners Aid, Inc. Lundahl, 2006 WL 2459371 at **4-5 (D. Utah 2006), was VOID AB INITO:**

**There was no pre-filing injunction entered against HOLLIE in the above stated case.**  Rather, a financially conflicted Magistrate judge cited to a pre-filing injunction entered by Utah  Judge Dee Benson, ex parte,  without notice, and without any federal question case pending before Judge Dee Benson's court  involving HOLLIE on July 8, 2004.  Judge Benson's filing injunction was purportedly based on the All Writs Act. However the All  Writs Act standing alone does not confer subject matter jurisdiction.   See  United States v. City of New York, 972 F.2d 464, 470 (2d Cir. 1992) ("T**he All Writs Act cannot confer on the courts the power to ignore the case or controversy requirement,** which is rooted in Article III of the constitution's definition of judicial power.");  In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins.Litig.), 770 F.2d 328, 340 (2d Cir. 1985) ("The All-Writs Act . . . cannot be used to circumvent or supersede the constitutional limitations of the initiating petition in the first instance.);

Specifically, on  July 8, 2004,  without  any  federal  question case

pending before Utah Judge Dee Benson's court  involving  HOLLIE as a party,  this Judge executed a pre-filing injunction against HOLLIE pursuant to 28 USC  § 1651,  the All Writs Act,  in the fashion of a Star Chambers court and  in violation of  *Syngenta Crop Protection, Inc. v. Henson,* 537 U.S. 28, 123 S.Ct. 366, 369-70 (2002)( "[t]he All Writs Act does not confer subject matter jurisdiction on federal courts;  there must be an independent basis for subject matter jurisdiction in  order to  issue a Writ or injunction under the All Writs Act.).  See  **Steel Co. v. Citizens for a  Better Env't, 523 U.S. 83, 101 (1998) (**there is no "doctrine of hypothetical jurisdiction".  **Without jurisdiction, a court cannot proceed at all, but can only dismiss the suit.**  To do otherwise would be "an **ultra vires act "  by  that federal court. (Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 102 (1998).**

Moreover HOLLIE  was not  served with any OSC notice re Judge Benson's  2004 pre-filing injunction as HOLLIE was then falsely imprisoned in jail by the state of Utah as 4th judicial district court case no. 045403074, Utah v. Holli Lundahl. (There is no record of HOLLIE having been served any process while in jail as a pre-trial detainee in this Utah criminal proceeding, outside of the proceeding itself.).   Therefore Benson's court lacked both subject matter and personal jurisdiction to enter a serious contempt injunction against HOLLIE.

To give BENSON's VOID, secretive and ex parte  filing injunction facial credibility,  LAHA opened  a Utah federal case before Judge Benson's Court  under the All Writs Act in March of  2005 as USDC-UT case no. re 2:05-mc-253-DB (8 months after BENSON executed the VOID filing injunction secretly against  HOLLIE.) and petitioned Judge Benson to expand his  pre-filing injunction against HOLLIE.

HOLLIE opposed the validity of  Judge Benson's 2004  filing injunction in case no. 2:05-mc-253-DB,  by arguing the lack of federal question under the All Writs Act pursuant to the rules set forth in  *Syngenta Crop Protection, Inc. v. Henson,* 537 U.S. 28, 123 S.Ct. 366, 369-70 (2002)(holding the All Writs Act does not provide a federal question claim under section 1331.) HOLLIE also demanded  production of the OSC and its related service return justifying personal jurisdiction over HOLLIE.

During the course of case no.  2:05-mc-253-DB, LAHA could not and did not advance any case law which allowed LAHA to proceed in a contempt action against LUNDAHL  solely under the All Writs Act.  Furthermore,  LAHA never produced an OSC re the July 8, 2004 Injunction nor did LAHA produced the service return showing service of any OSC upon HOLLIE; BECAUSE, IN FACT,   THESE  DOCUMENTS DID NOT EXIST. See WILSON  v. NORTH CAROLINA,  169 U.S. 586  (1898) (held:  when the contemnor denies service of the rule to show cause, the writ must be dismissed for want of jurisdiction and the rule to show cause, discharged.); *In* re *Center Wholesale, Inc.,* 759 F.2d 1440, 1448 (9th Cir. 1985) (holding judgment void because aggrieved party had not received adequate notice of the proceedings.); SIMON *v.* SOUTHERN RAILIWAY, 236 *U.S.* 115 (1915) (United States courts by virtue of their general equity powers have jurisdiction to enjoin the enforcement of  a judgment obtained  without

service);

When LAHA failed to establish their case, Judge Benson was compelled to dismiss case no. 2:05-mc-253-DB in 2009 (see exhibit "22" attached); yet again while HOLLIE was falsely imprisoned on the latest criminal charges advanced by LAHA and ELI LILLY in re USA v. LUNDAHL, USDC-UT case nos. 2:06-CR-693 and 2:07-CR-272 and which kept HOLLIE in jail as a pre-trial detainee for nearly three years before being dismissed by the US prosecutor in HOLLIE's favor for lack of subject matter jurisdiction by way of failure of probable cause to establish the crimes charged. The U.S. Prosecutor concluded that ELI LILLY and LAHA had filed false and repetitive charges against HOLLIE for collateral advantage in the suits HOLLIE had pending against these defendant tortfeasors. See dismissal order in these criminal cases as exhibit "21" attached hereto.

In fact, ELI LILLY had a long history of filing false charges against HOLLIE as noted by a state prosecutor back in 1993 when ELI LILLY tried to prosecute HOLLIE with multiple acts of insurance fraud. See state prosecutor's lettered dismissal order as exhibit "23" attached hereto and noting on the second page that ELI LILLY had committed wholesale perjury and filed false statements to secure HOLLIE's malicious prosecution on bad faith criminal charges from 1991 to 1993.

Over the past 27 years, neither ELI LILLY or any other defendant tortfeasor have ever filed competent or truthful criminal or contempt charges against HOLLIE; rather the defendants have repeatedly exercised the office of various courts to continue their associated in fact criminal enterprise to extort and defraud HOLLIE of her causes of action.

Nevertheless because Judge Benson lacked subject matter and personal jurisdiction over HOLLI to enter any pre-filing injunction, Judge Benson's pre-filing injunction entered on July 8, 2004 is void ab initio as well as any orders based on that void filing injunction.

### (v) United States District Court for the District of Idaho: Lundahl v. Nar Inc., 434 F.Supp.2d 855 (D.Idaho 2006), was VOID AB INTIO:

This prefiling injunction was entered against HOLLI by a financially conflicting judge acting as a prosecutor to convict HOLLI of the false crime of fictitious Idaho address, and not for any legitimate purpose presented by the operative complaint.

Specifically, in 2002, NAR collection agency filed a dental collection action against HOLLIE's household to include her sister as Utah Third Judicial District Court case no. 020201658. HOLLIE filed a Counterclaim against the collection agency under UTAH RICO, the Computer Fraud and Abuse act, and the Unlawful Debt Collection Practices act. To avoid the counterclaim, NAR filed a fraudulent motion to dismiss falsely claiming that HOLLIE's household had settled their claims against the NAR litigants with prejudice on June 13, 2002 – when in fact no negotiation talks ever took place. See exhibit "24" attached for this false motion to dismiss. Five days later, NAR met ex parte with the sitting court and obtained a dismissal with

prejudice judgment of the entire action. See exhibit "25" attached.   Holli moved to vacate the judgment under Rule 60(b)(6)  based upon fraud upon the court practiced by NAR's attorney.

While the Rule  60(b)(6) motion remained pending before the state court, HOLLIE filed chapter 13 bankruptcy.   In 2003,  HOLLIE removed the NAR litigation to the bankruptcy court  as adversary proceeding no. 03-P-2317 and which removal action stripped the state court of all further jurisdiction upon HOLLIE's filing of the removal petition with the state court.   The adversary proceeding was subsequently withdrawn to the Utah district court sitting in his bankruptcy jurisdiction as case no. 04-04224.   Attached hereto as exhibit "26" is the pertinent portions of the docket in the NAR removal action.

As can be seen in the docket entry on September 1, 2004, the NAR litigants  filed a motion to remand within 30 days of the removal by HOLLIE in 2003.   In the alternative,  NAR filed a motion to dismiss the entire matter without prejudice to reportedly MOOT Plaintiff's counterclaims.   HOLLIE countered NAR's motion to dismiss arguing that her counterclaims were not rendered moot because the NAR defendant's chose to withdraw their original claims.

More than 4 months after the removal,  NAR's attorneys appeared in the state court lacking subject matter jurisdiction over the removed claims, and obtained an attorneys fees and costs judgment against  HOLLI and her sister KELLI  in an amount of more than $5,300.00 collectively.   See exhibit "27" attached for this judgment.

HOLLIE  subsequently filed  a motion to  amend  her  counterclaim to include additional money damages for NAR's violation of the automatic stay and removal statutes of the bankruptcy code.   Refer back to date entry of September 1, 2004 in exhibit "26" attached for reference to HOLLI's amendment motions.

On September 1, 2004, the sitting judge  denied [emphasis added] NAR's motion to remand,  granted NAR's motion to dismiss the federal action without prejudice and as MOOT given NAR withdrew her original claims against HOLLIE and her household,  and improperly denied HOLLIE's motion to amend her counterclaim,  as MOOT.  Subsequent thereto,  the judge entered a final order closing the action.

Sixteen  months later,  NAR would enter the state of Idaho and record the void  attorneys fees judgment against HOLLIE's then residence property for purposes of foreclosing on that property.   See exhibit "28" attached for the wrongful recording of this lien.

HOLLIE brought a RICO, wrongful lien  and abuse of process action against  NAR in the federal court in  Idaho as case no. 05-cv-127.   NAR and other  non-standing intervenors forum shopped HOLLIE's case to judge Richard Tallman, having a reputation of fixing pro se actions in favor of represented parties.   Judge Tallman accused HOLLIE of a false and fictitious Idaho address  under   18 USC section 1342  because the court's mail directed to HOLLIE's former PO Box address,  kept getting returned to the court.    This charge is a felony under federal law.

On or about May 15, 2006,  the Idaho  judge conducted a criminal

contempt hearing on the charge of a false and fictitious address.   Like the judges before and after him,   this judge simply ignored HOLLI's titling documents at exhibit "28" attached,  so that he could fix a criminal contempt judgment against HOLLIE for some type of fraud crime that would impact HOLLIE  in any civil litigation HOLLIE pursued.     On May 27, 2006,  this judge entered a criminal/civil contempt injunction against HOLLIE, finding that HOLLIE was using a false and fictitious Idaho address ( in violation of 18 USC section 1342)    to find new forums for her litigation activities.     This judge also found that HOLLIE was her sister MARTI,  without any evidentiary support.    See exhibit "29" attached.

HOLLI    filed objections to Judge Tallman's   effective criminal / civil contempt judgments as supported without probable cause.    Judge Tallman then ordered HOLLI to pay the court $500 in criminal sanctions for allegedly reporting a false Idaho address under 18 USC section 1342.    See exhibit "30" attached for this order.    HOLLIE paid the criminal contempt sanction upon a strongly reported objection.  See exhibit "31" attached.  In spite of HOLLIE paying the criminal contempt sanction,  Judge Tallman nevertheless corruptly dismissed HOLLIE's claims against the NAR litigants with prejudice as an additional criminal sanction.

HOLLI  timely appealed the criminal/civil contempt sanctions to the 9th circuit court,  whom held HOLLIE's appeal in abeyance.   Four weeks later, HOLLIE would be seized on ELI LILLY, LAHA, WELLS FARGO and WAMU's false charges of alleged bankruptcy fraud for refusing to identify these defendants as creditors in HOLLIE's chapter 13 case as USDC-UT, USA v. Lundahl, case no.  2:06-CR-693.    The ninth circuit refused to process HOLLIE's appeal because HOLLIE was in jail on the aforedaid bankruptcy fraud charges.    HOLLIE spent three years in jail as a pre-trial  detainee before the bankruptcy fraud charges were dismissed in HOLLIE's favor in 2009 as shown in exhibit "21" attached.

Nevertheless,  the  Idaho  federal contempt  judgment is VOID on numerous grounds to wit:

### Judge Tallamn Did  Not  Have  Standing To Charge, Prosecute Or Convict HOLLIE Of The Crime of Fictitious  Idaho Address

"Congress has by statute conferred the power to prosecute crimes in the name of the United States on the United States Attorney General and his delegates.  See 28 U.S.C. §§ 516, 519. The long-standing view of the Supreme Court is that such power is exclusive. See, e.g., United States v. Nixon, 418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case") (emphasis added); id. At 694. See also The Confiscation Cases, 74 U.S. 454, 457 (1868) ("Public prosecutions are within the exclusive direction of the district attorney. "); **"There is a prohibition against a judge "adjudicating a case where he appears to act as an investigator for the government,"** *Johnson v. Carroll,* 369 F.3d 253, 260 (3d Cir.2004).   In "**In re Lahm Industries Inc., 609 F.2d 567 (1st Cir. 1979)",** the appellate court addressed and opined the very argument made here:

The district court held that both appellants had committed criminal contempt violating section 41(a)(1) of the Bankruptcy Act, 11 U.S.C. § 69(a) (1), and ordered Attorney Medina-Zurinaga to pay the United States $200 and the Party Bank $100.

**These orders were void for lack of subject matter jurisdiction.** No prosecutor was brought **in** and the parties submitted their objections by supplementary briefing. **The trustee did not, as a private party, have standing to prosecute the criminal contempt proceeding before the district court.** Ramos Colon v. United States Attorney General, 576 F.2d 1, 5 (1st Cir. 1978). **The district court should have dismissed the criminal contempt case for, without the proper parties, there was no criminal prosecution and the court lacked subject matter jurisdiction. Cf. Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 37-38, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976) (where the parties lack standing, the court is without jurisdiction)**.

Even though this jurisdictional defect was not recognized below nor argued on appeal, we have the constitutional obligation and corresponding authority to make this determination at the appellate level. Mansfield Coldwater & Lake Michigan Railway v. Swan, 111 U.S. 379, 382, 4 S. Ct. 510, 28 L. Ed. 462 (1884).

Because we find that the district court lacked jurisdiction, **we reverse appellants' conviction for criminal contempt.** It is too late in the day for the government to come in and attempt to salvage a conviction which had no jurisdictional basis.). Followed in **Young** v. **United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 107 S.Ct. (1987).**

Here, the Idaho federal court assessed plaintiff a $500 fine and never brought in a US prosecutor to prosecute Plaintiff for alleged fictitious address. As a result, no proper parties with standing were made part of the criminal contempt prosecution conducted against Plaintiff. Therefore the entire contempt proceeding was a nullity as being conducted without subject matter jurisdiction. Accordingly this court must vacate the NAR decision on this ground alone.

## The Idaho Federal Court Never Obtained Personal Jurisdiction Over Plaintiff Due To A Failure To Personally Serve Plaintiff With A Criminal OSC

F.R.Cr.P. Rule 4(c)(1) requires that either a US Marshal or some other authorized official personally serve a criminal complaint upon the accused. No personal service was effected upon plaintiff of the criminal OSC issued by the Idaho federal judge. Accordingly personal jurisdiction was never obtained over HOLLI sufficient to sustain a criminal contempt judgment against Holli. See

Connors v. Connors, 769 P.2d 336 (Wyo. 02/07/1989), opining:

> . . .the United States Supreme Court has stated that where "both civil and criminal relief are imposed in the same proceeding, **then the `"criminal feature of the order is dominant and fixes its character for purposes of review."'  See Nye v. United States, 313 U.S. 33, 42-43, 61 S.Ct. 810, 813, 85** L.Ed. 1172 (1941) (charges of fraud upon the court cary criminal badges requiring the protection of criminal procedures quoting Union Tool Co. v. Wilson, 259 U.S. 107, 110, 42 S.Ct. 427, 428, 66 L.Ed. 848 (1922)." Hicks, 108 S.Ct. at 1433 n. 10 (emphasis in original).

Here, the criminal nature of the proceedings was obvious given the federal judge issued a fine against Plaintiff. Accordingly, the federal judge was under a duty to see that Plaintiff was properly "personally served" with the criminal complaint labeled in the form of an OSC.   Because Plaintiff was not personally served, the Idaho federal court never acquired personal jurisdiction over Plaintiff sufficient to enter a criminal contempt judgment against Plaintiff.

### Judge Tallman Entered a Criminal Judgment In Favor of The NAR Litigants In Direct Violation of Federal Law

A court may not enter as a criminal fine in favor of private party in litigation. This conclusion of law was directly addressed by the Wyoming Supreme Court in **Horn v. District Court, Ninth Jud. Dist., 647 P.2d 1368 (Wyo. 1982).** The analysis of the court went as follows:

> The  law  plainly requires a  reversal of  the $36,927.18 fine  levied against appellant because the trial judge acted outside of the scope of his powers in awarding compensation to the defending litigants in a criminal contempt proceeding.  We affirm the $100 fine initially entered because it does not evidence an abuse of discretion. Badley v. City of Sheridan, supra.

> The law is well settled that criminal contempt proceedings are designed to protect the integrity of the courts and they are instituted to preserve public confidence in judicial tribunals. As such, the public is the interested party rather than any particular individual suitor. This principle was set out United States Supreme Court in Bessette v. W.B. Conkey Co., 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997 (1904), when the court stated: "Manifestly if one inside of a courtroom disturbs the order of proceedings, or is guilty of personal misconduct in the presence of the court, such action may properly be regarded as a contempt of court, yet it is not misconduct in which any individual suitor is specially interested. It is more like an ordinary crime which affects the public * * *." (Emphasis added.) 194 U.S. at 329, 24 S.Ct. At 667.

> Considering the nature of criminal contempt, the courts have established the rule that, since the purpose of fines for criminal contempt is to punish, the proper aggrieved party is the state and not a private litigant who is the beneficiary of an award in a civil contempt proceeding. See Nye v. United States, supra; United States v. United Mine Workers of America, 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); State ex rel. Payne v. Empire Life Ins. Co., Ala., 351 So.2d 538 (1977); State v. Unique Ideas,

Inc., 44 N.Y.2d 345, 405 N.Y.S.2d 656, 376 N.E.2d 1301 (1978); Brown v. Brown, 183 Colo. 356, 516 P.2d 1129 (1973). This general rule concerning the proper allocation and power of the courts to punish for criminal contempts was discussed as follows in Hyde Construction Company, Inc. v. Koehring Company, 387 F. Supp. 702 (S.D. Miss. 1974):

We find no instance in which any court, in criminal contempt proceedings, has allowed private litigants to share in a fine which is punitive and devoid of remedial purpose." (Footnotes omitted and emphasis in original.) Id. At 715- 716.

Here, the Idaho federal judge as an additional fine imposed against Plaintiff, dismissed Plaintiff's case against the NAR litigants. In accordance with HORN supra, the judge had no subject matter jurisdiction to enter this dismissal order. Plaintiff moves that the dismissal order be set aside as void

## The Idaho Federal Contempt Injunction Was Void For Failure To Provide Plaintiff With Criminal Procedures

See Cobell v. Norton, 334 F.3d 1128 (D.C.Cir. 07/18/2003) : Contempt citation for "litigation misconduct" tantamounting to a "fraud on the Court" **must be prosecuted as a criminal contempt proceeding and tried by a jury.** 226 F. Supp. 2d at 161. Accord Bagwell, 512 U.S. at 829 ("**When a contempt involves prohibited act and hence carries a criminal hallmark,** the resulting sanction has no coercive effect" and is therefore punitive in nature); id. at 828 (**describing a sanction as criminal "if it is imposed retrospectively for a 'completed act of disobedience' " (quoting Gompers, 221 U.S. At 443**)). See also **F. J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1139 (9th Cir. 2001) :** Charges of attempted corruption of the judicial process were criminal in nature and entitled contemnee to a jury trial.

Because the federal judge's criminal contempt charges involved possible prison terms of 5 or more years plaintiff was entitled to the protection of criminal procedures including:  (1) the right to a jury trial on the charged crimes, (2) the right to a private prosecutor determining whether probable cause existed to even initiate criminal charges; (3) the right to a Franks probable cause hearing; (4) the right to present testimony to a jury; and (5) the right to cross examine her accusers in front of a jury.

## The Idaho Federal Contempt Injunction Was Void For Broadness

In **Blaylock v. Tinner, 13-3151 (10th Cir. 11/04/2013),** the 10th circuit reaffirmed that an **"injunction must be carefully tailored and may not be so burdensome as to deny the litigant meaningful access to the courts**. Sieverding v. Colo. Bar Ass'n, 469 F.3d 1340, 1343 (10th Cir. 2006); Tripati, 878 F.2d at 352. In Sieverding, supra, the district court entered a prefiling order against Ms. Sieverding, barring her access on any claim, against any party and in any court. The 10th circuit modified the trial court's ruling to prohibit the Sieverdings from commencing any pro se litigation in the federal district court within the Tenth Circuit **against the parties involved in 02-cv-1950.**

The US Supreme Court has long held that Injunctions which are void should be declared so any time petition is made.  *Ex parte* Rowland,

104 U.S. 604 (1882).

Because Judge Skavdahl acted as a prosecutor and jury in the above stated criminal contempt action,  without standing to do so,  his judgments resulting from those  ultra vires acts are void ab initio.

### (vi)   Idaho Supreme Court: Telford v. Nye, 154 Idaho 606 (2013)(affirming order declaring Telford to be a vexatious litigant), was void ab initio;

In this filing injunction,  the Idaho Supreme Court  affirmed a trial court order declaring HOLLIE to be a vexatious litigant  by a trial judge that had no case concerning HOLLIE pending before him and whom was a constitutionally biased judge as a person HOLLIE had a pending  RICO action against while this judge acted as an attorney perpetrating his clients RICO crimes.

Specifically,  judge NYE acting  in his administrative capacity usurped jurisdiction over HOLLI under his administrative authority for the sole purpose of blocking HOLLIE from suing him in any court in the state of Idaho where personal jurisdiction over this Judge would lie.   This judge used his office to extort HOLLIE of her claims against this judge while this judge acted as an attorney for private RICO defendants.

HOLLIE  immediately   challenged this judge's jurisdiction over her as constitutionally biased judge.   The Idaho Supreme Court in defiance of well established   U.S. Supreme Court law,   found that HOLLIE could not challenge this judge's jurisdiction over her because the Idaho disqualification statutes only applied to judges sitting in their judicial capacity,  not their administrative capacity.

Moreover,   no  Idaho court had ever made an adverse decision against HOLLIE as required by the statute.  In fact every Idaho Court to have sat on a petition brought by HOLLIE, dismissed HOLLIE's claims without prejudice for personal jurisdiction reasons **and for the sole purpose of running HOLLIE out of  the state.**

Nevertheless,   because HOLLIE was provided a constitutionally biased decision maker,  HOLLIE is entitled to have the IDAHO Supreme Court Judgment declared void ab initio in a separate proceeding.  See  Offutt v. United States, 267 US 517, 539 (1925) (the high Court set aside a contempt conviction imposed on a lawyer after a trial marked by personal recriminations and animosity between the trial judge and the lawyer.)n    Davis v. Board of School Comm'rs Of Mobile County, 517 F.2d 1044, 1045 (5th Cir. 1975) (**"Efforts to dispose of matters for reasons other than on the merits deserve to be characterized as "pervasive bias" or "prejudice" and meet the exception to the "extrajudicial source doctrine"** sufficient to have the court disqualified and the judgment overturned.). See also United States v. Sciuto, 521 F.2d 82, 85 (7th Cir. 1976) ("Disqualification required when the record shows an effort to dispose of the case for reasons other than on the merits, or shows persistent due process violations committed by the court.  Under these circumstances pervasive bias will be shown.).

Accordingly,   LUNDAHL is entitled to have the Idaho Supreme Court  Judgment decreed null and void and to have it set aside.

### (vii)   Wyoming Supreme Court: Holli Lundahl v. Eli Lilly & Co., S-15- 0061  (Wyo. 2015), was VOID AB INITIO

The primary basis for the Wyoming Supreme Court pre-filing Injunction was to bar  TELFORD aka LUNDAHL from voiding the federal contempt injunctions raised by CENTURYLINK in this action.

Specifically,  ELI LILLY filed a petition to declare LUNDAHL vexatious in the state courts of Wyoming basing that Petition solely on the existence of the federal pre-filing injunctions entered by various federal courts wherein ELI LILLY was a petitioning party.

The  state  Wyoming judge  found  that it lacked jurisdiction to decree federal judgments  void ab initio  as a state court judge.

HOLLIE   argued  that  U.S. Supreme Court  authority in re  *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998), quoting *caterpillar, Inc. v. Williams,* 482 U.S. 386, 392. 107 S.Ct. 2425,96 L.Ed.2d 318 (1987) provided that federal judgments could be attacked in state court proceedings if justified by fraud or other defect in obtaining the judgment and that review would properly be through the state court channels.   HOLLIE also asserted that  "An order that exceeds the jurisdiction of a court is void,  and  **can be attacked in ANY proceeding in ANY court where the validity of the judgment come into issue",**  (citing Rose v. Himely, (1808) 4 Cranch 241, 2 Led 608; Pennoyer v. Neff, (1877) 95 US 714, 24 L Ed 565; Thompson v. Whitman (1873) 18 Wall 457, 21 I Ed 897; Windsor v. McVeigh, (1876) 93 US 274, 23 L Ed 914; McDonald v. Mabee, (1917) 243 US 90, 61 L Ed 608 ; and hence a state court could sit on attack of a federal judgment.

The Wyoming  trial Judge refused HOLLIE the right to attack the federal judgments in the state filing injunction action brought by ELI LILLY and predicated on those void federal judgments and issued an indefinite stay order so that the admited effect of the  VOID federal injunctions would continue in perpetuity.  HOLLIE  timely  appealed  that  interlocutory  decision  under Wyoming's injunction statute. The Wyoming Supreme Court refused to take jurisdiction over HOLLIE's appeal as a non final order; all  in violation of HOLLIE's equal protection rights under the 14th amendment and further penalized HOLLIE with a filing injunction before that Court  to prevent HOLLIE from ever accessing that Court to attack the VOID federal injunctions. HOLLIE will be suing that court under ex parte young for an ongoing violation of her  1st and 14th amendment rights to attack void judgments.

### 6.   The  Referral of *Nelson  et al v. Mountain  West Farm  Bureau et al.,*  to the United States Attorney for the District of Nebraska Does  Not  Establish  Any  Litigation  Crimes  By  Telford  AKA Lundahl,  Or  By Any Appearing Pro SE Party In That  Action

CENTURYLINK argues that because LUNDAHL's case labeled *Nelson  et  al  v. Mountain  West Farm  Bureau  et al.,* 16-CV-368, (D.Neb.2016) was  referred  to  the U.S.

Attorney's office for alleged mail fraud, wire fraud, and identity fraud,  that this somehow establishes that TELFORD aka LUNDAHL is guilty of engaging in criminal litigation activities before this court  under the label of fraud upon this Court.

First and foremost, the referral to the US Attorneys offices is found in  exhibit "32" attached wherein Judge Kopf expressly stated that:

> **"However, to be clear, I take no formal position as to whether any criminal  activity has, in fact, occurred.**

Judge  Koph's  above suggested findings  were based on the submission of a forged insurance application in TELFORD's  name which falsely represented that TELFORD was a licensed  paralegal  earning  a  living  from  this  occupation  (and  which  carried  with  it  the implications that TELFORD charged third persons  legal fees for tutoring and engaging  in the practice of law.)   That  forged Insurance application is attached hereto as exhibit "33" and was submitted to Judge Koph's court ex parte and without notice to TELFORD.  This forged insurance  application  resulted  in  Judge  Kopf'  conducting  what  was  in  fact  a  criminal contempt trial for practicing law without a license and  primarily focused at TELFORD.   See hearing transcript as exhibit "34"  attached revealing the true criminal contempt nature of the contempt hearing conducted by Judge Kopf without the proper OSC notice.

Nevertheless,  worthy of  mention is  that  the US prosecutor has had referral of the case since the end of September of 2016  (8 months) and  HAS YET TO IDENTIFY ANY MAIL  FRAUD,  WIRE  FRAUD  OR  IDENTITY  THEFT   BY  THE  PRO  SE  PARTIES   AND MATERIALLY  ASSOCIATED  WITH  THAT  ACTION;   because  in  fact  these  offenses  were committed  by  the  Insurance  Company  in  tendering  a  forged  insurance  application  in HOLLIE's name  to Judge Kopf's court for purposes of successfully obstructing that action for reasons other than on the merits .    Moreover   HOLLIE cannot amend the action before Judge Kopf's court to add  witness tampering and obstruction of justice claims under the RICO statute against the Insurance defendants,  due to a pending stay order by Judge Kopf and exercised in perpetuity until  the USA prosecutor  returns a a written decision denying probable cause on the  charges (in fact advanced  by the insurance defendants using Judge Kopf's court as the RICO enterprise.).  The matter before Judge Kopf's court in interlocutory in nature and can extend up for 5 years until the limitations period passes on the mail and wire fraud  crimes  alleged  in  that  action,   unless  HOLLIE  pursues  a  Writ  of  mandamus

demanding that the action proceed, and which such petition would appear to violate  the separation of powers doctrine;   hence the reason HOLLI has not pursued such action. Nevertheless, nothing can be drawn from Judge Kopf's court because that case is in limbo until the US prosecutor distributes  either a competent probable cause affidavit evidencing sufficient proof for the charges and which are material to that litigation,  or issues a written statement finding a lack of probable cause.

### 7.   SUMMATION

Accordingly,   CENTURYLINK has not produced one competent and valid pre-filing injunction entered by a  court of another jurisdiction,  and  that would justify this court entering a bad faith  and BROAD injunction in this action as proscribed by the First Amendment.   As the 9th Circuit has previously decisioned:

> **Profligate use of pre-filing orders infringe the  important petitioning right of the First Amendment,  Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1057 (9th Cir. 2007)** (per curiam), **as the pre-clearance requirement imposes a substantial burden on the free-access guarantee.**   Out of regard for the constitutional underpinnings of the right to court access, **"pre-filing orders should rarely be filed."**

In addition,  the pre-clearance filing requirements have clearly been abused by all of the courts cited by CENTURYLINK – as a corrupt means to deny TELFORD access to the courts to litigate legitimate claims.

Specifically and  as shown supra, Judges JOHNSON and SKAVDAHL have engaged in file tampering by grafting TELFORD's  Pro Se Petitions To Proceed  from their various trial records,  so as to justify their entitlements to deny TELFORD access to the federal courts to proceed on justiciable claims.  These same judges have also falsely accused HOLLIE of alias nominations in order to prevent other third persons from proceeding before their courts under the First Amendment.

Furthermore, the broad nature of the pre-filing injunctions  has encouraged  any third person to arbitrarily violate TELFORD's rights over the past 20 years  because  of the implied promise in the filing injunctions that judges will block HOLLIE's claims however meritorious through capricious manuevering of the facts and the law to decline access. As is clearly apparent from the record above,  financially conflicted judges have been more than willing to author decisions that are bottomed on false fact finding  in order to manipulate the law and

repeatedly accuse HOLLIE of abuse of the court's processes, and which are in fact, criminal charges required to be found by a jury; not a judge in dictator fashion.

Additionally,  the ultimate purpose of the filing injunction is to prevent re-litigation of matter previously  fairly and fully decided on its merits;  not to be used as a tool for wealthy  or politically powerful litigants to avoid liability for their unlawful conduct.   "The  decision to enter a pre-filing order is only workable where the parties were permitted to brief and argue the merits of their claims  and  **the facts and issues were decided fairly and with prejudice in" previous lawsuits."** Wood, 705 F.2d at 1526; see Safir, 792 F.2d at 25; Cook, 775 F.2d at 1033.   Where the record fails to show that the present claims were not subjected to a substantive analysis,  **a prefiling order is not permitted,  Ringgold v. County of Los Angeles et al,  11-57231  (9th Cir. 2014),**  as it is not unlawful to prosecute a meritorious action and upon the objections of the parties, **subject  perceived legitimate claims to the full and fair hearing process**,  **no matter how litigious the plaintiff may be.**" See Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 743 (1983) citing  In re Oliver, 682 F.2d 443, 446 (3rd Cir. 1982).    Moreover,  harrassment of a party can only be found where the claims advanced were without an arguable factual or legal basis.  **Scott V.  Eighth Judicial Dist.  Court of Nevada, No. 68393 (Nev. Dec. 18, 2015).**  If that litigant presents rulings  by other courts deciding  like controversies in favor of that litigant,  than that litigant cannot be found to have presented a baseless factual or legal claim.

"[The loss of  First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  KH OUTDOOR, LLC v. TRUSSVILLE, CITY OF, 458 F.3d 1261; 2006 U.S. App. LEXIS 19901; 19 Fla. L. Weekly Fed. C 902 (11th Cir. 2006)(citing Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690 (1976) (plurality opinion)).   A broad filing injunction unduly chills  free access to the courts in violation of the First Amendment.  Wood, 705 F.2d at 1525.   In  **Blaylock  v. Tinner,  13-3151 (10th Cir. 11/04/2013),** the 10th circuit  reaffirmed that an **"injunction must be carefully tailored and may not be so burdensome as to deny the litigant meaningful access to the courts**.); See also Sieverding v. Colo. Bar Ass'n, 469 F.3d 1340, 1343 (10th  Cir. 2006) (the district court entered a prefiling order against Ms. Sieverding, barring her access on any claim, against any party and in any court in Colorado. The 10th circuit modified the trial court's ruling to prohibit the Sieverdings from commencing any pro se litigation in the federal district court under the Tenth Circuit's jurisdiction  **against  the parties  involved in  trial case 02-cv-1950.**)

"A First Amendment attack on a rule may be reached in any forum where the offending rule is sought to have an impact on the proceedings." Rosenberger v. Univ. of 5 Virginia, 515 U.S. 819, 829 (1995) (citing Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46 (1983). Accordingly, HOLLIE may attack CENTURYLINK's and other parties joining CENTURYLINK's abusive petition for a pre-filing injunction herein, efforts to seek another broad filing injunction in this action, as unlawfully based.

All courts have a duty to comply with the mandates of the equity rules promulgated by the US Supreme Court as concluded in Los Angeles Brush Mfg. Corp. v. James, 272 U.S. 701 (1927):

> We think it clear that, where the subject concerns the enforcement of the equity rules, which by law it is the duty of this Court to formulate and put in force, . . we may use the power of mandamus and deal directly with the district court in requiring it to conform to them. Ex parte Abdu,247 U. S. 27, 247 U. S. 28; Ex parte Crane, 5 Pet.190, 30 U. S. 192-194.

The United States Supreme Court held in **Baker v. Gen Motors Corp, 522 U.S. 222, 234-36, n 9; 118 S Ct 657; 139 L.Ed.2d 580 (1998) :**

> **If the sister state injunction or order was not constitutionally obtained, full faith and credit cannot be accorded that judgment in the forum where that judgment comes at issue.** 50 C.J.S. Judgments § 889 h. (1947). "Full faith and credit extends to foreign equity decrees." **Restatement (Second) of Conflicts of Laws § 102 comment d (1971).**

See too **Emery v. Emery, 404 P.2d 745 (Wyo. 1965) (A Court will not permit a void judgment to encumber a record and will vacate the ineffectual entry thereof on application at any time. 49 C.J.S. Judgments § 267, pp. 480-481** citing Williamson v Berry, 8 How. 495, 540, 12 L.Ed. 1170, 1189 (1850); Rose v Himely, 4 Cranch 241, 269, 2 L.Ed. 608, 617 (1808).

Furthermore, "[T]here is no time limit for an attack on a judgment as void." Briley v. Hidalgo, 981 F.2d 246, 249 (5th Cir.1993) (quoting 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2862 (1973)).

Finally, a court has no discretion to avoid vacating a void judgment. See Stutsman County v. Wallace, 12 S. Ct. 227, 142 U.S. 293 (U.S. 01/04/1892) (no discretion not to vacate a void judgment.). Accord in **Andrews v. Dept. of Veteran Affairs, 39 P.3d 1022 (Wyo. 2002)** (Citing Hume v. Ricketts, 69 Wyo. 222, 240 P.2d 881, 883 (1952). As found in **Dahlke, 319 P.3d 116, 127 (Wyo. 2014) (Usurpation of power is defined in Black's law**

dictionary as "the assumption of government or supreme power by force or illegally, in derogation of the constitution and of the rights accorded by law."); **Gschwind, 232 F.3d at 1346 (10th Cir.)** ("There is a plain usurpation of power,    when a court wrongfully extends its jurisdiction beyond the scope of its authority prescribed by statute ."); Kansas City Southern, Ry. Co. v. Great Lakes Carbon Corp., 624 F.2d 822, 825 (8th Cir. 1980) (citations omitted); accord Nemaizer v. Baker, 793 F.2d 58, 65 (2d Cir. 1986) (observing that when a court enters a judgment not authorized by law,  there is "a clear usurpation of power by a district court citing   Lubben, 453 F.2d at 649 and  J. Moore & J. Lucas,supra, p 60.25 @ 227. When a district court has taken action which a party claims was beyond its jurisdiction as prescribed by statute, a reviewing Court has the duty to set matters right. . . and the failure to vacate a void judgment is an abdication of it's judicial duties.   28 U.S.C. § 1651; Will v. United States, 389 U.S. 90, 95-96, 98 n. 6, 19 L. Ed. 2d 305, 88 S. Ct. 269 (1967);

### 8.   CENTURYLINK Has Not Met Any Grounds For Entering An Injunction Against Lundahl aka Telford Under S Wesley

CENTURYLINK  cites the  following authority as the justification for entering yet another VOID and broad pre-filing injunction against TELFORD aka LUNDAHL:

The district court considers the following factors in determining whether a filing injunction is appropriate: "(1) the party's history of litigation, particularly whether he has tried  vexatious, harassing, or duplicative lawsuits; (2) **whether the party had an objectively good faith basis for pursuing the litigation;** (3) whether the party has caused needless expense to other parties or has posed an unnecessary burden on the courts; and (4) whether other sanctions would adequately protect the court and other parties." *Westley*, 2015 WL 2242161 at * 10 (citing *Cromer*, 390 F.3d at 818; *Safir v. U.S. Lines, Inc*., 792 F.2d 19, 24 (2d Cir.1986)).

However, CENTURYLINK has not met any of the predicate factors under WESLEY to justify entry of a filing injunction;  Specifically,  TELFORD has not tried this action on its merits in any prior court.  Secondly,  TELFORD has a good faith basis for pursing this action.  Third, TELfORD has not caused needless expense to to the opposing parties,   because the opposing parties have yet to be tasked with the responsibilities of defending against TELFORD's claims on their merits.  And Last but not least,  no sanctions are authorized against  TELFORD for acts by third parties beyond TELFORD's control that has clearly frustrated the competent prosecution of TELFORD's claims.

For all of the foregoing reasons, CENTURYLINKS and the joining defendants motion for a filing injunction against LUNDAHL aka TELFORD must be denied.

**9.**   **HOLLIE Cross Moves To Have Every Pre-filing Injunction Entered Against Her Declared As Void Ab Initio, Vacated and Set Aide**

Accordingly by this response,  HOLLIE also cross moves for  orders  decreeing all prior pre-filing injunctions entered against  HOLLIE,  VOID AB INTIO,  vacating those  void judgments, and setting those judgments aside, adopting the argument set forth at pages 34-36 supra in support thereof.

## VERIFICATION

I,  HOLLIE TELFORD,  declare that the foregoing facts and attached exhibits are true and correct under penalty of perjury under the laws of these United States pursuant to 28 USC section 1746(2), executed this 27th day of April, 2017.

_____
Hollie Telford

Respectfully Submitted By:

Date: 4/27/2017

_____
Brenda Burton
885 US HIGHWAY 385
Oelrichs, South Dakota 57763
brenda.burton.99999@gmail.com

_____
Hollie Telford
885 US HIGHWAY 385
Oelrichs, South Dakota 57763
hollietelford.1@gmail.com

## CERTIFICATE OF SERVICE

The above signed  certify  that they  served,  a true and correct copy of the foregoing document  upon all parties by placing the same in the ECF service utilized by the South Dakota Courts and by all parties to this proceeding.